ANDREW JANZ (SBN 287672)
Fresno City Attorney
andrew.janz@fresno.gov
CITY OF FRESNO
2600 Fresno Street
Fresno, CA 93721
Telephone: (559) 621-7500
Facsimile:  (559) 457-1084

*Attorney for Plaintiff*
CITY OF FRESNO

AMBER HOLDERNESS (SBN 252363)
Chief Assistant County Counsel
aholderness@countyofsb.org
OFFICE OF THE COUNTY COUNSEL
COUNTY OF SANTA BARBARA
105 E. Anapamu St., Suite 201
Santa Barbara, CA 93101
Telephone: (805) 568-2950
Facsimile: (805) 568-2982

*Attorneys for Plaintiff*
COUNTY OF SANTA BARBARA

THOMAS FAUGHNAN (SBN 155238)
Chief Deputy County Counsel
tfaughnan@counsel.lacounty.gov
MICHAEL S BUENNAGEL (SBN 259000)
Senior Deputy County Counsel
mbuennagel@counsel.lacounty.gov
OFFICE OF THE COUNTY COUNSEL
COUNTY OF LOS ANGELES
648 Kenneth Hahn Hall of Administration
500 West Temple Street
Los Angeles, California 90012-2713
Telephone: (213) 584-1473
Facsimile: (213) 617-7182

*Attorneys for Plaintiff*
THE COUNTY OF LOS ANGELES

JONATHAN V. HOLTZMAN (SBN 99795)
jholtzman@publiclawgroup.com
JAMES R. ROSS (SBN 149199)
jross@publiclawgroup.com
RYAN P. McGINLEY-STEMPEL (SBN 296182)
rmcginleystempel@publiclawgroup.com
MAXWELL S. PELTZ (SBN 183662)
mpeltz@publiclawgroup.com
JAKE D. FREITAS (SBN 341837)
jfreitas@publiclawgroup.com
MARIBEL LOPEZ (SBN 340907)
mlopez@publiclawgroup.com
TAYLOR P. COLE (SBN 367646)
tcole@publiclawgroup.com
RENNE PUBLIC LAW GROUP
350 Sansome Street, Suite 300
San Francisco, California 94104
Telephone: (415) 848-7200
Facsimile:  (415) 848-7230

*Attorneys for Plaintiffs*
CITY OF FRESNO; CITY OF SANTA CLARA;
CITY OF REDWOOD CITY; CITY OF SANTA
CRUZ; CITY OF BEAVERTON; CITY OF
CORVALLIS; CITY OF HILLSBORO; CITY OF
STOCKTON; COUNTY OF SAN DIEGO;
COUNTY OF LOS ANGELES; COUNTY OF
SANTA BARBARA

RENNE PUBLIC LAW GROUP
Attorneys at Law

-i-

PLS.' NOTICE OF MOT. & MOT. FOR PRELIM. INJ. & PRELIM. RELIEF - Case No. 3:26-cv-01535-WHO

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF FRESNO; CITY OF SANTA CLARA; CITY OF REDWOOD CITY; CITY OF SANTA CRUZ; CITY OF BEAVERTON; CITY OF CORVALLIS; CITY OF HILLSBORO; CITY OF STOCKTON; COUNTY OF SAN DIEGO; COUNTY OF LOS ANGELES; COUNTY OF SANTA BARBARA, | Case No. 3:26-cv-01535-WHO<br><br>*Assigned to Hon. William H. Orrick*<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION AND FOR PRELIMINARY RELIEF UNDER 5 U.S.C. § 705** |
| Plaintiffs, | Date:        June 10, 2026<br>Time:        2:00 p.m.<br>Dept:        Courtroom 2 – 17th Floor<br>               by Zoom Videoconference |
| v. | |
| KRISTI NOEM in her official capacity as Secretary of Homeland Security; the U.S. DEPARTMENT OF HOMELAND SECURITY; KAREN EVANS in her official capacity as Acting Administrator of Federal Emergency Management Agency; the FEDERAL EMERGENCY MANAGEMENT AGENCY; DOUG BURGUM in his official capacity as Secretary of the Interior; the U.S. DEPARTMENT OF THE INTERIOR; PAMELA BONDI in her official capacity as Attorney General; the U.S. DEPARTMENT OF JUSTICE, | |
| Defendants. | Case Filed:  February 20, 2026 |

RENNE PUBLIC LAW GROUP
Attorneys at Law

-ii-

PLS.' NOTICE OF MOT. & MOT. FOR PRELIM. INJ. & PRELIM. RELIEF - Case No. 3:26-cv-01535-WHO

# TABLE OF CONTENTS

TABLE OF CONTENTS ...........................................................................................................iii

TABLE OF AUTHORITIES ......................................................................................................v

NOTICE OF MOTION AND MOTION .................................................................................. xii

MEMORANDUM OF POINTS AND AUTHORITIES ..............................................................1

I.      INTRODUCTION ...........................................................................................................1

II.     FACTUAL BACKGROUND ..........................................................................................2

        A.      Congressional Authorization of the Grant Funds at Issue .....................................2

                1.      DHS Grant Programs .................................................................................2

                2.      DOJ Grant Programs .................................................................................4

                3.      DOI Grant Programs .................................................................................8

        B.      Plaintiffs' Federal Funds Administered by Defendants..........................................9

        C.      Defendants Imposed Unlawful Conditions on Congressionally Appropriated
                Funding .................................................................................................................13

                1.      DHS Conditions ......................................................................................13

                2.      DOJ Conditions.......................................................................................15

                        a.      Office of Justice Programs and Office on Violence Against Women
                                DEI Conditions ...........................................................................16

                        b.      Office for Victims of Crime Conditions .....................................17

                        c.      Bureau of Justice Assistance Conditions ....................................18

                        d.      Community Oriented Policing Services Office Conditions.......................19

                3.      DOI Conditions.......................................................................................21

III.    LEGAL STANDARD.....................................................................................................22

IV.     ARGUMENT..................................................................................................................22

        A.      Plaintiffs' Causes of Action Are Justiciable ......................................................22

                1.      Plaintiffs Have Standing to Contest the Unlawful Conditions ...........................22

                2.      This Court Has Jurisdiction to Review the Lawfulness of the Challenged
                        Conditions...............................................................................................23

        B.      Plaintiffs Are Likely to Succeed on the Merits of Their Claims ...................................25

                1.      The Unlawful Conditions Are Unconstitutional.................................................25

-iii-

RENNE PUBLIC LAW GROUP
Attorneys at Law

|  |  |  | a. | The Unlawful Conditions Violate the Separation of Powers | 25 |
|  |  |  |  | i. | DEI Conditions | 25 |
|  |  |  |  | ii. | EO Conditions | 28 |
|  |  |  |  | iii. | Immigration Conditions | 29 |
|  |  |  | b. | The Unlawful Conditions Violate Spending Power Constraints | 30 |
|  |  |  |  | i. | The Unlawful Conditions Are Ambiguous | 31 |
|  |  |  |  | ii. | The Unlawful Conditions Are Unrelated to the Purpose of the Grants. | 34 |
|  |  | 2. | The Unlawful Conditions Violate the APA | | | 37 |
|  |  |  | a. | The Imposition of the Unlawful Conditions Is Final Agency Action | 37 |
|  |  |  | b. | The Imposition of the Unlawful Conditions Is Not Committed to Agency Discretion | 38 |
|  |  |  | c. | The Unlawful Conditions Are Contrary to the Constitution and Exceed Defendants' Statutory Authority | 39 |
|  |  |  | d. | The Unlawful Conditions Are Arbitrary and Capricious | 39 |
|  | C. | Plaintiffs Will Suffer Irreparable Harm in the Absence of Preliminary Relief | | 42 |
|  | D. | The Balance of Hardships and Public Interest Strongly Favors Preliminary Relief | | 45 |
| V. | CONCLUSION | | | 45 |

RENNE PUBLIC LAW GROUP
Attorneys at Law

-iv-

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.C. by M.C. v. Metro. Sch. Dist. of Martinsville,*
  75 F.4th 760 (7th Cir. 2023) ................................................................................28

*Albemarle Paper Co. v. Moody,*
  422 U.S. 405 (1975)................................................................................................32

*Ariz. Dream Act Coal. v. Brewer,*
  757 F.3d 1053 (9th Cir. 2014) ...............................................................................45

*Arizona v. Yellen,*
  34 F.4th 841 (9th Cir. 2022) ..................................................................................23

*Arlington v. FCC,*
  569 U.S. 290 (2013).................................................................................................25

*Arrington v. Daniels,*
  516 F.3d 1106 (9th Cir. 2008) ...............................................................................40

*ASSE Int'l, Inc. v. Kerry,*
  803 F.3d 1059 (9th Cir. 2015) ...............................................................................38

*Bennett v. Spear,*
  520 U.S. 154 (1997)................................................................................................37

*Bostock v. Clayton Cnty., Georgia,*
  590 U.S. 644 (2020)................................................................................................28

*Bowen v. Massachusetts,*
  487 U.S. 879 (1988)................................................................................................39

*California v. United States Dep't of Transportation,*
  788 F. Supp. 3d 316 (D.R.I. 2025).........................................................................30

*City & Cnty. of San Francisco v. Trump,*
  783 F. Supp. 3d 1148 (N.D. Cal. 2025) .................................................................37

*City & Cnty. of San Francisco v. Trump,*
  897 F.3d 1225 (9th Cir. 2018) ..........................................................23, 25, 26, 29

*City & Cnty. of San Francisco v. United States Dep't of Just.,*
  No. 25-CV-09277-JD, 2026 WL 177945 (N.D. Cal. Jan. 21, 2026) ...............30, 38, 41, 43

*City of Chicago v. Barr,*
  961 F.3d 882 (7th Cir. 2020) .................................................................................36

*City of Chicago v. Noem,*
  No. 25 CV 12765, 2025 WL 3251222 (N.D. Ill. Nov. 21, 2025) .......................29, 30

PLS.' NOTICE OF MOT. & MOT. FOR PRELIM. INJ. & PRELIM. RELIEF - Case No. 3:26-cv-01535-WHO

RENNE PUBLIC LAW GROUP
Attorneys at Law

*City of Chicago v. Sessions*,
888 F.3d 272 (7th Cir. 2018) ..................................................................................................36

*City of Chicago v. United States Dep't of Just.*,
No. 25 C 13863, 2026 WL 114294 (N.D. Ill. Jan. 15, 2026) ......................................... *passim*

*City of Fresno v. Turner*,
No. 25-cv-07070-RS, 2025 WL 2721390 (N.D. Cal. Sept. 23, 2025).............................. *passim*

*City of Los Angeles v. Barr*,
929 F.3d 1163 (9th Cir. 2019) ................................................................................................31

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983)...................................................................................................................23

*Cnty. of Santa Clara v. Noem*,
815 F. Supp. 3d 979 (N.D. Cal. 2025) ............................................................................ *passim*

*Coal. for TJ v. Fairfax Cnty. Sch. Bd.*,
68 F.4th 864 (4th Cir. 2023) ...................................................................................................32

*Cummings v. Premier Rehab Keller, P.L.L.C.*,
596 U.S. 212 (2022)................................................................................................................30

*Dep't of Commerce v. New York*,
588 U.S. 752 (2019)...........................................................................................................23, 38

*Dep't of Homeland Sec. v. Regents of the Univ. of California*,
140 S. Ct. 1891 (2020)............................................................................................................40

*Diemert v. City of Seattle*,
776 F. Supp. 3d 922 (W.D. Wash. 2025)................................................................................32

*Drakes Bay Oyster Co. v. Jewell*,
747 F.3d 1073 (9th Cir. 2014) ................................................................................................45

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*,
82 F.4th 664 (9th Cir. 2023) ...................................................................................................22

*Freedom Network USA v. Trump*,
No. 25 C 12419, 2026 WL 800392 (N.D. Ill. Mar. 23, 2026) ..........................................30, 36

*Freedom Network USA v. Trump*,
No. 25 C 12419, Dkt. 74 (N.D. Ill. Feb. 24, 2026) ................................................................17

*Geo Group, Inc. v. Newsom*,
50 F.4th 745 (9th Cir. 2022) ...................................................................................................22

*Grayned v. City of Rockford*,
408 U.S. 104 (1972)................................................................................................................34

*Grimm v. Gloucester Cnty. Sch. Bd.*,
972 F.3d 586 (4th Cir. 2020) ..................................................................................................28

*Hernandez v. Sessions*,
872 F.3d 976 (9th Cir. 2017) ..................................................................................................42

-vi-

RENNE PUBLIC LAW GROUP
Attorneys at Law

*Honeyfund.com, Inc. v. DeSantis,*
  622 F. Supp. 3d 1159 (N.D. Fla. 2022)..............................................................................32

*Hous. Auth. of City & Cnty. of San Francisco v. Turner,*
  No. 25-CV-08859-JST, 2025 WL 3187761 (N.D. Cal. Nov. 14, 2025)...................................... *passim*

*Illinois v. Fed. Emergency Mgmt. Agency,*
  801 F. Supp. 3d 75 (D.R.I. 2025).......................................................................35, 41, 43

*Jajati v. U.S. Customs & Border Prot.,*
  102 F.4th 1011 (9th Cir. 2024) .........................................................................................38

*Kidwell v. Dep't of Army, Bd. for Correction of Military Records,*
  56 F.3d 279 (D.C. Cir. 1995)............................................................................................24

*Kingdom v. Trump,*
  No. 25-cv-691, 2025 WL 1568238 (D.D.C. June 3, 2025)......................................................41

*La. Pub. Serv. Comm'n v. F.C.C.,*
  476 U.S. 355 (1986)......................................................................................................25

*Lincoln v. Vigil,*
  508 U.S. 182 (1993)......................................................................................................38

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania,*
  591 U.S. 657 (2020)......................................................................................................40

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992)......................................................................................................23

*Martin Luther King, Jr. Cnty. v. Turner,*
  785 F. Supp. 3d 863 (W.D. Wash. 2025).......................................................................... *passim*

*Melendres v. Arpaio,*
  695 F.3d 990 (9th Cir. 2012) ...........................................................................................45

*Motor Vehicle Mfrs. Ass'n v. State Farm,*
  463 U.S. 29 (1983).................................................................................................40, 41

*Murphy Co. v. Biden,*
  65 F.4th 1122 (9th Cir. 2023) ..........................................................................................25

*Nat'l Institutes of Health v. Am. Pub. Health Ass'n,*
  145 S. Ct. 2658 (2025)...................................................................................................24

*Nat'l TPS Alliance v. Noem,*
  150 F.4th 1000 (9th Cir. 2025) .........................................................................................22

*New York v. Trump,*
  769 F. Supp. 3d 119 (D.R.I. 2025)....................................................................................40

*New York v. U.S. Dep't of Just.,*
  804 F. Supp. 3d 294 (D.R.I. 2025)....................................................................................45

*New York v. United States,*
  505 U.S. 144 (1992)......................................................................................................35

RENNE PUBLIC LAW GROUP
Attorneys at Law

PLS.' NOTICE OF MOT. & MOT. FOR PRELIM. INJ. & PRELIM. RELIEF - Case No. 3:26-cv-01535-WHO

*Ohio v. Environmental Protection Agency*,
   603 U.S. 279 (2024)........................................................................................................................39

*Pennhurst State Sch. & Hosp. v. Halderman*,
   451 U.S. 1 (1981)......................................................................................................................31, 33

*Rhode Island Coal. Against Domestic Violence v. Bondi*,
   794 F. Supp. 3d 58 (D.R.I. 2025)..........................................................................................17, 37, 43

*Roe v. Critchfield*,
   137 F.4th 912 (9th Cir. 2025) .........................................................................................................28

*San Francisco Unified Sch. Dist. v. AmeriCorps*,
   784 F. Supp. 3d 1280 (N.D. Cal. 2025) ...........................................................................................24

*San Francisco Unified Sch. Dist. v. AmeriCorps*,
   789 F. Supp. 3d 716 (N.D. Cal. 2025) ...................................................................................31, 37, 39

*South Dakota v. Dole*,
   483 U.S. 203 (1987).........................................................................................................31, 35, 36

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016)........................................................................................................................23

*State v. Su*,
   121 F.4th 1 (9th Cir. 2024) ............................................................................................................41

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021)........................................................................................................................23

*United Aeronautical Corp. v. U.S. Air Force*,
   80 F.4th 1017 (9th Cir. 2023) .......................................................................................................24

*Webster v. Doe*,
   486 U.S. 592 (1988).......................................................................................................................38

**Statutes**

5 U.S.C.
   § 701(a)(2) ..................................................................................................................................38
   § 702.........................................................................................................................................23
   § 704.........................................................................................................................................37
   § 705...................................................................................................................................22, 39, 45
   § 706(2)(A) ................................................................................................................................39
   § 706(2)(B).................................................................................................................................39
   § 706(2)(C).................................................................................................................................39
   § 706(2)(D) ................................................................................................................................42

RENNE PUBLIC LAW GROUP
Attorneys at Law

PLS.' NOTICE OF MOT. & MOT. FOR PRELIM. INJ. & PRELIM. RELIEF - Case No. 3:26-cv-01535-WHO

6 U.S.C.
  § 601(5)................................................................................................................2
  § 603.....................................................................................................................2
  §§ 603-04..............................................................................................................2
  § 604(b)(2)-(3).......................................................................................................2
  §§ 605-09..............................................................................................................2
  §§ 606-09..............................................................................................................2
  § 608(a)(1).............................................................................................................2
  § 609(a).................................................................................................................2
  § 762.....................................................................................................................3
  § 762(b).................................................................................................................3

8 U.S.C.
  § 1101(a)(15)(T)(ii) ..........................................................................................6, 7
  § 1157................................................................................................................6
  § 1373..................................................................................................17, 19, 22, 34
  § 1600 *et seq* ........................................................................................................22

15 U.S.C.
  § 2205................................................................................................................27
  § 2229................................................................................................................2
  § 2229(c).............................................................................................................3
  § 2229a................................................................................................................3
  § 2229a(2)...........................................................................................................29
  § 2229a(a)(1)(A)...................................................................................................3

22 U.S.C.
  § 7101(b).............................................................................................................27
  § 7105.............................................................................................................6, 35
  § 7105(b).............................................................................................................6
  § 7105(b)(1)(A).................................................................................................6, 29
  § 7105(b)(1)(B)....................................................................................................29
  § 7105(b)(1)(B)(i) .................................................................................................6
  § 7105(b)(2)(A)(iii)...............................................................................................27
  § 7105(b)(2)(D).................................................................................................6, 29

28 U.S.C.
  § 1331................................................................................................................23
  § 1491(a)(1).........................................................................................................24

31 U.S.C.
  §§ 3729-3730.......................................................................................................16
  § 3729(a)(1)(A).....................................................................................................32
  § 3729(a)(2).........................................................................................................33
  §§ 3801-3812.......................................................................................................16

RENNE PUBLIC LAW GROUP
Attorneys at Law

-ix-

34 U.S.C.
    § 10153....................................................................................................................7
    § 10156...............................................................................................................7, 35
    § 10156(a)(1)..........................................................................................................7
    § 10156(b)(2)..........................................................................................................7
    § 10156(d)...............................................................................................................7
    § 10156(e)(3)..........................................................................................................7
    § 10381..................................................................................................................35
    § 10381(b)...............................................................................................................4
    § 10381(b)(2)..........................................................................................................4
    § 10382(c)(11) ...................................................................................................4, 27
    § 10561....................................................................................................................7
    § 10562(1)–(2) .......................................................................................................8
    § 10564...............................................................................................................7, 36
    § 10564(a)...........................................................................................................7, 8
    § 10564(a)(1)–(6)...................................................................................................7
    § 20102...............................................................................................................5, 35
    § 20102(b)(1)–(9)...................................................................................................5
    § 20103..................................................................................................................35
    § 20103(a)...............................................................................................................5
    § 20103(a)(2)..........................................................................................................5
    § 20103(a)(3)..........................................................................................................5
    § 20103(b)...............................................................................................................5
    § 20103(c)............................................................................................................5, 6
    § 20103(c)(2)(A)–(B)............................................................................................6

42 U.S.C.
    § 4104c...................................................................................................................3
    § 5170c(a) ..............................................................................................................3
    § 10364...................................................................................................................9
    § 10364(a)(1) ..........................................................................................................9

54 U.S.C.
    §§ 200301 et seq. ...................................................................................................8
    § 200305.................................................................................................................8
    § 200305(a) ............................................................................................................8

Pub. L.
    No. 88-578 .............................................................................................................8
    No. 88-578, 78 Stat. 897 (1964) ...........................................................................8
    No. 103-322 ...........................................................................................................4
    No. 108-90, 117 .....................................................................................................2
    No. 109-295 ...........................................................................................................3
    No. 111-11 .............................................................................................................9
    No. 117-58 .............................................................................................................3

**Other Authorities**

2 C.F.R.
    § 200.208(a) ........................................................................................................42
    § 200.208(d)(2) ....................................................................................................42
    § 1402.100............................................................................................................42
    § 2800.101............................................................................................................42
    § 3002.10..............................................................................................................42

RENNE PUBLIC LAW GROUP
Attorneys at Law

PLS.' NOTICE OF MOT. & MOT. FOR PRELIM. INJ. & PRELIM. RELIEF - Case No. 3:26-cv-01535-WHO

28 C.F.R.
  § 85.5(a) ...................................................................................................................33
  § 94.103(a) ..............................................................................................................42

90 Fed. Reg. 8615 ...........................................................................................................27

Fed. R. Civ. P. 65 ............................................................................................................45

S. Rep. No. 497, 98th Cong., 2d Sess. (1984), *reprinted in* 1984 U.S.C.C.A.N. 3607 ...............................4

U.S. Constitution
  First Amendment ......................................................................................................32
  Fifth Amendment .....................................................................................................34
  Article III ............................................................................................................22, 23

RENNE PUBLIC LAW GROUP
Attorneys at Law

PLS.' NOTICE OF MOT. & MOT. FOR PRELIM. INJ. & PRELIM. RELIEF - Case No. 3:26-cv-01535-WHO

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that on June 10, 2026 at 2:00 p.m., before the Honorable Willam H. Orrick of the United States District Court for the Northern District of California, Courtroom 2, by Zoom Videoconference, Plaintiffs will, and hereby do, move the Court pursuant to Federal Rule of Civil Procedure 65, Civil Local Rule 65-2, and 5 U.S.C. § 705 for a Preliminary Injunction enjoining Defendants the U.S. Department of Homeland Security (DHS), the Federal Emergency Management Agency (FEMA), the U.S. Department of the Interior (DOT), the U.S. Department of Justice (DOJ) (collectively, the "Defendants") from imposing or enforcing the unlawful and unauthorized grant conditions or any materially similar terms or conditions to any federal funds received by or awarded to Plaintiffs, directly or indirectly.

This Motion presents the following four issues to be decided: (1) whether Plaintiffs have shown a likelihood of success on the merits of their claims that the challenged grant conditions violate the United States Constitution; (2) whether Plaintiffs have shown a likelihood of success on the merits of their claims that the challenged grant conditions violate the Administrative Procedure Act, 5 U.S.C. § 706(2)(A)-(C); (3) whether Plaintiffs face a likelihood of irreparable harm in the absence of a preliminary injunction; and (4) whether the balance of equities and public interest favor preliminary injunctive relief.

Plaintiffs' Motion is based on the supporting Memorandum of Points and Authorities ("MPA"), Request for Judicial Notice filed concurrently herewith, declarations and exhibits in support of the MPA, and all pleadings, arguments, and matters before the Court.

RENNE PUBLIC LAW GROUP
Attorneys at Law

-xii-

PLS.' NOTICE OF MOT. & MOT. FOR PRELIM. INJ. & PRELIM. RELIEF - Case No. 3:26-cv-01535-WHO

Dated:  May 4, 2026                          RENNE PUBLIC LAW GROUP


                                             By: _____ /s/ Jake D. Freitas _____
                                                  JAKE D. FREITAS

                                             Attorneys for Plaintiffs
                                             City of Fresno; City of Redwood City; City of
                                             Santa Clara; City of Santa Cruz; City of
                                             Beaverton; City of Corvallis; City of Hillsboro;
                                             City of Stockton; County of San Diego; County
                                             of Los Angeles; County of Santa Barbara

Dated:  May 4, 2026                          FRESNO CITY ATTORNEY'S OFFICE


                                             By: _____ /s/ Andrew Janz _____
                                                  ANDREW JANZ

                                             Attorney for Plaintiff
                                             City of Fresno

PLS.' NOTICE OF MOT. & MOT. FOR PRELIM. INJ. & PRELIM. RELIEF - Case No. 3:26-cv-01535-WHO

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### I.    INTRODUCTION

This court, along with district courts across the country, has found that plaintiffs are likely to succeed on their claims that this administration unlawfully implemented the challenged grant conditions without statutory authority, in violation of the U.S. Constitution, and the Administrative Procedure Act (APA).[1]  The vague and sweeping conditions challenged here, collectively referred to as the "Federal Grant Conditions" or the "Challenged Conditions," place millions of dollars in congressionally appropriated funding at risk.  Plaintiffs rely on these funds to provide essential public services and maintain critical infrastructure, including counterterrorism preparedness, disaster prevention and recovery, fire department operations, the administration of a safe and effective criminal justice system, services for victims of crime and human trafficking, and the management of vital water resources and public parks.  Never before has any administration attempted to leverage virtually all congressionally authorized grant funding to advance its own partisan policy agenda.

Plaintiffs cannot comply with these vague and unlawful conditions without exposing themselves to substantial legal liability, nor can they forgo the critical federal funds without severe and immediate consequences for their communities.  Accordingly, Plaintiffs move for a preliminary injunction to prevent the U.S. Department of Homeland Security (DHS), including the Federal Emergency Management Agency (FEMA), the U.S. Department of the Interior (DOI), and the U.S. Department of Justice (DOJ) (collectively, "Defendants") from imposing the unlawful and unauthorized conditions related to presidential executive orders, prohibitions of diversity, equity, and inclusion, or DEI[2] programs, so-called "gender ideology," and requiring cooperation with immigration enforcement.  Only such preliminary relief will preserve the status quo, prevent irreparable harm to Plaintiffs and their residents, and protect against further unlawful overreach while this case proceeds to final judgment.

---

[1] *See infra*, § IV(B)(1)(a) at 30:5–9 n.11

[2] "DEI," which stands for diversity, equity, and inclusion, is sometimes also referred to as "DEIA," with the additional "A" denoting accessibility.  As used in this brief, "DEI" encompasses accessibility considerations, as the inclusion of individuals with disabilities is inherent in widely accepted conceptions of diversity, equity, and inclusion.

RENNE PUBLIC LAW GROUP
Attorneys at Law

II.    FACTUAL BACKGROUND

A.    **Congressional Authorization of the Grant Funds at Issue**

Congress created the following grant programs to fund essential state and local operations, including disaster preparedness and response, counterterrorism, and services for victims of crime and human trafficking.  None of the grant-funding statutes authorizes the imposition of Defendants' wholly unrelated conditions.

1.    **DHS Grant Programs**

*Homeland Security Grant Programs*:  DHS, through FEMA, is responsible for the administration of the Homeland Security Grant Programs (HSGP), which comprises several discrete subprograms, including the State Homeland Security Program (SHSP) and the Urban Area Security Initiative (UASI) grant program.  The SHSP was created under the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act (USA PATRIOT Act) in 2001.  *See* 6 U.S.C. §§ 603, 605-09.  Congress has directed FEMA to allocate SHSP funds pursuant to a risk assessment that determines the relative threat, vulnerability, and consequences for each State from acts of terrorism, considering factors such as population density and a history of threats.  *Id*. § 608(a)(1).  Recipients may then use SHSP funds for uses permitted by statute, such as enhancing homeland security, conducting training exercises, upgrading equipment, or paying salaries.  *Id*. § 609(a).

UASI funds serve a similar purpose—to build and maintain the capacity to prevent, prepare for, protect against, and respond to acts of terrorism.  The program was created by appropriations statute in 2003 (Pub. L. No. 108-90, 117 Stats. 1137, 1146) and codified at 6 U.S.C. §§ 603-04, 606-09.  UASI grants are based on a risk assessment formula that Congress has directed FEMA to refine, establish, and use to allocate UASI funding.  Each State is entitled to a specific allocation based on FEMA's risk assessment.  *Id*. §§ 601(5), 604(b)(2)–(3), 608(a)(1).  No statute governing the HSGP grants at issue here authorizes Defendants to impose the challenged Federal Grant Conditions.

*Fire Related Grant Programs*:  Congress has authorized the U.S. Fire Administration, acting through FEMA, to administer national fire grant programs, including the Staffing for Adequate Fire and Emergency Response (SAFER) Grant Program and the Assistance to Firefighters Grant (AFG) Program in accordance with the eligibility criteria, priorities, and conditions established by statute.  *See* 15 U.S.C.

-2-

RENNE PUBLIC LAW GROUP
Attorneys at Law

§§ 2229, 2229a.  The goal of SAFER funds is to enhance local fire departments' abilities to comply with staffing, response, and operational standards established by the National Fire Protection Association, including assisting fire departments with "attain[ing] 24-hour staffing to provide adequate protection from fire and fire-related hazards."  15 U.S.C. § 2229a(a)(1)(A).  SAFER requires the Administrator of FEMA to "make grants directly ... for the purpose of increasing the number of firefighters to help communities meet industry minimum standards and attain 24-hour staffing to provide adequate protection from fire and fire-related hazards."  *Id*.  The AFG was created to ensure that firefighters and other first responders can obtain critical equipment, training, and other resources necessary to protect the public and emergency personnel from fire and fire-related hazards.  *See id*. § 2229(c).  No statute governing the SAFER or AFG grants authorizes Defendants to impose the Challenged Conditions.

***Hazard Mitigation & Flood Mitigation Grant Programs***:  The Hazard Mitigation Grant Program (HMGP) was first established by Section 324 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, as amended (Stafford Act), which provides that the federal government may contribute "up to 75 percent of the cost of hazard mitigation measures" that "substantially reduce the risk of, or increase resilience to, future damage, hardship, loss, or suffering in any area affected by a major disaster."  42 U.S.C. § 5170c(a).  Congress authorized the Flood Mitigation Assistance (FMA) grant program in Section 1366 of the National Flood Insurance Act of 1968, which directs FEMA to provide assistance for mitigation activities that reduce future flood losses to NFIP-insured properties.  *See* 42 U.S.C. § 4104c.  Congress has further expanded and supported the FMA program through Division J, Title V of the Infrastructure Investment and Jobs Act, which provides additional funding and directives for flood mitigation and resilience activities.  Pub. L. No. 117-58, 135 Stat. 1387–1388 (2021).  Again, these statutes do not authorize the Challenged Conditions.

***Emergency Management Performance Grant Program***:  The Emergency Management Performance Grant (EMPG) Program is part of a comprehensive set of measures authorized by Congress and implemented by DHS and FEMA to assist state, local, tribal and territorial emergency management agencies prepare for all hazards, as authorized by the Robert T. Stafford Disaster Relief and Emergency Assistance Act.  *See* 6 U.S.C. § 762(b).  EMPG Program awards are based on Section 662 of the Post-Katrina Emergency Management Reform Act of 2006, Pub. L. No. 109-295 (codified as amended at 6

RENNE PUBLIC LAW GROUP
Attorneys at Law

-3-

U.S.C. § 762).  Neither this statute nor any other statute authorizes Defendants to impose the Challenged Conditions on these federal funds.

### 2.   DOJ Grant Programs

***Community Oriented Policing Services Program Grants***:  Congress authorized the Community Oriented Policing Services (COPS) program through the enactment of the Public Safety Partnership and Community Policing Act of 1994, Pub. L. No. 103-322, Title I, Sept. 13, 1994, 108 Stat. 1807, with the goal of "increas[ing] the number of law enforcement officers interacting directly with members of the community" and improving "training to law enforcement officers to enhance their conflict resolution, mediation, problem solving, service, and other skills needed to work in partnership with members of the community."  34 U.S.C. § 10381(b).  Congress enumerated twenty-four purposes for which grants may be made, including, as relevant here, "to hire and train new, additional career law enforcement officers for deployment in community-oriented policing."  34 U.S.C. § 10381(b)(2).  The statute does not authorize the challenged DOJ Conditions related to DEI, so-called "gender ideology," or immigration enforcement.  To the contrary, the statute sets out various requirements for applications for grant funding, including that applicants must "provide assurances that the applicant will, to the extent practicable, seek, recruit, and hire members of racial and ethnic minority groups and women in order to increase their ranks within the sworn positions in the law enforcement agency."  34 U.S.C. § 10382(c)(11).

***Victims of Crime Act Grants***:  The Victims of Crime Act (VOCA) created the Crime Victims Fund within the U.S. Treasury and established the Office for Victims of Crime (OVC).  Congress structured VOCA "with minimal bureaucratic 'strings attached,' for direct compensation and service programs to assist victims of crime" in order to support state and local victim assistance programs.  S. Rep. No. 497, 98th Cong., 2d Sess. at 1, 3 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3607, 3607, 1984 WL 37447.  "Unlike some past compensation bills," VOCA is "intended to keep conditions on Federal Aid to a bare minimum."  *Id*. at 9.  The U.S. Attorney General at the time emphasized that the new grants would not "creat[e] an unnecessary bureaucracy to impose the Federal government's priorities on the States ....  [T]he Federal government will provide money to the States to enable the States to effectively run their own programs."  130 Cong. Rec. S5252, 5352 (Mar. 13, 1984) (statement of Attorney General William French Smith).  The OVC administers several congressionally authorized grant programs pursuant to the

PLS.' NOTICE OF MOT. & MOT. FOR PRELIM. INJ. & PRELIM. RELIEF - Case No. 3:26-cv-01535-WHO

RENNE PUBLIC LAW GROUP
Attorneys at Law

VOCA that provide compensation and assistance to victims of crime.

The OVC administers the Victim Compensation Formula Grants and Victim Assistance Formula Grants, two formula grant programs that support crime victim compensation and assistance. Victim Compensation Formula Grants provide compensation to eligible crime victims for costs resulting from crime, including for medical care, lost wages, mental health counseling, funeral expenses, and crime scene clean-up pursuant to 34 U.S.C. § 20102. The statute delineates a precise set of requirements that a state victim compensation program must satisfy to be eligible for a grant, requiring, for example, that States pay for certain victim expenses, treat federal and state crimes and residents and non-residents the same, and do not deny compensation based on a victim's familial relationship with an offender. *Id*. § 20102(b)(1)–(9). None of the statutory eligibility or certification requirements relate to DEI or immigration enforcement.

Victim Assistance Formula Grants provide States with funds to distribute to eligible public agencies or nonprofit organizations to assist victims of crime with the support and services necessary for their restoration and healing after a criminal act. 34 U.S.C. § 20103(a). Victim Assistance Formula Grants are distributed among the States based on a fixed statutory formula. Under that formula, each State is entitled to a base amount of $500,000 and an additional share of the remaining available money in the Crime Victims Fund based on "each State's population in relation to the population of all States." *Id*. § 20103(a)(3). Congress has specified the criteria for determining a victim assistance program's eligibility to receive Victim Assistance grant funds. *See id*. § 20103(b). Congress has also specified which certifications are required of a State's chief executive, including "that funds shall be made available for grants to programs which serve previously underserved populations of victims of violent crime." *See id*. § 20103(a)(2). None of the eligibility criteria or required certifications specified in the statute authorizes the Challenged Conditions.

The OVC also administers competitive grant programs authorized by VOCA, including the Services for Victims of Crime grant. VOCA's competitive grants are generally governed by 34 U.S.C. § 20103(c), which provides that the OVC Director "shall make grants" for "victim services, demonstration projects, program evaluation, compliance efforts, and training and technical assistance services to eligible crime victim assistance programs" and "for the financial support of services to

-5-

victims of Federal crime by eligible crime victim assistance programs." *Id*.  Congress has specified certain criteria for creating and awarding these competitive grant funds under VOCA, none of which relate to DEI or immigration enforcement.  *See id*. § 20103(c)(2)(A)–(B).

***Trafficking Victims Protection Act Grants***:  The Trafficking Victims Protection Act (TVPA) authorizes the allocation of federal funds for the protection of human trafficking victims.  *See* 22 U.S.C. § 7105(b).  The OVC administers several competitive grant programs under this statute, including Housing Assistance for Victims of Human Trafficking; Integrated Services for Minor Victims of Human Trafficking; Enhanced Collaborative Model (ECM) Task Force to Combat Human Trafficking; Preventing Trafficking of Girls; and Services for Victims of Human Trafficking.  These programs are designed to improve victim safety, stability, and access to justice, and to strengthen coordinated community responses to human trafficking.

The TVPA prescribes specific requirements and priorities for grant programs it administers.  *See* 22 U.S.C. § 7105.  The statute provides that the Attorney General may give priority to applicants seeking grants only available for law enforcement operations or task forces that "will be used to assist in the prevention of severe forms of trafficking in persons;" "will be used to strengthen efforts to investigate and prosecute those who knowingly benefit financially from participation in a venture that has engaged in any act of human trafficking;" "will be used to take affirmative measures to avoid arresting, charging, or prosecuting victims of human trafficking for any offense that is the direct result of their victimization; and;" "will not be used to require a victim of human trafficking to collaborate with law enforcement officers as a condition of access to any shelter or restorative services."  *Id*. § 7105(b)(2)(D).

The statute does not authorize any conditions related to DEI or immigration enforcement.  To the contrary, 22 U.S.C § 7105(b)(1)(A) provides "Notwithstanding title IV of the [PWORA], an alien who is a victim of a severe form of trafficking in persons, or an alien classified as a nonimmigrant under section 1101(a)(15)(T)(ii) of Title 8, shall be eligible for benefits and services under any Federal or State program or activity funded or administered by any official or agency described in subparagraph (B) to the same extent as an alien who is admitted to the United States as a refugee under section 1157 of Title 8."  Furthermore, 22 U.S.C. § 7105(b)(1)(B)(i) provides, "…Federal agencies shall expand benefits and services to victims of severe forms of trafficking in persons in the United States, and aliens classified as a

-6-

nonimmigrant under section 1101(a)(15)(T)(ii) of Title 8, without regard to the immigration status of such victims."

*Byrne Memorial Justice Assistance Grants*:  The Edward Byrne Memorial Justice Assistance Grant (JAG) program operates under a comprehensive statutory framework established by 34 U.S.C. § 10156, which mandates a precise, data-driven allocation formula for distributing federal criminal justice funding to states and localities.  The allocation methodology employs a dual-factor formula:  50% of funds are allocated based on each state's population ratio compared to the total U.S. population, and 50% based on each state's average annual Part 1 violent crimes reported to the FBI over the three most recent years compared to all states.  *Id*. § 10156(a)(1).  Local governments receive 40% of their state's allocation based on their proportional share of Part 1 violent crimes, subject to specific eligibility requirements, including three years of crime data reporting to the FBI within the preceding 10 years.  *Id*. § 10156(b)(2), (d), (e)(3).

To receive JAG funding, a state or local government must submit an application within 120 days after funds are appropriated, including several mandatory certifications and assurances.  *See* 34 U.S.C. § 10153.  These requirements include certification that federal funds will not supplant state or local funds but will increase available law enforcement funding; assurance of governing body review at least 30 days before application submission; assurance of public notice and comment opportunities; and assurance that applicants will maintain and report required programmatic and financial data.  *Id*.  The statute does not require any certifications or other conditions related to DEI or immigration enforcement.

*Paul Coverdell Forensic Science Improvement Grants*:  Congress authorized the Paul Coverdell Forensic Science Improvement Grant program ("Coverdell Grant") to award grants to states and units of local government to improve the quality, timeliness, and credibility of forensic science services for criminal justice purposes.  *See* 34 U.S.C. §§ 10561, 10564(a).  Recipients may use Coverdell Grants for one or more statutorily defined purposes.  *See id*. § 10564.  Eligible uses include programs to improve the quality and timeliness of forensic science and medical examiner services, reduce forensic evidence backlogs, support and train forensic personnel and medicolegal death investigators, address emerging forensic technologies and issues, and promote accreditation and certification within medicolegal death investigation systems.  *See id*. § 10564(a)(1)–(6).

RENNE PUBLIC LAW GROUP
Attorneys at Law

-7-

To apply for a Coverdell Grant, the statute requires a State or local government to submit several certifications to the Attorney General, including that it has developed a forensic science laboratory plan consistent with the program described in 34 U.S.C. § 10564(a) and must provide a specific description of how the grant funds will be used to carry out that plan; that any forensic science laboratory system, medical examiner's office, or coroner's office that will receive grant funds uses generally accepted laboratory practices and procedures established by recognized accrediting or certifying bodies; and that such laboratories are accredited by an internationally recognized accrediting body, or, in the alternative, must provide a legally binding and enforceable assurance that a portion of the grant funds will be used to prepare and apply for such accreditation within two years of the grant award. *Id*. § 10562(1)–(2). The statute does not require any certifications or other conditions related to DEI or immigration enforcement.

### 3.       DOI Grant Programs

***Land and Water Conservation Fund Grants***:  Congress established the Land and Water Conservation Fund (LWCF) Grant Program through the enactment of the Land and Water Conservation Fund Act of 1965, Pub. L. No. 88-578, as amended 54 U.S.C. §§ 200301 et seq.  The purpose of the Act is to assist the states and agencies to meet the "present and future outdoor recreation demands and needs of the American people." Pub. L. No. 88-578, 78 Stat. 897 (1964).  Congress has specified what activities are eligible for funding under the LWCF, the formula DOI must apply in allocating funds, and program requirements DOI may require recipients agree to as conditions for receiving funds. *See* 54 U.S.C. § 200305.  Although § 200305(a) authorizes the Secretary of the Interior to make payments "subject to such terms and conditions as the Secretary considers appropriate and in the public interest" the Secretary must do so "to carry out the purposes of this chapter, for outdoor recreation," "[p]lanning," "[a]cquisition of land, water, or interests in land or water," and "[d]evelopment." The statute does not require any certifications or other conditions related to DEI.

***WaterSMART Grants***:  DOI established the WaterSMART (Sustain and Manage American Resources for Tomorrow) program in 2010 under DOI Secretarial Order 3297, with the goal to "pursue a sustainable water supply for the Nation by establishing a framework to provide federal leadership and assistance on the efficient use of water, integrating water and energy policies to support the sustainable use of all natural resources, and coordinating the water conservation activities of the various Interior

PLS.' NOTICE OF MOT. & MOT. FOR PRELIM. INJ. & PRELIM. RELIEF - Case No. 3:26-cv-01535-WHO

bureaus and office." *See* RJN, Ex. W, Secretarial Order No. 3297, Department of the Interior WaterSMART Program - Sustain and Manage America's Resources for Tomorrow, U.S. Dep't of the Interior (Feb. 22, 2010). The program was codified under the Omnibus Public Land Management Act of 2009, Pub. L. 111-11, as amended 42 U.S.C. § 10364. The WaterSmart program authorizes the DOI Secretary to provide cost-shared funding in four grant categories on a competitive basis: water and energy efficiency, small-scale water efficiency, water strategy grants, and environmental water resources projects. *See* 42 U.S.C. § 10364(a)(1). Subdivision (a)(3) of that statute sets forth several specific grant requirements. The statute does not require any certifications or other conditions related to DEI.

### B. Plaintiffs' Federal Funds Administered by Defendants

***City of Fresno***: The City of Fresno relies on federal funds administered by DHS, DOJ, and DOI. From DOJ, the City has either been awarded, applied for, or intends to apply for approximately $297,935 in JAG funding from the Bureau of Justice Assistance (BJA), $250,000 from the COPS Office for enhancing de-escalation and crisis response training for law enforcement, $100,000 in COPS Mental Health and Wellness Act funding, and $87,500 in COPS Community Policing Development Microgrants. Casto Decl. ¶3. In April of 2026, the City applied for additional BJA JAG funding for FY 2025. The Notice of Funding Opportunity ("NOFOs") for this grant contains unlawful conditions challenged in this action. *Id*. ¶4. The City submitted its application under protest with full reservation of rights to challenge the unlawful conditions. *Id*.

In 2025, the City did not apply for several DOJ grants, including Law Enforcement Mental Health and Wellness funding, Community Policing Development Microgrants, and Safer Outcomes: Enhancing De-Escalation and Crisis Response Training for Law Enforcement funding, because of the inclusion of the challenged unlawful grant conditions. *Id*. ¶5. These are recurring grants, and the City would apply for these funds in the future should the challenged conditions no longer be included or enforceable. *Id*.

The City has also secured, from FEMA under DHS, a $7,347,000 multi-year SAFER grant with a remaining balance of $887,592.32, and $702,727.27 from the AFG program. Alcorn Decl. ¶3.

From DOI, Fresno has either been awarded, applied for, or intends to apply for $734,452 from a WaterSMART Drought Resiliency Program Grant and $379,390 from a WaterSMART Water and Energy Efficiency Grant. Amico Decl. ¶3.

PLS.' NOTICE OF MOT. & MOT. FOR PRELIM. INJ. & PRELIM. RELIEF - Case No. 3:26-cv-01535-WHO

***City of Santa Clara***:  The City of Santa Clara relies on federal funds administered by DHS.  The City has been awarded the following federal funds from DHS through FEMA: $11,269,422 in SAFER grant funding, four State HSGP grants, at $50,000, $47,983, $208,947, and $260,430 respectively, and $60,000 in Bay Area UASI Funds.  Torres Decl. ¶3; Morgan Decl. ¶3.  This funding is used for firefighter staffing to aid in frontline operations, Urban Search and Rescue personnel costs, approved training and deployments, the purchase of vehicle barriers, and Hazardous Material training for Super Bowl 60 and FIFA World Cup.  Torres Decl. ¶¶4-6; Morgan Decl. ¶4.

***City of Redwood City***:  The City of Redwood City relies on federal funds administered by DHS and DOJ.  The City has been awarded the following federal funds from DHS through FEMA:  an AFG for $1,320,578; a FEMA Public Assistance Grant for $444,980; two grants from the FMA grant program, $856,903.99 and $31,698.49, respectively, for a total of $888,602.48; three grants from the HMGP, $501,682.50, $809,925, and $2,000,000, respectively, for a total of $3,311,607.50; and a SAFER Grant for $3,630,607.  Heisinger Decl. ¶3.  The City did not pursue a UASI grant from FEMA for Fiscal Year 2026 because the program agreements included conditions prohibiting DEI and requiring cooperation with federal immigration enforcement.  *Id*. ¶4.  This funding would have supported catastrophic preparedness projects such as training exercises, regional intelligence and information-sharing support, and first security system expansions.  *Id*.

The City also participates in the DOJ's Asset Forfeiture Program, which distributes federal forfeiture proceeds to the City.  *Id*. ¶6.  The City declined to accept $15,463 in JAG funds from the DOJ for Fiscal Year 2024-25 because of concerns regarding the DOJ's prohibition of DEI programs and requiring cooperation with federal immigration enforcement.  *Id*. ¶5.  These funds would have been used to purchase simulator modules for de-escalation training.  *Id*.

***City of Santa Cruz***:  The City of Santa Cruz relies on several sources of federal funds administered by DHS, DOJ, and DOI.  Currently, the City has $190,000 in FEMA Hazard Mitigation funding, $360,994 in FEMA Disaster Relief Grant funding, and $12,520,035 in FEMA funding for Public Works projects under contract.  Cabell Decl. ¶5.  Additionally, the city has secured $19,020 in Bulletproof Vest Partnership Grant funding from the DOJ.  *Id*.  Santa Cruz is also in the process of contracting for additional federal funding through the DOI for new water supply projects via the

RENNE PUBLIC LAW GROUP
Attorneys at Law

-10-

WaterSMART Grant programs, and an additional $2,123,000 in FEMA Disaster Relief Grant funding for water projects related to 2023 winter storm damage. *Id*. ¶6.

*City of Beaverton*: The City of Beaverton relies on federal funds administered by DOJ. The City has either been awarded, applied for, or intends to apply for the following federal funds from the BJA, a subdivision of DOJ: $742,000 to the Beaverton Municipal Court for the Beaverton Sobriety Opportunity for Beginning Recovery ("B-SOBR") program; $500,000 for the Community Project Funding Byrne Discretionary Grants Program; $54,269 in JAG funding; and $20,228.50 from the Patrick Leahy Bulletproof Vest Partnership (BVP) Program. Coffey Decl. ¶3; Jepson Decl. ¶3.

The City has also received $68,479.50 in Emergency Management Performance Grant (EMPG) funds from FEMA to support the operational costs of the City's Emergency Management Department and to build and sustain capabilities that address high-consequence events. Jepson Decl. ¶¶3, 6.[3]

*City of Corvallis*: The City of Corvallis relies on federal funds administered by DHS, DOJ, and DOI. In 2023, the city was awarded approximately $1,200,000 in Ground Emergency Medical Transportation funding from DHS. Janes Decl. ¶3. For 2024, the city has received $800,000 so far and is awaiting additional payments for the second half of the year, expecting a total amount comparable to 2023. *Id*. The city has submitted cost reports for 2025, but has not yet received confirmation regarding funding amounts. *Id*. This funding offsets the difference between the actual cost of providing ambulance transport services to Medicaid patients and what can be billed to Medicaid. *Id*. ¶4. Additionally, the city has previously been awarded and has applied again for Patrick Leahy Bulletproof Vest Partnership Program funding from DOJ, receiving $10,300 for 2024 and $16,800 for 2023, with 2025 funding information anticipated in May 2026. Harvey Decl. ¶3. Lastly, Corvallis has been awarded $875,790.95 from the DOI's Land and Water Conservation Fund Grant Program. Petit Decl. ¶3.

*City of Hillsboro*: The City of Hillsboro relies on federal funds administered by DHS, DOJ, and DOI. This includes $506,300 from two Land and Water Conservation Fund grants from DOI, $1,104,000 in funding from the HSGP and HMGP through FEMA and DHS, as well as $24,974,599.64

---

[3] The operative complaint does not reflect that the City of Beaverton receives funding from FEMA or designates the City as a DHS Plaintiff. Plaintiffs intend to amend the complaint at such time as may be appropriate.

-11-

PLS.' NOTICE OF MOT. & MOT. FOR PRELIM. INJ. & PRELIM. RELIEF - Case No. 3:26-cv-01535-WHO

in FMA grant funding from DHS.  Hammond Decl. ¶3.  The City has also been awarded $533,000 in Stop Violence Against Women and $92,045 in JAG funding from DOJ.  *Id*.  Although the City considered applying for $224,000 in COPS Safer Outcomes Grant Program funding from DOJ, it abstained due to concerns about compliance with the Challenged Conditions.  *Id*. ¶4.  However, the City is pursuing additional funding in 2026 and intends to apply for additional funds in the future.  *Id*.

*City of Stockton*:  Stockton relies on federal funds administered by DOJ and DOI.  The City has been awarded $500,000 in COPS Safer Outcomes: Enhancing De-escalation and Crisis Response Training for Law Enforcement funding from DOJ.  McDonald Decl. ¶3.  The City has also been awarded $4,273,925 in WaterSMART Water and Energy Efficiency Grant programs from DOI.  Small Decl. ¶3.

*County of San Diego*:  The County of San Diego relies on federal funds administered by DOJ. The County has applied for federal funds from the Office for Victims of Crime, a subdivision of DOJ, seeking $1,900,000 in ECM Task Force to Combat Human Trafficking funds for Fiscal Year 2025. Strong Decl. ¶3.  Additionally, the county intends to apply for up to $3,000,000 in Public Safety and Mental Health Initiative funding for Fiscal Year 2025 from the OJP, also under the DOJ.  *Id*. ¶4.

*County of Los Angeles*:  Los Angeles County Department of Parks and Recreation has applied for, and been conditionally awarded, a DOI, National Parks Service Land and Water Conservation Fund grant through the State of California Natural Resources Agency in the amount of approximately $15 million for the development of a section of the 40-acre Western Deck of the former Puente Hills Landfill, including a 5-acre bike skills course, a children's nature play area, a picnic area, an amphitheater, dog run, open grassland and ceremonial space.  Bokde Decl. ¶5.  The Los Angeles County Department of Medical Examiner currently receives more than $243,547 annually in federal funds from DOJ for the BJA Coverdell Grant Program.  Shaw Decl. ¶5.  The Los Angeles County District Attorney has applied for the DOJ FY2025 Services for Victims of Crime grant in the amount of $500,000.  Kaur Decl. ¶5. The DA declined to apply for the DOJ BJA FY2025 National Sexual Assault Kit Initiative for $2.5 million because the application included DEI and immigration-related certifications.  *Id*. ¶9.

*County of Santa Barbara*:  The County of Santa Barbara relies on federal funds administered by DHS, DOJ, and DOI.  The County has been awarded $122,375 by the DOJ through the JAG Program to support the County's Bomb Squad Program.  Camarena Decl. ¶3.  Additionally, a JAG grant of $105,024

PLS.' NOTICE OF MOT. & MOT. FOR PRELIM. INJ. & PRELIM. RELIEF - Case No. 3:26-cv-01535-WHO

RENNE PUBLIC LAW GROUP
Attorneys at Law

has been awarded to purchase a mobile X-ray machine for analyzing suspicious packages. *Id.* The County has also received $686,972 in CalOES grants from the OVC and $385,000 in Smart Prosecution – Innovative Prosecution Solutions grants from the BJA. Soderman Decl. ¶3. Furthermore, $360,000 has been allocated for OVC Services for Victims of Human Trafficking, and $500,000 for increasing the availability of medical forensic examinations for victims of sexual assault. *Id.*

From FEMA, under DHS, the County has been awarded $914,316 in Public Assistance and HMGP funding for infrastructure repair and improvements, specifically the performance of a right-of-way survey and concurrent physical replacement of each survey monument. Jevremovic Decl. ¶3–4. Additionally, $1,384,040 in HMGP funding has been allocated for the San Marcos Grade Stabilization Project. Estaji Decl. ¶3. The County has also been involved with $7,716,975.24 in HMGP grants to fund debris basin capacity improvement projects. Rubalcava Decl. ¶3–4. Furthermore, the County has secured $448,412 in HSGP funds and $200,919 in EMPG funds for Fiscal Year 2025, with expectations of similar funding in the future. Hubbard Decl. ¶3. Lastly, it has been awarded $436,667 from DOI to fund the Water-Wise Landscape Rebate Program. Major Decl. ¶3.

**C.      Defendants Imposed Unlawful Conditions on Congressionally Appropriated Funding**

Since taking office, President Trump has sought to impose his domestic policy agenda by issuing numerous executive orders ("EOs") directing executive agencies to impose conditions on federal funding. These EOs include EO No. 14173, 90 Fed. Reg. 8633 (Jan. 31, 2025) (Ending Illegal Discrimination and Restoring Merit-Based Opportunity); EO No. 14218, 90 Fed. Reg. 10581 (Feb. 19, 2025) (Ending Taxpayer Subsidization of Open Borders); EO No. 14287, 90 Fed. Reg. 18761 (Apr. 28, 2025) (Protecting American Communities From Criminal Aliens); EO No. 14168, 90 Fed. Reg. 8615 (Jan. 30, 2025) (Defending Women from Gender Ideology Extremism); and EO No. 14332, 90 Fed. Reg. 38929 (Aug. 7, 2025) (Improving Oversight of Federal Grantmaking). Pursuant to these EOs and other policy directives, Defendants have incorporated new conditions into grant programs' terms and conditions and agreements.

**1.      DHS Conditions**

On or around April 18, 2025, DHS issued new sets of "Standard Terms and Conditions" applicable to all federal awards. *See* Request for Judicial Notice in Support of Plaintiffs' Motion For

PLS.' NOTICE OF MOT. & MOT. FOR PRELIM. INJ. & PRELIM. RELIEF - Case No. 3:26-cv-01535-WHO

Preliminary Injunction ("RJN"), Ex. A, U.S. Dep't of Homeland Security, Notice of Funding Opportunity for FY 2025 Standard Terms and Conditions ("DHS Standard Terms").

Section IX of the Standard Terms and Conditions requires entities receiving federal funds through DHS to "comply with" conditions "related to coordination and cooperation" with federal immigration officials. *Id*. at 4–5. Although this section references certain existing federal statutes that Plaintiffs are already subject to, the section imposes additional new conditions without any basis in federal statute.

Section IX(1)(c) requires recipients of DHS funds to "honor requests for cooperation, such as participation in joint operations, sharing of information, or requests for short term detention of an alien pursuant to a valid detainer." *Id*. Section IX(1)(d) requires that "they will provide access to detainees, such as when an immigration officer seeks to interview a person who might be a removable alien" and subdivision (e) of the same section requires "they will not leak or otherwise publicize the existence of an immigration enforcement operation." *Id*. Additionally, Section XVII(2)(iii) of the Standard Terms and Conditions also includes the requirement recipients certify that "[t]hey do not, and will not during the term of this award, operate any program that benefits illegal immigrants or incentivizes illegal immigration." *Id*. at 6. Collectively, these conditions will hereto be referred to as the "DHS Immigration Enforcement Conditions."

Next, Section XVII(2)((i-ii) of the DHS Standard Terms requires recipients to certify that "[t]hey do not, and will not during the term of this financial assistance award, operate any programs that advance or promote DEI, DEIA, or discriminatory equity ideology in violation of Federal anti-discrimination laws" and that "[t]hey do not engage in and will not during the term of this award engage in, a discriminatory prohibited boycott" (the "DHS DEI Condition"). *Id*.

DHS's Standard Terms state that "Recipients must comply with the requirements of Presidential Executive Orders related to grants (also known as federal assistance and financial assistance), the full text of which are incorporated by reference" (the "DHS EO Condition"). *Id*. at 9, § XXXI.

Since FEMA-administered grant programs are DHS grants subject to DHS-wide policies and conditions, the DHS Standard Terms and Conditions described above apply equally to all FEMA grant programs. Accordingly, the DHS DEI Condition, the DHS Immigration Enforcement Condition, and the DHS EO Condition are imposed on FEMA grant recipients and subrecipients as conditions of receiving

RENNE PUBLIC LAW GROUP
Attorneys at Law

federal funds administered by DHS. Furthermore, DHS and FEMA incorporate the DHS Standard Terms and Conditions into individual grant programs through NOFOs issued for specific fiscal years and programs. For example, the Fiscal Year 2025 HSGP NOFO expressly incorporates the DHS Standard Terms and Conditions by reference and states that all awards made under the NOFO are subject to those Terms and Conditions as a condition of acceptance. *See* RJN, Ex. B, U.S. Dep't of Homeland Security, FY25 Homeland Security Grant Program NOFO at 42, 50.

The HSGP NOFO further requires funding recipients to report whether "subrecipient's work or mission involves supporting aliens, regardless of whether FEMA funds support such activities," "[w]hether the payment request includes an activity involving support to aliens," and "[w]hether the subrecipient has any DEI practices" (the "HSGP Reporting Condition"). *Id*. at 49–50. It also contains a condition that "Recipients must comply with the requirements of Presidential Executive Orders related to grants (also known as federal assistance and financial assistance), the full text of which are incorporated by reference" (the "HSGP EO Condition"), which is identical to the DHS EO Condition in the DHS Standard Terms discussed above. *Id*. at 42.

Collectively, the DHS Immigration Enforcement Conditions, DHS DEI Condition, DHS EO Condition, HSGP Reporting Condition, and the HSGP EO Condition are called the "DHS Conditions."

### 2. DOJ Conditions

The Attorney General (at the time, Pamela Bondi) implemented the above-referenced executive orders across the various divisions and grant programs administered by the DOJ. In a February 5, 2025, letter to DOJ, Bondi stated that DOJ's Civil Rights Division will "penalize" and "eliminate" "illegal DEI and DEIA" activities, characterizing such programs as discriminatory if they "divide individuals based on race or sex." The letter suggests this may include race- or gender-based affinity groups or even teaching about racial history. *See* RJN, Ex. C, Letter from Pamela Bondi, Attorney General, to all DOJ Employees (Feb. 5, 2025) ("Bondi Memo I").

A second letter from Bondi, this time directly to grant recipients, issued on July 29, 2025, purports to clarify how federal antidiscrimination laws apply to DEI programs. The letter states that entities that promote DEI training programs that include discussions of inherent bias, white privilege, or toxic masculinity violate federal law. The letter also instructs entities to "[m]onitor their parties that

-15-

PLS.' NOTICE OF MOT. & MOT. FOR PRELIM. INJ. & PRELIM. RELIEF - Case No. 3:26-cv-01535-WHO

receive federal funds to ensure ongoing compliance, including reviewing program materials." RJN, Ex. D, Letter from Pamela Bondi, Attorney General, to all Federal Agencies (Jul. 29, 2025) ("Bondi Memo II").

Additionally, in May 2025, Deputy Attorney General Todd Blanche (who has since assumed the role of Acting Attorney General) issued a letter indicating that the DOJ will invoke the Federal Claims Act (FCA) to pursue funding recipients engaged in what it characterizes as "civil rights fraud"— including DEI initiatives. Along with starting an initiative to "utilize the [FCA] to investigate and, as appropriate, pursue claims against any recipient of federal funds," the letter states that DOJ "strongly encourages" private FCA lawsuits against funding recipients. RJN, Ex. E, Letter from Todd Blanche, Deputy Attorney General, to DOJ Offices, 19 Divisions, and U.S. Attorneys (May 19, 2025) ("Blanche Memo").

As detailed below, the various offices and divisions of the DOJ that administer federal funding have implemented these directives by including conditions in their general terms as well as specific NOFOs.

### a.    Office of Justice Programs and Office on Violence Against Women DEI Conditions

On or around May 12, 2025, the DOJ's Office of Justice Programs (OJP) published "General Conditions" for OJP Awards in FY 2025. *See* RJN, Ex. F, U.S. Dep't of Justice, General Conditions for OJP Awards in FY 2025. The General Conditions included a term (the "OJP DEI Condition") providing:

> The recipient agrees that its compliance with all applicable Federal civil rights and nondiscrimination laws is material to the government's decision to make this award and any payment thereunder, including for purposes of the False Claims Act (31 U.S.C. 3729-3730 and 3801-3812), and, by accepting this award, certifies that it does not operate any programs (including any such programs having components relating to diversity, equity, and inclusion) that violate any applicable Federal civil rights or nondiscrimination laws.

The Office on Violence Against Women (OVW) FY 2026 General Terms and Conditions include

-16-

PLS.' NOTICE OF MOT. & MOT. FOR PRELIM. INJ. & PRELIM. RELIEF - Case No. 3:26-cv-01535-WHO

an identical condition (the "OVW DEI Condition").[4]  RJN, Ex G, U.S. Dep't of Justice, OVW FY 2026 General Terms and Conditions.

**b.      Office for Victims of Crime Conditions**

The NOFOs issued by the Office for Victims of Crime (OVC), a component office of the OJP, also include new unlawful conditions that implement the President's Executive Orders and Bondi's directives.  *See* RJN, Ex. H, U.S. Dep't of Justice, Office of Justice Programs, OVC FY25 Victims of Crime Act (VOCA) Victim Assistance Formula Grant NOFO; *id.*, Ex. I, U.S. Dep't of Justice, Office of Justice Programs, OVC FY25 Victims of Crime Act (VOCA) Victim Compensation Formula Grant NOFO; *id.*, Ex. J, U.S. Dep't of Justice, Office of Justice Programs, OVC FY25 Services for Victims of Crime NOFO; *id.*, Ex. K, U.S. Dep't of Justice, Office of Justice Programs, OVC FY25 Enhanced Collaborative Model (ECM) Task Force to Combat Human Trafficking NOFO; *id.*, Ex. L, U.S. Dep't of Justice, Office of Justice Programs, OVC FY25 Services for Victims of Human Trafficking NOFO; *id.*, Ex. M, U.S. Dep't of Justice, Office of Justice Programs, OVC FY25 Integrated Services for Minor Victims of Human Trafficking NOFO; *id.*, Ex. N, U.S. Dep't of Justice, Office of Justice Programs, OVC FY25 Preventing Trafficking of Girls NOFO; *id.*, Ex. O, U.S. Dep't of Justice, Office of Justice Programs, OVC FY25 Housing Assistance for Victims of Human Trafficking NOFO.[5]

The eight above-identified OVC NOFOs all list as an "unallowable use," "[a]ny program or activity that, directly or indirectly, violates (or promotes or facilitates the violation of) federal immigration law (including 8 U.S.C. § 1373) or impedes or hinders the enforcement of federal immigration law—including by failing to comply with 8 U.S.C. § 1373, give access to DHS agents, or

[4] The OVW webpage containing the FY 2026 General Terms and Conditions, provides the following notice at the top of the page: "Attention – Preliminary Stay on Fiscal Year 2025 Condition #15: Pursuant to a Federal District Court order, fiscal year (FY) 2025 general award condition #15 is subject to a preliminary stay in *Rhode Island Coalition Against Domestic Violence, et al., v. Pamela Bondi, et al.*, and is therefore not enforceable as to any OVW FY 2025 awards unless and until the preliminary stay is lifted."  *See* https://www.justice.gov/ovw/fy-2026-general-terms-and-conditions (last visited April 7, 2026).

[5] Pursuant to a court order (*see Freedom Network USA v. Trump*, No. 25 C 12419, Dkt. 74 (N.D. Ill. Feb. 24, 2026), DOJ amended the TVPA grants NOFOs (*see* RJN., Exs. K–O) to provide notice that The U.S. District Court for the Northern District of Illinois has entered a Temporary Restraining Order, relating to certain provisions contained in this NOFO—specifically, the provisions in paragraphs 1 and 2 under the heading "Unallowable Uses of Funds" and the certification matter described under the "Civil Rights Compliance" subheading of the NOFOs.

RENNE PUBLIC LAW GROUP
Attorneys at Law

honor DHS requests and provide requested notice to DHS agents" and is "out of the program scope and will not be funded" (the "OVC Immigration Enforcement Condition").  RJN, Exs. H–O.  Six of the eight OVC NOFOs identified above provide that "OJP will provide priority consideration to applicants that propose (as applicable within the scope of this funding opportunity) projects…[d]irectly supporting law enforcement operations (including immigration law enforcement operations)," (the "OVC Immigration Priority Condition").  *Id.*, Exs. J–O.

DOJ also inserted new conditions related to DEI into its various NOFOs.  The above-identified OVC NOFOs all include the following: "each recipient will be required to certify (in its acceptance of the conditions of the award) that it does not operate any programs (including any such programs having components relating to diversity, equity, and inclusion) that violate any applicable Federal civil rights or nondiscrimination laws" (the "OVC DEI Condition").  RJN, Exs. H–O.

Additionally, the VOCA Victim Compensation Formula Grant NOFO also lists as an "unallowable use" "[a]ny program or activity that, directly or indirectly, violates (or promotes or facilitates the violation of) any applicable Federal civil rights or nondiscrimination law (e.g., by unlawfully favoring or disfavoring individuals in any race or group on the basis that it is (or is not) a majority or minority (or privileged or unprivileged) race or group in a given area or population or sector), including in any program or activity having any component relating to diversity, equity, or inclusion," (the "OVC DEI Condition II").  RJN, Ex. I.  The seven other OVC NOFOs identified above contain a similar condition, excluding the last clause's explicit reference to DEI.  The term lists as an "unallowable use" "[a]ny program or activity that violates any applicable Federal civil rights or nondiscrimination law. This includes violations that (1) indirectly violate the law, including by promoting or facilitating violations, or (2) unlawfully favor individuals in any race or protected group, including on a majority or minority, or privileged or unprivileged, basis, within a given area, population, or sector"  (the "OVC DEI Condition III").  *Id.*, Exs. H, J–O.

### c.     Bureau of Justice Assistance Conditions

The BJA is another component office of the OJP.  The BJA FY2025 Paul Coverdell Forensic Science Improvement – Competitive Grants Program, or Coverdell Grant, NOFO includes a DEI condition identical to the OVC DEI condition discussed above, (the "BJA DEI Condition") and lists as

-18-

RENNE PUBLIC LAW GROUP
Attorneys at Law

unallowable "any program or activity, at any tier that, directly or indirectly, violates (or promotes or facilitates the violation of) federal immigration law (including 8 U.S.C. § 1373) or impedes or hinders the enforcement of federal immigration law—including by failing to comply with 8 U.S.C. § 1373, give access to DHS agents, or honor DHS requests and provide requested notice to DHS agents," (the "BJA Immigration Enforcement Condition"). RJN, Ex. P, U.S. Dep't of Justice, Office of Justice Programs, BJA FY25 Paul Coverdell Forensic Science Improvement – Competitive Grants Program NOFO. The BJA Immigration Enforcement Condition is substantively the same as the OVC Immigration Enforcement Condition.

Additionally, the Coverdell Grant provides "OJP will provide priority consideration to applicants that propose (as applicable within the scope of this funding opportunity) projects…[d]irectly supporting law enforcement operations (including immigration law enforcement operations)," (the "BJA Immigration Priority Condition"). *Id*. The BJA Immigration Priority Condition is substantively the same as the OVC Immigration Priority Condition.

### d.      Community Oriented Policing Services Office Conditions

The NOFOs for FY2025 issued by the COPS Office also incorporate the Challenged Conditions. The FY2025 COPS Community Policing Development Microgrants states that applicants may not use funding to "promote gender ideology" (the "COPS Gender Ideology Condition") or "for projects that provide or advance diversity, equity, inclusion, and accessibility, or environmental justice programs, services, or activities," (the "COPS DEI Condition"). RJN, Ex. Q, U.S. Dep't of Justice., FY2025 COPS Community Policing Development Microgrants NOFO. This NOFO also provides that priority consideration will be given to state or local law enforcement applicants who respond affirmatively to the application question related to cooperation with federal immigration officials (the "COPS Immigration Priority Conditions"). *Id*.

The FY2025 NOFOs for the COPS Safer Outcomes: Enhancing De-Escalation and Crisis Response Training for Law Enforcement program and LEMHWA Implementation Projects include similar conditions regarding immigration, DEI,  "gender ideology," and compliance with EOs. *See* RJN, Ex. R, U.S. Dep't of Justice., NOFO FY25 COPS Safer Outcomes: Enhancing De-Escalation and Crisis Response Training for Law Enforcement; *id.*, Ex. S, U.S. Dep't of Justice, Notice of Funding

PLS.' NOTICE OF MOT. & MOT. FOR PRELIM. INJ. & PRELIM. RELIEF - Case No. 3:26-cv-01535-WHO

RENNE PUBLIC LAW GROUP
Attorneys at Law

Opportunity for FY25 Law Enforcement Mental Health and Wellness Act (LEMHWA) Implementation Projects.

Additionally, in or around August 2025, the DOJ published the 2025 COPS Office Law Enforcement LEMHWA Program Award Owner's Manual, as "binding guidance" that compliance with was "a condition of your award."  RJN, Ex. T, U.S. Dep't of Justice, 2025 COPS Office LEMHWA Program Award Owner's Manual.  The LEMHWA Manual includes a provision requiring recipients to certify "that it does not operate any programs (including any such programs having components relating to diversity, equity, and inclusion) that violate any applicable Federal civil rights or nondiscrimination laws." *Id*. at 42 (the "LEMHWA Owner's Manual DEI Condition").  The LEMHWA Manual also requires that recipients "must comply with all applicable federal laws and Presidential Memoranda and all Executive Orders by the President," (the "LEMHWA Owner's Manual EO Condition").  *Id*.  The 2025 COPS Office Safer Outcomes Program Award Owner's Manual contains the same conditions as the LEMHWA Program Award Owner's Manual.  *See Id*., Ex U, U.S. Dep't of Justice, 2025 COPS Office Safer Outcomes Program Award Owner's Manual (the "COPS Owner's Manual DEI Condition" and "COPS Owner's Manual EO Condition").

Collectively, the OJP DEI Condition, OVW DEI Condition, OVC Immigration Enforcement Condition, OVC Immigration Priority Condition, OVC DEI Condition, OVC DEI Condition II, OVC DEI Condition III, BJA DEI Condition, BJA Immigration Enforcement Condition, COPS Gender Ideology Condition, COPS DEI Condition, COPS Immigration Priority Conditions, LEMHWA Owner's Manual DEI Condition, LEMHWA Owner's Manual EO Condition, COPS Owner's Manual DEI Condition, and the COPS Owner's Manual EO Condition will hereto be referred to as the "DOJ Conditions."

Collectively, the OJP DEI Condition, OVW DEI Condition, OVC DEI Condition, OVC DEI Condition II, OVC DEI Condition III, BJA DEI Condition, COPS DEI Condition, the LEMHWA Owner's Manual DEI Condition, COPS Owner's Manual DEI Condition, and the COPS Gender Ideology Condition will hereto be referred to as the "DOJ DEI Conditions."

Collectively, the OVC Immigration Enforcement Condition, OVC Immigration Priority Condition, BJA Immigration Enforcement Condition, BJA Immigration Priority Condition, and the

-20-

PLS.' NOTICE OF MOT. & MOT. FOR PRELIM. INJ. & PRELIM. RELIEF - Case No. 3:26-cv-01535-WHO

COPS Immigration Priority Conditions will hereto be referred to as the "DOJ Immigration Conditions."

### 3.    DOI Conditions

DOI and its operating divisions and agencies have also attached new and unlawful conditions to the portfolio of DOI grants established by Congress. On or around July 30, 2025, the DOI's Office of Grants Management issued General Award Terms and Conditions. *See* RJN, Ex. V, U.S. Dep't of the Interior, Office of Grants Management, General Award Terms and Conditions. These conditions include a provision that states: "In accepting this award the grant recipient agrees to operating in compliance in all respects with all applicable Federal anti-discrimination laws, and certify that it does not operate any programs promoting diversity, equity and inclusion programs that violate any applicable Federal antidiscrimination laws." (the "DOI DEI Condition"). *Id*. at 1.

On March 5, 2026 DOI posted three NOFOs for the WaterSMART Drought Response Program, WaterSMART: Applied Science Grants, and Small-Scale Water Efficiency Projects. *See* RJN, Ex. X, U.S. Dep't of Interior, Bureau of Reclamation, WaterSMART Drought Response Program NOFO; *id*., Ex. Y, U.S. Dep't of Interior, Bureau of Reclamation, WaterSMART: Applied Science Grants NOFO; *id*., Ex. Z, U.S. Dep't of Interior, Bureau of Reclamation, Small-Scale Water Efficiency Projects NOFO.

Each NOFO provides that "an initial review will be performed to determine whether…the proposed project is in compliance with all applicable executive and secretary orders, including the President's executive order on Ending Radical and Wasteful Government DEI Programs and Preferencing as well as the executive order and Secretary order on Restoring Truth and Sanity to American History. If an applicant fails to meet the requirements or objectives of the NOFO, or does not provide sufficient information for review, the applicant will be considered nonresponsive and eliminated from further review." *see id*., Ex. X at 31; *id*., Ex. Y at 20; *id*., Ex. Z at 21 (the "WaterSMART DEI Condition").

Additionally, the WaterSMART Drought Response Program and Small-Scale Water Efficiency Projects NOFOs provide that "[b]y applying in response to this Notice of Funding Opportunity, the applicant certifies awareness and compliance with all currently effective and applicable executive orders and secretary's orders, including but not limited to the Executive Order titled Ending Radical and Wasteful Government DEI Programs and Preferencing as well as the Executive Order and Secretary's

RENNE PUBLIC LAW GROUP
Attorneys at Law

order titled Restoring Truth and Sanity to American History.  Applicants are responsible for ensuring their proposed activities are consistent with the intent and requirements of these directives." *see id.*, Ex. X at 12; *id.*, *id.*, Ex. Z at 9 (the "WaterSMART DEI Condition II").

Collectively, the DOI DEI Condition, WaterSMART DEI Condition, and WaterSMART DEI Condition II will hereto be referred to as the "DOI Conditions" or "DOI DEI Conditions."[6]

## III.    LEGAL STANDARD

"To obtain a preliminary injunction, a plaintiff must establish (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm in the absence of preliminary relief, (3) that the balance of equities favors the plaintiff, and (4) that an injunction is in the public interest." *Geo Group, Inc. v. Newsom*, 50 F.4th 745, 753 (9th Cir. 2022) (en banc) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).  Where "the party opposing injunctive relief is a government entity, the third and fourth factors—the balance of equities and the public interest—'merge.'" *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 695 (9th Cir. 2023).

"On such conditions as may be required and to the extent necessary to prevent irreparable injury," courts "may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings."  5 U.S.C. § 705. "The postponement of agency action under the APA is governed by the preliminary injunction factors." *Nat'l TPS Alliance v. Noem*, 150 F.4th 1000, 1015 (9th Cir. 2025).

## IV.    ARGUMENT

### A.    Plaintiffs' Causes of Action Are Justiciable

#### 1.    Plaintiffs Have Standing to Contest the Unlawful Conditions

A plaintiff has standing under Article III of the United States Constitution if (1) they have suffered an injury-in-fact or face an imminent injury; (2) the injury is fairly traceable to the defendant's

---

[6] This motion does not seek relief from provisions that require compliance with existing federal statutes, including Title IX or Title VI of the Civil Rights Act of 1964 or 8 U.S.C. §§ 1373, 1600 et seq.  The Challenged Conditions, however, go well beyond requiring compliance with federal law.  By their terms, they prohibit undefined categories of programs and activities that allegedly "promote" DEI and so-called "gender ideology", and "benefit," "incentivize," or "promote" illegal immigration, or "indirectly" violate federal immigration law.  In doing so, the conditions impose new and indeterminate obligations untethered to any statutory mandate.  Plaintiffs are seeking relief to the extent these conditions create additional ambiguous requirements not grounded in federal statute.

PLS.' NOTICE OF MOT. & MOT. FOR PRELIM. INJ. & PRELIM. RELIEF - Case No. 3:26-cv-01535-WHO

conduct; and (3) a favorable decision would likely redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

An injury-in-fact must be concrete and particularized, or imminent. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). An injury is concrete when it has a "close relationship" to a harm "traditionally" recognized as providing a basis for suit. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). An injury is particularized if it affects the plaintiff in a "personal and individual way." *Spokeo*, 578 U.S. at 339 (internal citation omitted). An injury is actual or imminent if it has already occurred or there is a substantial risk that it will occur. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105–06 (1983).

Here, Plaintiffs rely on millions in federal funds to support crucial infrastructure, public safety, and service programs. However, Defendants—without warning or explanation—have imposed new ambiguous and unlawful conditions on virtually all federal funds they oversee. There is a significant, substantial, and imminent risk that Plaintiffs will be forced to choose between implementing the unlawful conditions and forgoing funding. In fact, some Plaintiffs have already forgone funding they would have otherwise sought if not for the Challenged Conditions. *See* Heisinger Decl. ¶4-5; Kaur Decl. ¶9; Hammond Decl. ¶4; Casto Decl. ¶5.

"[A] loss of funds promised under federal law satisfies Article III's standing requirement." *City & Cnty. of San Francisco v. Trump* ("*San Francisco*"), 897 F.3d 1225, 1235 (9th Cir. 2018) (cleaned up); *see also Dep't of Commerce v. New York*, 588 U.S. 752, 767 (2019) ("[L]os[ing] out on federal funds . . . is a sufficiently concrete and imminent injury to satisfy Article III . . . ."); *Arizona v. Yellen*, 34 F.4th 841, 852 (9th Cir. 2022). This imminent loss of funds through infringement of Plaintiffs' rights is traceable to the unlawful Federal Grant Conditions and redressable by an order restraining their enforcement. Accordingly, Plaintiffs have standing. *See Cnty. of Santa Clara v. Noem*, 815 F. Supp. 3d 979, 1019–23 (N.D. Cal. 2025).

**2.     This Court Has Jurisdiction to Review the Lawfulness of the Challenged Conditions**

Plaintiffs' claims "aris[e] under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, are subject to the APA's waiver of sovereign immunity, 5 U.S.C. § 702, and thus are squarely within this Court's jurisdiction. In other federal funding cases, the Administration has argued that the

RENNE PUBLIC LAW GROUP
Attorneys at Law

Tucker Act—which confers jurisdiction on the Court of Federal Claims (CFC) for damages claims founded upon a contract with the United States, *see* 28 U.S.C. § 1491(a)(1)—"'impliedly forbids' an APA action" challenging federal grant conditions. *See City of Fresno v. Turner*, No. 25-cv-07070-RS, 2025 WL 2721390, at *5–6 (N.D. Cal. Sept. 23, 2025) (quoting *United Aeronautical Corp. v. U.S. Air Force*, 80 F.4th 1017, 1026 (9th Cir. 2023)). But nothing in the Tucker Act deprives this Court of jurisdiction to grant the equitable relief Plaintiffs seek here.

"Plaintiffs frequently seek vacatur of internal agency guidance on arbitrary-and-capricious grounds in district court or directly in the D.C. Circuit. . . . That the agency guidance discusses internal policies related to grants does not transform a challenge to that guidance into a claim 'founded ... upon' contract that only the CFC can hear." *Nat'l Institutes of Health v. Am. Pub. Health Ass'n* ("*NIH*"), 145 S. Ct. 2658, 2661 (2025) (Barrett, J., concurring in partial grant of application for stay) (quoting 28 U.S.C. § 1491(a)(1)). Moreover, claims involving "rights and remedies" that "are *statutorily* or *constitutionally* based" are not subject to the Tucker Act. *United Aeronautical Corp.*, 80 F.4th at 1026 (cleaned up).

Here, Plaintiffs' claims do not seek to enforce contractual rights and do not seek damages. Instead, they seek to vindicate their rights to participate in congressionally authorized grant programs free from unlawful conditions. *See City of Fresno*, 2025 WL 2721390 at *6; *NIH*, 145 S. Ct. at 2661 (Barrett, J., concurring) ("The Government is not entitled to a stay of the judgments insofar as they vacate the guidance documents."). A request for equitable relief does not become subject to the Tucker Act merely because "success on the merits may obligate the United States to pay the complainant." *Kidwell v. Dep't of Army, Bd. for Correction of Military Records*, 56 F.3d 279, 284 (D.C. Cir. 1995).

As courts have held, constitutional and APA claims seeking declaratory and injunctive relief are properly within the jurisdiction of the district courts. *See, e.g., San Francisco Unified Sch. Dist. v. AmeriCorps* ("*SFUSD I*"), 784 F. Supp. 3d 1280, 1291–97 (N.D. Cal. 2025) (Tucker Act did not deprive court of jurisdiction to enter a TRO enjoining defendants from imposing and enforcing new conditions on plaintiff's AmeriCorps grants); *Martin Luther King, Jr. Cnty. v. Turner ("King Cnty."*), 785 F. Supp. 3d 863, 877–82 (W.D. Wash. 2025) (similar conclusion regarding HUD and DOT grant conditions); *City of Fresno*, 2025 WL 2721390 at *5–6 (similar).

PLS.' NOTICE OF MOT. & MOT. FOR PRELIM. INJ. & PRELIM. RELIEF - Case No. 3:26-cv-01535-WHO

RENNE PUBLIC LAW GROUP
Attorneys at Law

**B.      Plaintiffs Are Likely to Succeed on the Merits of Their Claims**

**1.      The Unlawful Conditions Are Unconstitutional[7]**

**a.      The Unlawful Conditions Violate the Separation of Powers**

The Separation of Powers doctrine recognizes that the "United States Constitution exclusively grants the power of the purse to Congress, not the President." *San Francisco*, 897 F.3d at 1231.  Federal agencies are "charged with administering congressional statutes," so "their power to act and how they are to act is authoritatively prescribed by Congress."  *Arlington v. FCC*, 569 U.S. 290, 297 (2013).  Agencies may not act "beyond their jurisdiction," in other words, "beyond what Congress has permitted [them] to do."  *Id.* at 297–98.  Rather, executive agencies "literally ha[ve] no power to act . . . unless and until Congress confers power upon it."  *La. Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. 355, 374 (1986).  To this end, "[a]bsent congressional authorization, the Administration may not redistribute or withhold properly appropriated funds in order to effectuate its own policy goals."  *San Francisco*, 897 F.3d at 1235.

Defendants have done exactly that; conditioned congressionally appropriated funds to effectuate President Trump's policy goals.  Nothing in the Constitution or federal statutes authorizes Defendants to impose the Challenged Conditions, or anything of the kind, on funds administered through congressional grant programs.  Furthermore, in substantial ways, the Challenged Conditions conflict with Congress's intent in establishing many of the grant programs at issue.  Defendants have thereby acted beyond what Congress has permitted them to do and have violated constitutional separation of powers.

**i.      DEI Conditions[8]**

None of the statutes establishing the grants at issue in this case authorize federal agencies to condition funds on a recipient's certification not to "operate any programs that advance or promote DEI, DEIA, or discriminatory equity ideology," let alone this Administration's novel, vague, and specious

---

[7] Plaintiffs' claims regarding the challenged grant conditions are constitutional in nature. *See Murphy Co. v. Biden*, 65 F.4th 1122 (9th Cir. 2023); *see also Cnty. of Santa Clara v. Noem*, 815 F. Supp. 3d at 1023–25. Accordingly, broader latitude is afforded Plaintiffs' claims for equitable relief than if they were statutory in nature. *See id* at *29 (citing *League of United Latin Am. Citizens v. Exec. Off. of President*, 808 F. Supp. 3d 29, 69 (D.D.C. 2025)).

[8] The DEI Conditions are the DHS DEI Condition, HSGP Reporting Condition, OJP DEI Condition, OVW DEI Condition, OVC DEI Condition, OVC DEI Condition II, OVC DEI Condition III, BJA DEI Condition, COPS DEI Condition, LEMHWA Owner's Manual DEI Condition, COPS Owner's Manual DEI Condition, DOI DEI Condition, WaterSMART DEI Condition, WaterSMART DEI Condition II, and the COPS Gender Ideology Condition.

PLS.' NOTICE OF MOT. & MOT. FOR PRELIM. INJ. & PRELIM. RELIEF - Case No. 3:26-cv-01535-WHO

conception of what unlawful DEI-based discrimination is.  Nor is there any statute that conditions the award of federal funds to state and local governments on refraining from operating any DEI program, whether or not that program is supported by federal funds.  Accordingly, there is simply no statutory authority for DHS, DOJ, or DOI to impose the DEI Conditions on these grants.

Some agencies, such as the COPS Office and the LEMHWA program, implemented the DEI Order in an unqualified and categorical manner, prohibiting the use of federal funds for any projects that "provide or advance diversity, equity, inclusion, and accessibility, or environmental justice programs, services, or activities," regardless of whether such activities violate federal civil rights laws.  Other agencies purportedly limit the prohibition to DEI-related activities "that violate any applicable Federal civil rights or nondiscrimination laws."  However, Defendants' insertion of such a savings clause does render those conditions consistent with congressional authority.

As the Ninth Circuit has held, simply placing a savings clause at the end of a grant condition cannot cure an otherwise vague, unauthorized, or unlawful condition, nor shield it from judicial review. *See San Francisco*, 897 F.3d at 1238-1240; (upholding the lower court's holding that the phrase "consistent with law" did not save certain Executive Orders).  And the fact that some grant conditions include such savings clauses "does not transform them into pre-existing conditions to comply with federal law that were merely unspoken" or "magically ensure that the conditions incorporating that language only operate in so far as they are within Congress's grant of authority." *City of Fresno*, 2025 WL 2721390, at *8, *10.  Notwithstanding any savings clauses, the challenged DEI Conditions unlawfully attempt to implement and require compliance with the Administration's novel, vague, and legally unsupported policies regarding DEI. *See id.* at *8 (observing that the savings clauses actually announce a significant interpretive change from established law).

Furthermore, the DEI Conditions conflict with congressional authority because they run counter to antidiscrimination law as written by Congress and interpreted by courts.  Multiple district courts have already found that similar DEI Conditions "advances the Administration's own interpretation of 'discrimination'" which is actually "inconsistent with well-established legal precedent." *See City of Chicago v. United States Dep't of Just. ("City of Chicago")*, No. 25 C 13863, 2026 WL 114294, at *6 (N.D. Ill. Jan. 15, 2026) (quoting *Seattle v. Trump,* 808 F. Supp. 3d 1204, 1218 (W.D. Wash. 2025)).

RENNE PUBLIC LAW GROUP
Attorneys at Law

"Put simply, the [DEI Condition] appears contrary to established federal anti-discrimination law." *Id*.; *see also Cnty. of Santa Clara v. Noem*, 815 F. Supp. 3d at 1037 ("[I]t does not appear that any other President has attempted to comprehensively override understanding of federal anti-discrimination law in the way this Administration seeks to through Executive Orders").

The DEI Conditions are actually at odds with Congress's intent in establishing several of the grant programs at issue.  The COPS Statute requires applicants for COPS Grants to "seek, recruit, and hire members of racial and ethnic minority groups and women in order to increase their ranks within the sworn positions in the law enforcement agency."  34 U.S.C. § 10382(c)(11).  Similarly, the TVPA expressly recognizes that trafficking "victims are predominantly women and girls[,]" *see* 22 U.S.C. § 7101(b)(2), and provides grants to support victims who are "women or girls in underserved populations."  *Id*. § 7105(b)(2)(A)(iii).  Accordingly, the DEI Conditions *conflict* with Congress's express intent to consider race, ethnic minorities, and gender in the implementation of these programs.

Likewise, 15 U.S.C. § 2205 requires the Administrator of FEMA to "take such steps as [they] consider[ ] appropriate to educate the public and overcome public indifference as to fire, fire prevention, and individual preparedness."  15 U.S.C. § 2205.  These "public education efforts shall include programs to provide specialized information for those groups of individuals who are particularly vulnerable to fire hazards, such as the young and the elderly."  *Id*.  Therefore, the DEI Conditions also conflict with the purpose set out by Congress in the AFG and SAFER programs to educate "particularly vulnerable" populations about fire safety.  *See id*.; *see also Cnty. of Santa Clara v. Noem*, 815 F. Supp. 3d at 1027 (finding that "the fire related grants do not authorize the DHS Conditions and in fact plainly contradict the programs").

A further example is the DOJ's implementation of EO 14168 ("Defending Women From Gender Ideology Extremism And Restoring Biological Truth To The Federal Government," 90 Fed. Reg. 8615) into the COPS Gender Ideology Condition. EO 14168 establishes a "policy of the United States to recognize two sexes, male and female," and prohibits an inclusive understanding of gender identity. *Id.* Sec. 1; Sec. 2(f).  It also prohibits federal funds from "be[ing] used to promote gender ideology," and requires each agency to "assess grant conditions and grantee performances [to] ensure grant funds do not promote gender ideology." *Id.* Sec. 3(g).  The DOJ COPS Gender Ideology Condition implements this

RENNE PUBLIC LAW GROUP
Attorneys at Law

presidential directive and prohibits funding from being used to "promote gender ideology."

However, Congress has never passed a law prohibiting an inclusive understanding of gender identity. Nor has Congress limited the protections of anti-discrimination law to a binary understanding of biological sex or prohibited the use of federal funds "to promote gender ideology." To the contrary, as courts have recognized, transgender individuals are a protected category under provisions of the Civil Rights Act. *See, e.g.*, *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 683 (2020); *Roe v. Critchfield*, 137 F.4th 912, 928 (9th Cir. 2025); *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 616–17 (4th Cir. 2020); *A.C. by M.C. v. Metro. Sch. Dist. of Martinsville*, 75 F.4th 760, 769 (7th Cir. 2023). Accordingly, "[t]he Gender Ideology Condition likely facially discriminates based on transgender status, violating the Separation of Powers by contravening federal antidiscrimination law." *Hous. Auth. of City & Cnty. of San Francisco v. Turner ("Hous. Auth. v. Turner")*, No. 25-CV-08859-JST, 2025 WL 3187761, at *11 (N.D. Cal. Nov. 14, 2025).

In summary, the DEI Conditions have no basis in statute, and in many instances, conflict with authorizing statutes by prohibiting or restricting Congress's express legislative aims. In doing so, the conditions undermine Congress's policy judgments and substitute the Executive's preferences for the statutory directives governing these grant programs.

### ii.   EO Conditions[9]

The same is true for the EO Condition, which mandates compliance with all "requirements of Presidential Executive Orders related to grants." None of the grant-authorizing statutes requires compliance with all (or any) EOs, nor do they authorize Defendants to superimpose EO compliance on congressionally authorized grants. Congress plainly has not authorized Defendants to add the substantive requirements and prohibitions derived from the President's numerous EOs. *See King Cnty.*, 785 F. Supp. 3d at 886-87 (holding "[s]ubstantive conditions implicating controversial policy matters that are unrelated to the authorizing statute . . . are simply not 'of the same kind' as conditions that require recipients to monitor and report the progress of their program"). Although grant-authorizing statutes may

---

[9] The EO Conditions are DHS EO Condition, HSGP EO Condition, LEMHWA Owner's Manual EO Condition, and the COPS Owner's Manual EO Condition. Additionally, the WaterSMART DEI Condition and WaterSMART DEI Condition II also ambiguously incorporate by reference "all applicable executive and secretary orders."

PLS.' NOTICE OF MOT. & MOT. FOR PRELIM. INJ. & PRELIM. RELIEF - Case No. 3:26-cv-01535-WHO

RENNE PUBLIC LAW GROUP
Attorneys at Law

contain language permitting the executive to issue guidance, *see, e.g.*, 15 U.S.C. § 2229a(2) (directing the FEMA Administrator to "establish and publish guidelines for determining what constitutes economic hardship"), executive agencies do not have "carte blanche to impose political priorities expressed in Presidential Executive Orders on grantees." *City of Chicago v. Noem*, No. 25 CV 12765, 2025 WL 3251222, at *7 (N.D. Ill. Nov. 21, 2025).

### iii.    Immigration Conditions[10]

Similarly, no federal law authorizes Defendants to require localities receiving federal grants to cooperate with federal immigration enforcement, or to carve out activities from the program's scope that "promote[] or facilitate[]" the violation of federal immigration law.  Rather, Congress has repeatedly declined to enact legislation cutting off federal funds for so-called "sanctuary jurisdictions." *See San Francisco*, 897 F.3d at 1231 (holding that the Executive Branch may not withhold federal grants from sanctuary cities without congressional authorization); *see also Hous. Auth. v. Turner*, 2025 WL 3187761, at *11.

Furthermore, the Immigration Conditions are inconsistent with the statutory requirements of the TVPA Programs.  Congress carefully prescribed the permissible priorities and conditions for Human Trafficking Program grants, authorizing the Attorney General to give priority only to applicants that attest grant funds will be used for enumerated anti-trafficking purposes, and expressly prohibiting the use of funds to require trafficking victims to cooperate with law enforcement as a condition of access to services.  22 U.S.C. § 7105(b)(2)(D).  Congress further mandated that victims of "severe forms of trafficking" are eligible for federal benefits and services "without regard to the immigration status of such victims," and required federal agencies to expand such benefits notwithstanding otherwise applicable immigration-related restrictions.  22 U.S.C. § 7105(b)(1)(A), (B).  Prohibiting the funding of any program or activity that "impedes or hinders the enforcement of federal immigration law" and providing "priority consideration" to applicants that propose projects directly supporting immigration law enforcement operations not only exceeds Defendants' authority but also affirmatively undermines

---

[10] The Immigration Conditions are the DHS Immigration Enforcement Conditions, HSGP Reporting Condition, OVC Immigration Enforcement Condition, OVC Immigration Priority Condition, BJA Immigration Enforcement Condition, BJA Immigration Priority Condition, and the COPS Immigration Priority Conditions.

-29-

PLS.' NOTICE OF MOT. & MOT. FOR PRELIM. INJ. & PRELIM. RELIEF - Case No. 3:26-cv-01535-WHO

Congress's express determination that access to services should not be conditioned on cooperation with law enforcement and that TVPA Program benefits should be provided notwithstanding otherwise applicable immigration-related restrictions.

***

The Challenged Conditions far exceed the authority delegated to Defendants by Congress and contradict a variety of federal laws in meaningful and consequential ways.  Plaintiffs are therefore likely to succeed on the merits of their claim that the challenged grant conditions violate the Separation of Powers.  This Court has already found that similarly situated plaintiffs challenging the DHS Conditions are likely to succeed on their Separation of Powers claim.[11]  *See Cnty. of Santa Clara v. Noem*, 815 F. Supp. 3d at 1028; *see also City of Chicago v. Noem*, 2025 WL 3251222 at *9–10 (enjoining imposition of the DHS DEI conditions on APA grounds holding that they likely violate separation of powers). Other District Courts have found that DOJ acted beyond its congressional authorization by attaching the Challenged Conditions to COPS Program grants and grants administered pursuant to the TVPA.  *See City of Chicago*, 2026 WL 114294 at *7 ("the Court finds that Plaintiffs are likely to show that, by attaching the Challenged Conditions to the COPS grants, Defendants acted beyond what Congress has permitted them to do and have thus violated constitutional separation of powers"); *Freedom Network USA v. Trump*, No. 25 C 12419, 2026 WL 800392, at *13–18 (N.D. Ill. Mar. 23, 2026) (holding that plaintiff has shown that it is likely to succeed on its claim that imposition of the DOJ Conditions to the TVPA Grants violates separation-of-powers); *see also City & Cnty. of San Francisco v. United States Dep't of Just. ("S.F. v. DOJ")*, No. 25-CV-09277-JD, 2026 WL 177945, at *6 (N.D. Cal. Jan. 21, 2026) (finding "[the COPS Act's] language is clear and direct, and leaves no room for the conditions the government seeks to impose here.").  For the same reasons, the DOI DEI Conditions also violates Separation of Powers.

### b.    The Unlawful Conditions Violate Spending Power Constraints

The Spending Clause of the Constitution provides Congress with "broad power . . . to set the terms on which it disburses federal funds." *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212,

---

[11] This Court also previously found that "Defendants' arguments here have been soundly rejected by courts around the country, which have found similar agency conditional funding schemes to be unconstitutional."  *Cnty. of Santa Clara v. Noem*, 815 F. Supp. 3d at 991 n.3 (listing cases); *see also California v. United States Dep't of Transportation*, 788 F. Supp. 3d 316, 322 (D.R.I. 2025).

-30-

PLS.' NOTICE OF MOT. & MOT. FOR PRELIM. INJ. & PRELIM. RELIEF - Case No. 3:26-cv-01535-WHO

RENNE PUBLIC LAW GROUP
Attorneys at Law

216 (2022).  But the spending power is "subject to several general restrictions."  *South Dakota v. Dole*, 483 U.S. 203, 207 (1987).  The Ninth Circuit has concluded that the Spending Clause "appl[ies] to agency-drawn conditions on grants to states and localities just as they do to conditions Congress directly places on grants."  *City of Los Angeles v. Barr*, 929 F.3d 1163, 1175 n.6 (9th Cir. 2019); *see also San Francisco Unified Sch. Dist. v. AmeriCorps ("SFUSD II")*, 789 F. Supp. 3d 716, 744 (N.D. Cal. 2025).  Here, the Challenged Conditions are unlawful because they contravene spending-power constraints in at least two respects: they are impermissibly unambiguous and are unrelated to the content of the grants.

### i.       The Unlawful Conditions Are Ambiguous

"[I]f Congress desires to condition the States' receipt of federal funds, it 'must do so unambiguously.'"  *Cnty. of Santa Clara v. Noem,* 815 F. Supp. 3d at 1030 (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981)).  "Knowing acceptance requires awareness of the conditions or an ability to 'ascertain what is expected of it.'" *SFUSD II*, 789 F. Supp. 3d at 745 (quoting *Pennhurst*, 451 U.S. at 17).  "By insisting that Congress speak with a clear voice, [States and their political subdivisions are enabled] to exercise their choice knowingly, cognizant of the consequences of their participation." *Pennhurst*, 451 U.S. at 17.  But when a State's "potential obligations . . . are largely indeterminate," a grant may be ambiguous.  *Id*. at 24.  "When determining the ambiguity of conditions on federal grants, courts evaluate 'whether [a recipient] . . . would clearly understand . . . the obligations of the [conditions]." *City of Fresno*, 2025 WL 2469330, at *6 (quoting *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006)).  Here, the grant conditions are irremediably ambiguous, making it impossible for public entities to understand their meaning, scope, and application, let alone the entities' obligations under the conditions.

### (a)       DEI Conditions

The DEI Conditions generally provide that grantees will "not . . . operate any programs that advance or promote DEI, DEIA, or discriminatory equity ideology in violation of Federal anti-discrimination laws" and lists as an unallowable use of funds "projects that provide or advance diversity, equity, inclusion, and accessibility, or environmental justice programs, services, or activities."  The meaning and scope of the DEI Conditions, especially when read in context with the executive orders and DOJ memoranda, are unclear.  First, crucial terms are left ambiguous or undefined and thus provide

-31-

plaintiffs with no guidance on how to comply with the conditions.  While the DEI Conditions require that plaintiffs refrain from "advanc[ing] or promot[ing]" DEI or so-called gender ideology, the conditions do not explain what is encompassed by the terms advance or promote, or how recipients, when performing the myriad functions and operations of local government, might advance or promote these ideologies. *See Cnty. of Santa Clara v. Noem*, 815 F. Supp. 3d at 1032–35.

Second, as stated above, the DEI Conditions, like the EO's themselves, "introduce ambiguity by purporting to reverse existing law," *Hous. Auth. v. Turner*, 2025 WL 3187761 at *14.  In several fundamental respects, the Trump Administration's views of what it calls DEI—ultimately reflected in the grant conditions—are inconsistent with established anti-discrimination law.  For example, the DOJ's July 29, 2025, memorandum provides a "non-exhaustive list of unlawful practices that could result in revocation of grant funding" as well as potential liability, including the use of "[f]acially neutral criteria . . . that functions as proxies for protected characteristics."  RJN, Ex. D at 2.  Contrary to this interpretation, the Supreme Court has consistently declined to find constitutionally suspect the adoption of race-neutral criteria—even where the decision-maker was "well aware" that the race-neutral criteria "correlated with race."  *See Coal. for TJ v. Fairfax Cnty. Sch. Bd.*, 68 F.4th 864, 885–86 (4th Cir. 2023) (cleaned up) (citing, *inter alia*, *Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 545 (2015)); *Hous. Auth. v. Turner*, 2025 WL 3187761 at *14; *Cnty. of Santa Clara v. Noem*, 815 F. Supp. 3d at 1032–35.  Additionally, the July 29, 2025, memorandum lists as an example of unlawful practices DEI training that includes discussions of inherent bias, white privilege, or toxic masculinity.  RJN, Ex. D at 8.  Prohibiting such discussions runs directly counter to the "prophylactic" objective of federal anti-discrimination law and likely violates the First Amendment.  *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 417 (1975); *Diemert v. City of Seattle*, 776 F. Supp. 3d 922, 939–40 (W.D. Wash. 2025); *Honeyfund.com, Inc. v. DeSantis*, 622 F. Supp. 3d 1159, 1179–80 (N.D. Fla. 2022), *aff'd sub nom. Honeyfund.com Inc. v. Governor*, 94 F.4th 1272 (11th Cir. 2024).

As this Court has observed, the DEI Condition's vagueness and ambiguity are "particularly concerning in light of the False Claims Act," invoked by Defendants in the grant conditions.  *Cnty. of Santa Clara v. Noem*, 815 F. Supp. 3d at 1034.  The FCA imposes liability on "any person" who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval."  31

-32-

PLS.' NOTICE OF MOT. & MOT. FOR PRELIM. INJ. & PRELIM. RELIEF - Case No. 3:26-cv-01535-WHO

U.S.C. § 3729(a)(1)(A). Plaintiffs who violate the FCA may be subject to civil penalties and mandatory treble damages. 31 U.S.C. § 3729(a)(2); 28 C.F.R. § 85.5(a). The DEI Conditions' lack of clear definitions and inconsistencies with well-settled law, coupled with the DOJ's announced intention to use the FCA against grant recipients deemed noncompliant, heighten the constitutional infirmities associated with the conditions' ambiguity. Finally, the conditions purport to require that grantees concede the DEI certification's "materiality"—an otherwise "demanding" element of an FCA claim—further compounding these infirmities.

### (b)    EO Conditions

Similarly, the EO Conditions are impermissibly ambiguous because they offer no clear idea of what "compliance" with the numerous EOs would entail. The EO Condition simply notes that grantees must comply with "requirements of Presidential Executive Orders related to grants" without specifying which EOs are applicable to grantees or exactly how the EOs—directed to federal agency heads and other federal agency components—are to be applied to cities and counties in their myriad operations. President Trump has issued over 200 EOs in his second term alone. "Here, it is not clear what compliance with the EO Condition would entail, as it fails to articulate to what extent plaintiffs would be expected to adhere to President Trump's Executive Orders," *Cnty. of Santa Clara v. Noem*, 815 F. Supp. 3d at 1035, which themselves are rife with ambiguity.

Moreover, grantees cannot possibly ascertain what it means to comply with all executive orders related to grants that this Administration has issued or might issue in the future. This is particularly relevant given *Pennhurst's* conclusion that the spending power does not permit open-ended or retroactive conditions. The Spending Clause allows Congress to attach conditions to federal funds, but requires that the government must provide states "clear notice" of the terms of their grants and may not "surprise[e] participating States with post acceptance or 'retroactive' conditions." *Pennhurst*, 451 U.S. at 25. As this Court has previously found, the EO Condition, as it is currently written and applied to the challenged grant conditions, is fatally ambiguous under the Spending Clause. "To find otherwise would defy the power of Congress to confer upon agencies the authority to grant funding in the first place." *Cnty. of Santa Clara v. Noem*, 815 F. Supp. 3d at 1036.

**(c)   Immigration Conditions**

The Immigration Conditions are also rife with ambiguities.  The DHS Immigration Enforcement Condition requires recipients to certify that they do not "operate any program that benefits illegal immigrants or incentivizes illegal immigration," and the OVC Immigration Enforcement Condition and the BJA Immigration Enforcement Condition prohibits funds to be used for "[a]ny program or activity that, directly or indirectly, violates (or promotes or facilitates the violation of) federal immigration law (including 8 U.S.C. § 1373) or impedes or hinders the enforcement of federal immigration law."[12]

These conditions are impermissibly vague and overbroad because they provide no meaningful standard by which grant recipients can determine what conduct is prohibited.  Terms such as "benefits," "incentivizes," "promotes," "impedes," and "hinders" are undefined and sweeping, leaving recipients without guidance as to whether ordinary public services, victim assistance programs, or community outreach efforts could be deemed to "benefit" or "incentivize" undocumented individuals.  The conditions are equally unclear in prohibiting programs that "indirectly" violate federal immigration law or "promote or facilitate" such violations, language so vague that it fails to specify which conduct would trigger noncompliance.  As a result, recipients are left to speculate about the scope of the restriction while facing the potential loss of significant federal funding and liability under the FCA.  *See City of Chicago*, 2026 WL 114294, at *9; *Hous. Auth. v. Turner*, 2025 WL 3187761, at *15; *City of Fresno*, 2025 WL 2721390, at *12–18.[13]

> **ii.   The Unlawful Conditions Are Unrelated to the Purpose of the Grants.**

To the extent that the conditions can even be understood, they are unrelated to the purpose of the

---

[12] Plaintiffs neither allege nor contend that 8 U.S.C. § 1373 is ambiguous.  The OVC and BJA Immigration Enforcement Conditions, by their terms, prohibit undefined categories of programs and activities that purportedly "indirectly" violate federal immigration law or "impede[] or hinder[]" its enforcement.  In doing so, the conditions impose new and indeterminate obligations untethered to any statutory mandate.

[13] For the same reasons that the Challenged Conditions are irremediably ambiguous under the Spending Clause, they are impermissibly vague under the Fifth Amendment Due Process Guarantees.  *See Hous. Auth. v. Turner*, 2025 WL 3187761, at *15 ("To the extent that the Grant Conditions do not provide Defendants fair notice from a Due Process perspective, they also fail to enable Plaintiffs to "knowingly accept" them under the Spending Power").  "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).

---

PLS.' NOTICE OF MOT. & MOT. FOR PRELIM. INJ. & PRELIM. RELIEF - Case No. 3:26-cv-01535-WHO

RENNE PUBLIC LAW GROUP
Attorneys at Law

grants.  For a grant to adhere to the spending powers, its conditions must be "reasonably related to the purpose of the expenditure." *New York v. United States*, 505 U.S. 144, 172 (1992) (citation omitted); *Dole*, 483 U.S. at 207, 209 (conditions on federal grants must be "reasonably calculated to address th[e] particular . . . purpose . . . for which the funds are expended").  Without a relationship between the conditions and the "purpose of the federal spending," "the spending power could render academic the Constitution's other grants and limits of federal authority." *New York*, 505 U.S. at 167.  Here, the challenged grant conditions are not only unrelated to the purpose of the DHS, DOJ, and DOI grant programs, in many ways "they squarely conflict with many of their statutory authorization provisions." *See Cnty. of Santa Clara v. Noem*, 815 F. Supp. 3d at 1037 (citing *SFUSD II*, 789 F. Supp. 3d at 750); *see also supra*, § IV(B)(1)(a).

The purpose of grant programs administered by DHS and FEMA is to promote public safety by supporting emergency preparedness, disaster response, and the protection of critical infrastructure against threats, including terrorism and natural disasters.  *See supra*, § II(A)(1).  The DEI, EO, and Immigration Conditions are unrelated to that purpose.  This Court has already found that "[t]he Discrimination and EO Conditions are not sufficiently related to the purpose of the DHS and FEMA grant programs." *Cnty. of Santa Clara v. Noem*, 815 F. Supp. 3d at 1036.  The Immigration Conditions are also insufficiently related.  *See Illinois v. Fed. Emergency Mgmt. Agency*, 801 F. Supp. 3d 75, 96 (D.R.I. 2025) ("the Court finds that the contested conditions are not reasonably related to the purposes of the grants to which they attach…Sweeping immigration-related conditions imposed on every DHS-administered grant, regardless of statutory purpose, lack the necessary tailoring.")

The grant programs administered by DOJ likewise serve distinct criminal justice and victim services purposes that have no connection to the Challenged Conditions.  *See supra*, (II)(A)(2).  Grants administered through the COPS program are intended to advance community policing and strengthen cooperation between law enforcement agencies and the communities they serve.  *See* 34 U.S.C. § 10381.  Programs administered by the OVC provide compensation, assistance services, and other support to victims of crime.  *See id*. §§ 20102, 20103.  Funding authorized under the TVPA supports programs designed to prevent human trafficking and protect trafficking victims.  *See id*. § 7105.  The JAG Program provides flexible funding for a wide range of state and local criminal justice initiatives (*see id*. § 10156),

-35-

PLS.' NOTICE OF MOT. & MOT. FOR PRELIM. INJ. & PRELIM. RELIEF - Case No. 3:26-cv-01535-WHO

while the Coverdell Grant program funds improvements to the quality, timeliness, and credibility of forensic science services used in criminal investigations and prosecutions. *See id*. § 10564. The DEI, EO, and Immigration Conditions do not advance any of these statutory objectives. *See Freedom Network USA*, 2026 WL 800392 at *15 (finding plaintiffs challenging TVPA conditions likely to succeed on their claims "the NOFO discrimination and certification conditions violate both the separation of powers and the Spending Clause."); *City of Chicago*, 2026 WL 114294, at *8 ("The Immigration Condition and Anti-DEI Condition thus extend well beyond the police and well beyond any reasonable relationship with the purpose of the COPS Act").

Rather, in many respects, the Challenged Conditions undercut the purposes and policies established by statute. *See supra*, § IV(B)(1)(a); *see also City of Chicago v. Barr*, 961 F.3d 882, 887 (7th Cir. 2020) ("The Byrne JAG grant was enacted by Congress to support the needs of local law enforcement to help fight crime, yet it now is being used as a hammer to further a completely different policy of the executive branch—presenting a city such as Chicago with the stark choice of forfeiting the funds or undermining its own law enforcement effectiveness by damaging that cooperative relationship with its residents"); *City of Chicago v. Sessions*, 888 F.3d 272, 291 (7th Cir. 2018) ("local and state governments have concluded that the safety of their communities is furthered by a relationship of trust with the undocumented persons and lawful immigrants residing therein—and those localities are clearly in the best position to determine the security needs of their own communities. Such trust, once destroyed by the mandated cooperation and communication with the federal immigration authorities, would not easily be restored.").

Similarly, the DOI DEI Conditions bear no relationship to the objectives of the Land and Water Conservation Fund Act or the WaterSMART Program administered by DOI. Requirements governing recipients' diversity policies do not affect the development of recreation lands, the conservation of natural resources, or the efficient management of water supplies.

None of the Challenged Conditions are "reasonably calculated" to the purposes of the grants to which they are attached. *See Dole*, 483 U.S. at 207, 209 ("[C]onditions on federal grants" must be "reasonably calculated to address th[e] particular . . . purpose . . . for which the funds are expended.").

PLS.' NOTICE OF MOT. & MOT. FOR PRELIM. INJ. & PRELIM. RELIEF - Case No. 3:26-cv-01535-WHO

**2.      The Unlawful Conditions Violate the APA**

**a.          The Imposition of the Unlawful Conditions Is Final Agency Action**

As a threshold matter, imposing new conditions on recipients is a "final agency action" subject to review under the APA. *See* 5 U.S.C. § 704. Final agency actions "mark the consummation of the agency's decisionmaking process" and are those "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (cleaned up). As to the first prong, "[w]here an agency establishes conditions on grant eligibility," as Defendants have done here, "the agency has taken action that 'mark[s] the 'consummation' of the agency's decisionmaking process.' " *SFUSD II*, 789 F. Supp. 3d at 740 (citing *Bennett*, 520 U.S. at 177–78). Similarly, "legal consequences will flow" from the Challenged Conditions because DHS, DOJ, and DOI can deny or terminate grants should plaintiffs fail to adhere to their requirements related to DEI, so-called gender ideology, and immigration enforcement. *See id*.

Here, Plaintiffs are challenging DHS, DOJ, and DOI's imposition of new conditions on grant eligibility. The modifications to an agency's general terms and conditions, issuance of NOFOs containing new conditions, and the directives issued by the former and acting Attorney General (*see supra*, § II(B)) all satisfy both *Bennett* criteria for final agency action. *See Cnty. of Santa Clara v. Noem*, 815 F. Supp. 3d at 1038 ("Plaintiffs' complaint and motion for preliminary injunction both establish that the grants in question require adherence to the DHS Condition and the EO Condition to receive funding, indicating a consummation of the DHS and FEMA's decision-making process"); *King Cnty.*, 785 F. Supp. 3d at 884 n.18 ("the Court finds that under this standard, the new funding conditions at issue here are 'final agency actions' for purposes of APA review."); *Rhode Island Coal. Against Domestic Violence v. Bondi*, 794 F. Supp. 3d 58, 68 (D.R.I. 2025) ("the Court sides with courts that have found that agency placement of new conditions on grant funding amounts to final agency action"); *City of Chicago*, 2026 WL 114294, at *10 ("Consistent with other courts that have addressed the APA in similar contexts, the Court finds that the Challenged Conditions are a final agency action subject to review under the APA"); *City & Cnty. of San Franciscov. Trump*, 783 F. Supp. 3d 1148, 1198–99 (N.D. Cal. 2025) ("the Bondi Directive's instruction to freeze the distribution of all DOJ funds to implement President Trump's directive to defund 'sanctuary' jurisdictions ... clearly 'mark[s] the consummation of' the DOJ's

-37-

'decision-making process' that so-called 'sanctuary' jurisdictions are ineligible for federal funding").

### b. The Imposition of the Unlawful Conditions Is Not Committed to Agency Discretion

Defendants may argue that the challenged agency action is committed to agency discretion, precluding judicial review. *See* 5 U.S.C. § 701(a)(2). Not so. "[T]he § 701(a)(2) exception for action committed to agency discretion [is read] 'quite narrowly, restricting it to 'those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'"" *Dept. of Com.*, 588 U.S. at 772 (quoting *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 23 (2018)). The Ninth Circuit has made clear that the "fact that a statute contains discretionary language does not make agency action unreviewable." *ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059, 1068 (9th Cir. 2015) (quoting *Beno v. Shalala*, 30 F.3d 1057, 1066 (9th Cir. 1994)); *see also Cnty. of Santa Clara v. Noem*, 815 F. Supp. 3d at 1038; *S.F. v. DOJ*, 2026 WL 177945, at *6 ("The Act does not give the COPS Office unfettered discretion to attach conditions of its choice to the community policing grants it makes").

Furthermore, an agency action "is committed to agency discretion by law" only "where a statute is drawn in such broad terms that in a given case there is no law to apply, and the court would have no meaningful standard against which to judge the agency's exercise of discretion." *Webster v. Doe*, 486 U.S. 592, 592 (1988). Only in those "rare instances" in which there is "truly no law to apply" is it appropriate to follow section 701(a)(2). *Jajati v. U.S. Customs & Border Prot.*, 102 F.4th 1011, 1017 (9th Cir. 2024). Even when Congress intended to create a wide zone of agency discretion, the agency still must meet "permissible statutory objectives." *Lincoln v. Vigil*, 508 U.S. 182, 193 (1993).

Here, there is no indication that Congress, in authorizing the grant programs at issue, intended to commit the imposition of grant conditions related to DEI, so-called gender ideology, or immigration enforcement to agency discretion. The grant programs are authorized and governed by statutes setting forth the purpose, selection criteria, recipient requirements, and grant conditions, among other things. *See supra*, § II(A). Because the statutes provide a basis for this Court to exercise judicial review, Defendants' actions are not "committed to agency discretion by law" and thus section 701(a)(2) does not preclude Plaintiffs' APA claim. *See King Cnty.*, 785 F. Supp. 3d at 884 ("each of these enabling statutes

-38-

provides substantial guidance as to how the agencies' discretion should be exercised in implementing these programs, and for the Court to evaluate whether that discretion is being exercised in a reasonable manner."); *SFUSD I*, 784 F. Supp. 3d at 1287–89 (concluding similarly in APA challenge to AmeriCorps grant conditions); *see also Bowen v. Massachusetts*, 487 U.S. 879 at 898 (1988) (noting legislative history indicates Congress understood APA would "authorize judicial review of the 'administration of Federal grant-in-aid programs'").

### c.   The Unlawful Conditions Are Contrary to the Constitution and Exceed Defendants' Statutory Authority

Under the APA, a court may set aside agency action that is "contrary to constitutional right, power, privilege, or immunity" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(B), (C).  As discussed above, the Federal Grant Conditions violate both the Separation of Powers doctrine (*supra*, § IV(B)(1)(a)) and the Spending Clause (*supra*, § IV(B)(1)(b)).  This Court may thus enjoin the imposition of the conditions under 5 U.S.C. §§ 705, 706(2)(B).  Furthermore, Defendants violate § 706(2)(C) because their imposition of the Federal Grant Conditions does not derive from the authorizing statutes for these grants or any other statutory authority (s*upra*, § IV(B)(1)(a)).  S*ee SFUSD II*, 789 F. Supp. 3d at 744 (finding plaintiffs likely to succeed on APA claim where "Congress expressly embedded [DEI] principles throughout [] enabling statutes"); *City of Fresno*, 2025 WL 2721390 at *10, *12 (finding likely APA violation where DEI and immigration conditions were not authorized and "in some cases the statutes even contradict the conditions" and where conditions "violate Separation of Powers as in excess of statutory authority").

### d.   The Unlawful Conditions Are Arbitrary and Capricious

Under the APA, agency action must be set aside and held unlawful if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  Agency action is arbitrary and capricious if it is not "reasonable and reasonably explained."  *Ohio v. Environmental Protection Agency*, 603 U.S. 279, 292 (2024) (cleaned up).  This includes when:

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

PLS.' NOTICE OF MOT. & MOT. FOR PRELIM. INJ. & PRELIM. RELIEF - Case No. 3:26-cv-01535-WHO

RENNE PUBLIC LAW GROUP
Attorneys at Law

*Motor Vehicle Mfrs. Ass'n v. State Farm ("State Farm")*, 463 U.S. 29, 43 (1983).  The court may not "infer an agency's reasoning from mere silence." *Arrington v. Daniels*, 516 F.3d 1106, 1112 (9th Cir. 2008) (cleaned up).

Furthermore, the standard is more exacting when an agency changes positions or "'is not writing on a blank slate.'" *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1915 (2020) (citation omitted).  "[L]ongstanding policies may have engendered serious reliance interests that must be taken into account." *Id*. at 1913 (cleaned up).  Accordingly, when changing its position, an agency must "assess whether there were reliance interests, determine whether they were significant, and weigh any such interests against competing policy concerns." *Id*. at 1915.  It is "arbitrary and capricious to ignore such matters." *Id*. at 1913.

Defendants have failed to meet these basic requirements before imposing the Challenged Conditions.  First, although the Challenged Conditions and the DOJ memoranda reflect a drastic change in agency position that departs from previous agency practice, the statutory purposes of the grant programs, and federal anti-discrimination law, Defendants have not offered any explanation for the change or even acknowledged that such a change has occurred.  However, the courts have recognized that the Challenged Conditions "reflect changes in agency position which require . . . an explanation of reasoning." *See City of Fresno*, 2025 WL 2721390 at \*8; *see also Cnty. of Santa Clara v. Noem*, 815 F. Supp. 3d at 1040 ("the Trump Administration's Executive Orders, the Discrimination Guidance Memo, and the DHS Conditions all depart from both federal anti-discrimination law and the statutory purposes of many grant programs without real explanation").

Second, Defendants failed to consider the purpose and requirements set forth in the various grant programs authorizing statutes.  Agency action is arbitrary and capricious when the agency neither "look[s] to" nor "discuss[es]" statutory "requirements," *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 682 (2020), or "relie[s] on factors which Congress has not intended it to consider." *State Farm*, 463 U.S. at 43.  Thus, an agency cannot impose grant conditions without ensuring that the relevant statutes support those conditions.  *See New York v. Trump*, 769 F. Supp. 3d 119, 142 (D.R.I. 2025) (failing to consider whether action "fell within the bounds of their statutory authority" was arbitrary and capricious), *appeal docketed*, No. 25-1236 (1st Cir. Mar. 10, 2025); *Illinois*,

-40-

RENNE PUBLIC LAW GROUP
Attorneys at Law

801 F. Supp. 3d at 92–94 (holding Standard DHS Terms for immigration arbitrary and capricious); *S.F. v. DOJ*, 2026 WL 177945, at *6 ("[the government] did not rely on anything in the statute, and the plain language of the Community Policing Act does not reveal a basis for the government's actions").

Instead of considering the individual authorizing statutes passed by Congress, Defendants have based their funding decisions on compliance with the President's political agenda, "rel[ying] on factors which Congress has not intended it to consider." *State Farm*, 463 U.S. at 43. "[T]he fact that an agency's actions were undertaken to fulfill a presidential directive does not exempt them from arbitrary-and-capricious review." *Kingdom v. Trump*, No. 25-cv-691, 2025 WL 1568238, at *10 (D.D.C. June 3, 2025) (collecting cases). If it did, "presidential administrations [could] issue agency regulations that evade APA-mandated accountability by simply issuing an executive order first. Agencies would be permitted to implement regulations without the public involvement, transparency, and deliberation required under the APA." *State v. Su*, 121 F.4th 1, 16 (9th Cir. 2024). Defendants cannot evade congressional limits and the requirements of reasoned decisionmaking by treating a presidential directive as law. *See id*.; *see also City of Fresno*, 2025 WL 2721390 at *8. Furthermore, the systemic imposition of the Challenged Conditions across practically all federal grant programs underscores that Defendants have failed to consider the specific purposes and requirements of the various grant programs authorizing statutes, many of which actually contradict the Challenged Conditions. *See supra*, § IV(B)(1)(a).

Third, Defendants failed to consider longstanding reliance interests before imposing the Challenged Conditions. To the contrary, Defendants failed to consider how the DHS Conditions jeopardize and threaten local governments' "capacity to protect public safety in the areas where federal and [local] cooperation is most critical." *Illinois*, 801 F. Supp. 3d at 94. Rather than work in furtherance of the public's interests, the record shows Defendants imposed the new unlawful terms without considering the risk to public safety. "The failure to even consider reasons to not impose the contested conditions highlights the arbitrariness of the process." *Id*. Nor is there any indication that Defendants considered the consequences of attaching these conditions to DOJ or DOI grant programs that support core public functions, including efforts to prevent human trafficking, provide services to victims of crime, construct and improve public parks, and upgrade essential water infrastructure. By disregarding the reliance interests tied to these programs, Defendants failed to account for the significant disruption

-41-

RENNE PUBLIC LAW GROUP
Attorneys at Law

their actions would cause to public safety initiatives, victim support services, and critical community infrastructure that local governments have long depended on federal funding to sustain.

Fourth, Defendants have failed to observe their own regulations and procedures. *See* 5 U.S.C. § 706(2)(D). Defendants are obligated to follow the Office of Management and Budget Guidance in Title 2 of the Code of Federal Regulations, Part 200. 2 C.F.R. § 3002.10 (DHS regulation adopting 2 CFR Part 200); 2 C.F.R. § 2800.101 (DOJ regulation adopting 2 CFR Part 200); 2 C.F.R. § 1402.100 (DOI regulation adopting 2 C.F.R. Part 200). As to "[s]pecific conditions," "[f]ederal agencies are responsible for ensuring that specific Federal award conditions . . . are consistent with the program design" and enumerate specific conditions that may be included. 2 C.F.R. § 200.208(a). Regulations also require Defendants to clarify "[t]he reason why the specific condition(s) is being imposed" "[p]rior to imposing specific conditions." 2 C.F.R. § 200.208(d)(2). Additionally, the OVC Immigration Enforcement Condition and the OVC Immigration Priority Condition contradict the DOJ's own regulations that require services supported by Victim Assistance Formula Grants are to be administered without regard to a victim's immigration status. *See* 28 C.F.R. § 94.103(a) ("Victim eligibility under this program for direct services is not dependent on the victim's immigration status."). Defendants have not provided any reason for imposing the specific conditions and, as shown above, have not ensured that the conditions are consistent with the purposes of the various grant programs.

### C.    Plaintiffs Will Suffer Irreparable Harm in the Absence of Preliminary Relief

Irreparable harm is presently occurring and likely to occur in the absence of injunctive relief. As shown above, the Challenged Conditions violate due process, Separation of Powers, and the Spending Clause. Accordingly, Plaintiffs have made a sufficient showing of irreparable harm that would result from imposition of those provisions, as it is "well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)).

The Challenged Conditions force Plaintiffs to choose between accepting and imposing unlawful conditions on their communities or forgoing millions in federal funding. Several Plaintiffs have already been forced to forgo funding they would otherwise have been eligible to accept or pursue due to the uncertainty and liability risk associated with the Challenged Conditions. Heisinger Decl. ¶¶4-5, 12; Kaur

-42-

RENNE PUBLIC LAW GROUP
Attorneys at Law

Decl. ¶9; Hammond Decl. ¶4; Casto Decl. ¶5.  On the other hand, if Plaintiffs agree to the vague and unlawful conditions, they would be at risk of arbitrary enforcement and the associated legal liability. This Hobson's choice is itself an irreparable injury that Plaintiffs are already suffering.

When evaluating similar circumstances, this Court has held that such constitutional injury and budgetary uncertainty constitute an irreparable injury.  *See Cnty. of Santa Clara v. Noem*, 815 F. Supp. 3d at 1041 (enjoining DHS from enforcing grant conditions due to "irreparable injury in the form of budgetary uncertainty, deprivation of constitutional rights, and undermining trust between the Cities and Counties and the communities they serve"); *City & Cnty. of San Francisco v. United States Dep't of Just.*, No. 25-CV-09277-JD, 2026 WL 177945 at *8 (N.D. Cal. Jan. 21, 2026); *see also City of Fresno*, 2025 WL 2721390 at *19; *Hous. Auth. v. Turner*, 2025 WL 3187761 at *20.  Federal courts across the country have recognized the same.  *See Rhode Island Coal. Against Domestic Violence v. Bondi*, 794 F. Supp. 3d 58, 71-72 (D.R.I. 2025) (holding choice between risking False Claims Act prosecution due to unclear grant conditions and likely loss of hundreds of thousands of dollars of funding constituted an irreparable harms at either junction), *see also City of Chicago v. United States Dep't of Just.*, 2026 WL 114294 at *10 (enjoining DOJ from enforcing grant conditions because diminished municipal services from funding uncertainty was irreparable harm to the community), *see also Illinois*, 801 F. Supp. 3d at 98 ("the effect of the loss of emergency and disaster funds cannot be recovered later, and the downstream effect on disaster response and public safety are real and not compensable."); *see also King Cnty.*, 785 F. Supp. 3d at 890–91.

Plaintiffs have submitted substantive and detailed evidence through declarations illustrating the ways in which a loss of the federal grant funds would be devastating and irreparable if these risks in fact materialize.  For example, if Plaintiffs were to lose funding from DHS and FEMA, they would be unable to complete critical water infrastructure projects and hazard-mitigation construction, risking significant delays or outright non-completion, as well as increased risk of flooding that directly threatens resident safety.  Cabell Decl. ¶8-10, 12 (Santa Cruz); Heisinger Decl. ¶11 (Redwood City); Hammond Decl. ¶11 (Hillsboro); Estaji Decl. ¶5 (Santa Barbara); Jevremovic Decl. ¶5 (Santa Barbara); Rubalcava Decl. ¶5 (Santa Barbara).  Moreover, Plaintiffs will be forced to go without crucial work force supplementation for their firefighters, be unable to train and equip employees for catastrophic emergencies and acts of

PLS.' NOTICE OF MOT. & MOT. FOR PRELIM. INJ. & PRELIM. RELIEF - Case No. 3:26-cv-01535-WHO

RENNE PUBLIC LAW GROUP
Attorneys at Law

terrorism, and reduce effective emergency response resources, further jeopardizing community safety. Alcorn Decl. ¶6 (Fresno); Torres Decl. ¶7 (Santa Clara); Morgan Decl. ¶5 (Santa Clara); Hubbard Decl. ¶6 (Santa Barbara); Hammond Decl. ¶11 (Hillsboro); Janes Decl. ¶5 (Corvallis).

Without funding from the DOJ, Plaintiffs will lose necessary resources to combat crime, including investigation resources and protective equipment for law enforcement to keep themselves and the communities they serve safe. Cabell Decl. ¶11-14 (Santa Cruz); Jepson Decl. ¶7 (Beaverton); Harvey Decl. ¶5 (Corvallis); Casto Decl. ¶10 (Fresno); McDonald Decl. ¶5 (Stockton); Shaw Decl. ¶12-13 (Los Angeles); Camarena Decl. ¶4 (Santa Barbara); Hammond Decl. ¶5,11 (Hillsboro); Heisinger Decl. ¶12 (Redwood City). This loss also encompasses diversion programs to prevent recidivism for offenders suffering from mental illness and addiction, and services for victims of crimes, domestic violence, and human trafficking, all of which are life-saving interventions. Coffey Decl. ¶6 (Beaverton); Kaur Decl. ¶10-11 (Los Angeles); Strong Decl. ¶6-8 (San Diego); Soderman Decl. ¶12 (Santa Barbara). Without these services, victims of crime, intimate partner violence, and human trafficking will be left without protection or support, placing them at heightened risk of continued harm and preventing them from safely escaping abusive or exploitative situations. Furthermore, if these critical victim services are diminished, victims will be less able or likely to cooperate with law enforcement, further undermining public safety and the effective prosecution of offenders.

Without funding from the DOI, Plaintiffs would be forced to cancel or delay scheduled improvements to and construction of public parks, thereby risking breach of associated contracts. Cabell Decl. ¶6, 12-15 (Santa Cruz); Petit Decl. ¶5 (Corvallis); Hammond Decl. ¶11 (Hillsboro); Bodke Decl. ¶11-12 (Los Angeles). Plaintiffs would also need to cancel or delay necessary improvements to water infrastructure, which could lead to higher levels of contaminants in potable water and an increased risk to public health. Cabell Decl. ¶6, 12-15 (Santa Cruz); Petit Decl. ¶5 (Corvallis), Small Decl. ¶5 (Stockton). Cancellation or delay of infrastructure projects would also leave Plaintiffs vulnerable to the effects of extended drought, and risk the viability of crucial irrigation systems that Plaintiffs' economies depend upon. Amico Decl. at ¶6 (Fresno); Small Decl. at ¶5 (Stockton); Major Decl. at ¶5 (Santa Barbara).

The loss of this funding limits Plaintiffs' ability to keep its residents safe and provide resources that mitigate harm in emergency scenarios. In such life-or-death scenarios or times of crisis, it

-44-

RENNE PUBLIC LAW GROUP
Attorneys at Law

"practically goes without saying that there can be no do over and no redress if services are unlawfully denied and someone suffers for it" and this denial "of course constitutes irreparable harm." *New York v. U.S. Dep't of Just.*, 804 F. Supp. 3d 294, 330 (D.R.I. 2025).

### D.       The Balance of Hardships and Public Interest Strongly Favors Preliminary Relief

In cases where the federal government is the opposing party, the balance of the equities and public interest factors merge. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). These two factors often turn on whether the district court finds a likelihood of success on the merits of the underlying claim. *See Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014); *see also Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (concluding it is "always in the public interest to prevent the violation of a party's constitutional rights") (cleaned up).

Plaintiffs face immediate and irreparable harm from the imposition of grant conditions that threaten vital funding for public programs and services. *See supra*, § IV(C).  By contrast, the federal government's interest in imposing these new conditions before the legality of its actions has been adjudicated is minimal.  "Plaintiffs' interest in ensuring their communities receive funding for critical infrastructure, public safety, and emergency response programs far exceeds defendants' interests." *Cnty. of Santa Clara v. Noem*, 815 F. Supp. 3d at 1042.

Whatever interest the Executive may have in introducing new grant conditions at this stage of the grant cycle, and in enforcing them during the pendency of this litigation, pales in comparison to the constitutional, programmatic, and financial harms Plaintiffs will suffer if forced to comply with vague and likely unlawful conditions or forgo federal funding for essential services.  Accordingly, the balance of equities and the public interest decisively support interim relief here.

## V.       CONCLUSION

For the foregoing reasons, Plaintiffs request that this Court issue a preliminary injunction under Fed. R. Civ. P. 65 and 5 U.S.C. § 705 staying the challenged agency action and enjoining Defendants from imposing or enforcing the unlawful conditions on Plaintiffs in accordance with Plaintiffs' Proposed Preliminary Injunction Order accompanying this filing.

RENNE PUBLIC LAW GROUP
Attorneys at Law

PLS.' NOTICE OF MOT. & MOT. FOR PRELIM. INJ. & PRELIM. RELIEF - Case No. 3:26-cv-01535-WHO

Dated:  May 4, 2026

RENNE PUBLIC LAW GROUP


By: _____ */s/ Jake D. Freitas* _____
        JAKE D. FREITAS
Attorneys for Plaintiffs
City of Fresno; City of Redwood City; City of Santa Clara; City of Santa Cruz; City of Beaverton; City of Corvallis; City of Hillsboro; City of Stockton; County of San Diego; County of Los Angeles; County of Santa Barbara

Dated:  May 4, 2026

FRESNO CITY ATTORNEY'S OFFICE


By: _____ */s/ Andrew Janz* _____
        ANDREW JANZ

Attorney for Plaintiff
City of Fresno

RENNE PUBLIC LAW GROUP
Attorneys at Law

-46-

PLS.' NOTICE OF MOT. & MOT. FOR PRELIM. INJ. & PRELIM. RELIEF - Case No. 3:26-cv-01535-WHO

**ECF ATTESTATION**

I, JAKE D. FREITAS, am the ECF user whose identification and password are being used to file this COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF. Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that the other above-named signatories concur in this filing.

Dated: May 4, 2026                                    RENNE PUBLIC LAW GROUP


By: _____*/s/ Jake D. Freitas*_____
       JAKE D. FREITAS

RENNE PUBLIC LAW GROUP
Attorneys at Law

-47-