CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
JEVECHIUS D. BERNARDONI (CABN 281892)
Assistant United States Attorney

> 450 Golden Gate Avenue, Box 36055
> San Francisco, California 94102-3495
> Telephone:  (415) 436-7224
> Facsimile:  (415) 436-6748
> jevechius.bernardoni@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CITY OF FRESNO, *et al.*,<br><br>    Plaintiffs,<br><br>  v.<br><br>MULLIN, *et al.*,[1]<br><br>    Defendants. | Case No. 3:26-cv-01535-WHO<br><br>**DEFENDANTS' OPPOSITION TO MOTION FOR SECOND PRELIMINARY INJUNCTION AND FOR PRELIMINARY RELIEF UNDER 5 U.S.C. § 705**<br><br>The Honorable William H. Orrick |

---

[1] Secretary Markwayne Mullin and Acting Attorney General Todd Blanche are automatically substituted as defendants in this case pursuant to Federal Rule of Civil Procedure 25(d).

DEFENDANTS' OPPOSITION TO SECOND MOTION FOR PRELIMINARY INJUNCTION
No. 26-cv-01535-WHO

**TABLE OF CONTENTS**

I.    Introduction .................................................................................................................... 1

II.   Factual Background .......................................................................................................... 2

      A.    Department Of Interior Grant Funding .................................................................. 2

      B.    Department Of Justice Grant Funding ................................................................... 2

            1.    OVW Grant Funding ................................................................................... 3

            2.    COPS Office Grant Funding ....................................................................... 3

            3.    OJP Grant Funding ..................................................................................... 4

      C.    Department Of Homeland Security/FEMA Grant Funding ..................................... 5

III.  Legal Standard ................................................................................................................. 7

IV.   Plaintiffs Do Not Demonstrate Entitlement To Preliminary Injunctive Relief .............................. 8

      A.    Threshold Procedural Issues Precluding Some Of The Relief Requested Here ................. 8

            1.    Plaintiffs Cannot Seek Injunctive Relief For Grant Programs In Which They
                  Do Not Participate ....................................................................................... 8

            2.    Claims Regarding These Defendants' Disparate Grant Conditions—Each Of
                  Which Involves A Separate Transaction Or Occurrence—Are Misjoined
                  In This Omnibus Lawsuit ............................................................................. 9

            3.    This Court Lacks Venue Over Any Claims Involving Grant Programs In
                  Which In-District Plaintiffs Do Not Participate ......................................... 11

      B.    Plaintiffs Do Not Demonstrate Likelihood Of Success On The Merits .......................... 12

            1.    This Court Lacks The Power To Order Monetary Payments ............................. 13

            2.    All Challenged Conditions Are Lawful And Constitutional .............................. 14

                  (i)    The DEI Conditions Are Constitutional ..................................................... 14

                         (a)    The DEI Conditions Do Not Violate The
                                "Separation of Powers" ................................................................. 16

                         (b)    The DEI Conditions Do Not Violate The Spending Clause ......... 17

                  (ii)   The EO Conditions Are Constitutional ...................................................... 19

                  (iii)  The Immigration Conditions Are Constitutional ....................................... 20

            3.    The Challenged Conditions Do Not Violate The APA ..................................... 23

                  (i)    Plaintiffs' Grant Awards Are Not Reviewable .......................................... 23

                  (ii)   Plaintiffs' APA Claim Also Fails On The Merits ...................................... 24

C.    Plaintiffs Do Not Face Irreparable Harm ................................................................. 25

    1.    The Conclusory Assertions Of Irreparable Harm In The Motion And The Boilerplate Harm Assertions In Plaintiffs' Declarations Are Deficient ............. 25

    2.    There Is No Risk Of Irreparable Harm Where The Challenged Conditions Are Already Enjoined By Other Federal Court Orders ........................................ 30

D.    The Balance Of Equities And The Public Interest Favors The Government .................... 31

E.    Any Injunctive Relief Should Be Narrowly Tailored ....................................................... 32

F.    Plaintiffs' Request For A Section 705 Stay Is Unwarranted And Unnecessary ............... 32

G.    Any Injunctive Relief Should Be Accompanied By A Bond ............................................ 33

V.    Conclusion ................................................................................................................. 33

# TABLE OF AUTHORITIES

## CASES

*Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*,
357 F.3d 62 (D.C. Cir. 2004) ...................................................................................... 13

*Am. Fed'n of State, Cty. & Mun. Emps. v. Scott*, 717 F.3d 851 (7th Cir. 2013) ....................................... 21

*Am. Legion v. Am. Humanist Ass'n*, 588 U.S. 29 (2019) ................................................................. 8

*Boaz Hous. Auth. v. United States*, 994 F.3d 1359 (Fed. Cir. 2021) ........................................................ 13

*Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668 (9th Cir. 1988) ................................................. 25

*Chippewa Cree Tribe of Rocky Boy's Rsrv., Montana v. U.S. Dep't of Interior*,
900 F.3d 1152 (9th Cir. 2018) .................................................................................... 10

*City & County of San Francisco v. Trump*,
No. 25-cv-01350-WHO, 2025 WL 2243619 (N.D. Cal. Aug. 5, 2025) ................................ 10, 11

*City of Fresno v. Turner*, No. 25-cv-07070-RS, 2026 WL 1146290 (N.D. Cal. Apr. 28, 2026) ............. 33

*City of L.A. v. Barr*, 929 F.3d 1163 (9th Cir. 2019) ................................................. 17, 19, 22, 24

*Clark v. City of Seattle*, 899 F.3d 802 (9th Cir. 2018) ................................................................. 8

*Coleman v. Quaker Oats Co.*, 232 F.3d 1271 (9th Cir. 2000) ............................................................. 9

*Conceptus, Inc. v. Hologic, Inc.*,
No. 09-cv-02280 WHA, 2009 WL 3740713 (N.D. Cal. Nov. 6, 2009) ................................ 26, 30

*Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166 (9th Cir. 2011) ..................................................... 25

*Dalton v. Specter*, 511 U.S. 462 (1994) ............................................................................. 16

*Dep't of Educ. v. California*, 604 U.S. 650 (2025) ................................................................. 13, 14, 31

*FCC v. Prometheus Radio Project*, 592 U.S. 414 (2021) ................................................................. 24

*Gill v. Whitford*, 585 U.S. 48 (2018) ................................................................................. 8

*Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002) ................................................. 13

*Guardians Ass'n v. Civ. Serv. Comm'n of City of New York*, 463 U.S. 582 (1983) ............................... 15, 20

*Harnden v. Perez*, No. 21-cv-09231-LHK, 2021 WL 7367123 (N.D. Cal. Dec. 8, 2021) ..................... 10

*Harris v. Atchley*, No. 22-cv-00529-EMC, 2023 WL 7312969 (N.D. Cal. Oct. 18, 2023) ............... 25, 30

*Hawai'i v. Trump*, 233 F. Supp. 3d 850 (D. Haw. 2017) ............................................................. 30

*Heckler v. Chaney*, 470 U.S. 821 (1985) ........................................................................ 23

*Heckler v. Turner*, 468 U.S. 1305 (1984) ...................................................................... 31

*Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017) .................................................... 26

*Holley v. United States*, 124 F.3d 1462, 1466 (Fed. Cir. 1997) ..................................... 14

*Illinois v. FEMA*, 801 F. Supp. 3d 75 (D.R.I. 2025) ........................................................ 7

*Ingersoll-Rand Co. v. United States*, 780 F.2d 74 (D.C. Cir. 1985) .............................. 14

*Lamie v. U.S. Tr.*, 540 U.S. 526 (2004) .......................................................................... 18

*Lincoln v. Vigil*, 508 U.S. 182 (1993) ............................................................................ 23

*Los Coyotes Band of Cahuilla & Cupeño Indians v. Jewell*, 729 F.3d 1025 (9th Cir. 2013) ................... 23

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ....................................................... 8

*Maryland v. King*, 567 U.S. 1301 (2012) ....................................................................... 32

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209 (2012) ............... 13

*Matsumoto v. Labrador*, 122 F.4th 787 (9th Cir. 2024) ................................................... 8

*Mayweathers v. Newland*, 314 F.3d 1062 (9th Cir. 2002) .................................... 17, 18, 19

*Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357 (2025) .......................................... 13

*Milk Train, Inc. v. Veneman*, 310 F.3d 747 (D.C. Cir. 2002) ......................................... 23

*Moody v. NetChoice, LLC*, 603 U.S. 707 (2024) ........................................................... 20

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) ........ 24

*Murthy v. Missouri*, 603 U.S. 43 (2024) ......................................................................... 8

*Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, No. 25-1189 (4th Cir. Feb. 6, 2026) ......... 16

*Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, No. 25-1189 (4th Cir. Mar. 14, 2025) ....... 16

*Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658 (Mem.) (2025) .......... 14, 32

*Nat'l TPS Alliance v. Noem*, 150 F.4th 1000 (9th Cir. 2025) .............................. 7, 32, 33

*Nat'l Treasury Emps. Union v. Trump*, No. 25-5157, 2025 WL 1441563 (D.C. Cir. May 16, 2025) ..... 33

*Nat'l Urban League v. Trump*, 783 F. Supp. 3d 61 (D.D.C. 2025) ................................ 20

*New York v. NSF*, 793 F. Supp. 3d 562 (S.D.N.Y. 2025) ............................................... 16

*Nken v. Holder*, 556 U.S. 418 (2009) .......................................................................... 7, 31

*NTEU v. Bush*, 891 F.2d 99 (5th Cir. 1989) ................................................................. 21

*Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1 (1981) ................................................. 18

*Perry Cap. LLC v. Mnuchin*, 864 F.3d 591 (D.C. Cir. 2017) ................................................... 14

*Pol'y & Rsch., LLC v. HHS*, 313 F. Supp. 3d 62 (D.D.C. 2018) ............................................. 24

*Rush v. Sport Chalet, Inc.*, 779 F.3d 973 (9th Cir. 2015) ...................................................... 10

*S. Dakota v. Dole*, 483 U.S. 203 (1987) ............................................................... 10, 17, 21, 22

*San Francisco A.I.D.S. Found. v. Trump*, 786 F. Supp. 3d 1184 (N.D. Cal. 2025) ................................ 16

*Scott v. Pasadena Unified School Dist.*, 306 F.3d 646 (9th Cir. 2002) ........................................ 9

*Serrato v. Clark*, 486 F.3d 560 (9th Cir. 2007)................................................................ 23

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ................................................................. 8

*Starbucks Corp. v. McKinney*, 602 U.S. 339 (2024)............................................................. 7

*State ex rel. Becerra v. Sessions*, 284 F. Supp. 3d 1015 (N.D. Cal. 2018)................................. 17, 19, 20

*State v. Dep't of Just.*, 951 F.3d 84 (2d Cir. 2020) ........................................................ 19

*State v. DOJ*, 951 F.3d 84 (2d Cir. 2020) ................................................................... 10

*Sustainability Institute v. Trump*, No. 25-1575, 2025 WL 1587100 (4th Cir. June 5, 2025) .................... 31

*Texas v. United States*, 523 U.S. 296 (1998) ................................................................. 9

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ............................................................. 8

*Trump v. CASA, Inc.*, 606 U.S. 831 (2025)................................................................... 32

*United States v. Salerno*, 481 U.S. 739 (1987)............................................................. 21

*Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517 (9th Cir. 2023) ............................. 8

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008)............................................. passim

*Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952) ............................................. 16

**STATUTES**

28 U.S.C. § 1391(e) ........................................................................................ 11, 12

28 U.S.C. § 1491(a)(1)......................................................................................... 13

42 U.S.C. § 2000d.......................................................................................... 15, 17, 18

42 U.S.C. § 2000d-1 ....................................................................................... 15, 18

5 U.S.C. § 701(a)(2)........................................................................................... 23

5 U.S.C. § 702................................................................................................. 13

5 U.S.C. § 705 .................................................................................................................... 32

6 U.S.C. § 111(b) ............................................................................................................... 22

6 U.S.C. § 112(b)(2) .......................................................................................................... 22

**RULES**

Federal Rule of Civil Procedure 20(a) ................................................................... 9, 10, 11, 12

Federal Rule of Civil Procedure 65 ................................................................................... 32

Federal Rule of Civil Procedure 65(c) ............................................................................... 33

**REGULATIONS**

2 C.F.R. § 200.211(c)(1)(ii) ................................................................................... 15, 17, 19

2 C.F.R. § 200.300(a) ............................................................................................ 15, 17, 19

2 C.F.R. § 200.303(b) ............................................................................................ 15, 17, 19

# I.    Introduction

Supreme Court precedent requires that preliminary injunctive relief is an "extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Here, the extraordinary preliminary relief that Plaintiffs request may not be issued en masse, and it cannot be granted absent each Plaintiff demonstrating a likelihood of success on the merits of their claims and immediate and likely irreparable harm tied to each Defendant, each grant program, and each grant condition that Plaintiffs seek to enjoin preliminarily.

But, on its face, Plaintiffs' blunderbuss preliminary injunction motion—and the underlying lawsuit—fails to demonstrate the level of nuance required for the requested extraordinary preliminary relief. Indeed, Plaintiffs' catchall phrase "Challenged Conditions" refers to a mélange of at least 28 distinct conditions for federal grant funding, imposed by different agencies, at different times, to different types of grant programs, each with different underlying statutory frameworks, and based on different administrative records. Each of those conditions must be analyzed under its specific facts and legal background, and Plaintiffs fail to conduct the required detailed analysis. And, with the exception of a handful of outliers (at least one of which contains inaccurate assertions), the formulaic declarations Plaintiffs submit in support of the Motion universally fail to link the purported irreparable harm to the Challenged Conditions at issue.

Even assuming Plaintiffs had conducted the required nuanced analysis and provided factual support for their claimed irreparable harm, other procedural and substantive deficiencies preclude much of the preliminary relief requested here. First, Plaintiffs' Motion is patently overbroad because many Plaintiffs seek to enjoin grant conditions by agencies/components from which they do not receive funds—simply stated, Article III standing principles prevent Plaintiffs from obtaining preliminary injunctive relief where they are not participants in the grant programs at issue. Second, these Defendants are improperly joined in this lawsuit because each agency's and each component's decision to impose their agency- and grant-specific conditions represents a separate transaction and occurrence, and these Defendants, with their 28 disparate "Challenged Conditions," cannot be joined in one omnibus lawsuit. Third, this Court does not have venue to adjudicate claims involving grant programs in which in-District Plaintiffs do not participate.

In sum, Plaintiffs fail to fulfill the necessary elements for the "extraordinary remedy" of preliminary injunctive relief, and the Motion should be denied.

DEFENDANTS' OPPOSITION TO SECOND MOTION FOR PRELIMINARY INJUNCTION
No. 26-cv-01535-WHO                    1

## II.    Factual Background

### A.    Department Of Interior Grant Funding

City of Santa Clara, City of Redwood City, City of Beaverton, and County of San Diego do not purport to be DOI Plaintiffs, and they do not claim to receive grant funding from DOI. Compl. ¶¶ 5-6, 8-10, 12-14, 20-21, 23-24, 155. City of Santa Cruz alleges that it "intends to apply for DOI funding . . . as soon as funding becomes available." *Id.* ¶ 14. As a result, the only Plaintiffs that claim to receive DOI grant funding are City of Fresno, CA; City of Corvalis, OR; City of Hillsboro, OR; City of Stockton, CA; County of Los Angeles, CA; and County of Santa Barbara, CA, none of which is located in the Northern District of California. *See* Compl. ¶¶ 17, 26, 28, 33, 36, 40.

Plaintiffs' Motion does not contend that DOI has immigration-related conditions in its grant terms and conditions. *See* Mot. at 21-22 & 29 n.10. DOI's grant terms include a condition related to diversity, equity, and inclusion programs that violate any applicable Federal anti-discrimination laws. *See* Declaration of Katherine L. Spomer ("Spomer Decl.") ¶ 5. The DOI grant programs at issue here also require recipients to certify that they will comply with applicable executive orders. *Id.* ¶¶ 9, 17-18.

To date, DOI has not terminated or cancelled any WaterSMART agreements as a result of the DEI grant condition. *Id.* ¶ 21. With respect to DOI's Land and Water Conservation Fund Grants, DOI also has not rejected, reconsidered, or found grant recipients to be not in compliance, and no specific enforcement has been applied to awards or applications. *Id.* ¶ 20.

### B.    Department Of Justice Grant Funding

Plaintiffs seek to enjoin grant conditions required by three separate and distinct Department of Justice ("DOJ") grantmaking components, *i.e.*, the Office on Violence Against Women ("OVW"), the Office of Community Oriented Policing Services ("COPS Office"), and the Office of Justice Programs ("OJP"). Although these three offices coordinate as to any shared legal requirements, OVW, COPS Office, and OJP have developed program-specific terms and conditions for the grant programs each such office administers based on the statutory, regulatory, and programmatic requirements of each program. *See* Declaration of Cory Randolph ("Randolph Decl.") ¶ 13 (COPS Office); Declaration of Ginger Baran Lyons ("Baran Lyons Decl.") ¶ 3 (OVW); Declaration of Maureen A. Henneberg ("Henneberg Decl.") ¶¶ 5-6, 8 (OJP).

DEFENDANTS' OPPOSITION TO SECOND MOTION FOR PRELIMINARY INJUNCTION
No. 26-cv-01535-WHO                2

As a preliminary matter, while they are defined "DOJ Plaintiffs," City of Santa Clara and City of Redwood City do not claim to participate in any of the DOJ grant programs at issue in this lawsuit.[2] Compl. ¶¶ 6, 10, 141.

### 1.   OVW Grant Funding

The only Plaintiff that claims to receive OVW grant funding is City of Hillsboro, OR. Compl. ¶ 30. The Motion does not contend that OVW's grant terms include either immigration-related or executive order-related grant conditions. *See* Mot. at 16-17, 28 n.9, 29 n.10. OVW's grant conditions include a condition related to diversity, equity, and inclusion ("DEI"), which OVW understands to amplify, but not materially change, pre-existing general conditions related to federal anti-discrimination laws. Baran Lyons Decl. ¶ 10. The Motion further acknowledges that OVW's DEI-related grant condition is already subject to a preliminary injunction in *Rhode Island Coalition Against Domestic Violence v. Bondi*, 794 F. Supp. 3d 58 (D.R.I. 2025). Mot. at 17 n.4; *see also* Baran Lyons Decl. ¶ 11.

### 2.   COPS Office Grant Funding

The only Plaintiffs with alleged connections to DOJ's COPS Office grant programs are City of Stockton, City of Fresno, and City of Hillsboro, OR, none of which is located in the Northern District of California. Compl. ¶¶ 16, 30, 32. At issue here are three programs administered by COPS Office: Community Policing Development (CPD) Microgrants ("CPD Microgrants"); Law Enforcement Mental Health and Wellness Act ("LEMHWA"); and Safer Outcomes: Enhancing De-Escalation and Crisis Response Training for Law Enforcement ("Safer Outcomes"). Each are discretionary, competitive programs. Randolph Decl. ¶¶ 4-7.

As a separate grantmaking authority within DOJ, COPS Office developed the terms and conditions for its grant programs based on statutory, regulatory, and programmatic requirements. *Id.* ¶ 13. COPS Office grant conditions include conditions related to diversity, equity, and inclusion, which Plaintiffs define as the "COPS DEI Condition," the "COPS Gender Ideology Condition," the "LEMHWA Owner's Manual DEI Condition," and the "COPS Owner's Manual DEI Condition" Mot. at 19-20. Plaintiffs also challenge

---

[2] The Complaint includes two references to the DOJ's Asset Forfeiture Program (Compl. ¶¶ 6 & 10), but it does not allege what DOJ component administers that program, nor does it allege that the Asset Forfeiture Program includes any of the conditions challenged in this lawsuit. *See also* Mot. at 10 (similar conclusory reference to DOJ's Asset Forfeiture Program).

certain executive order-related conditions required by COPS Office, which Plaintiffs define as the "LEMHW Owner's Manual EO Condition" and the COPS Owner's Manual EO Condition." *Id.* at 20.

Finally, Plaintiffs claim that one discretionary, competitive COPS Office program—CPD Microgrants—assigns priority consideration to applicants "who respond affirmatively to the application question related to cooperation with federal immigration officials," which Plaintiffs define as the "COPS Immigration Priority Conditions." Mot. at 19. Plaintiffs do not claim that the COPS Immigration Priority Conditions" is, in fact, a condition to either an award of or participation in COPS Office CPD Microgrants, which, again, is comprised of discretionary, competitive grant funding.

### 3.    OJP Grant Funding

This lawsuit challenges grant conditions in various programs administered by two OJP program offices, *e.g.*, the Office for Victims of Crime ("OVC") and the Bureau of Justice Assistance ("BJA").[3] The only Plaintiffs who purportedly participate in grant programs administered by OJP are City of Santa Cruz, City of Fresno, City of Beaverton, City of Corvallis, City of Hillsboro, County of Los Angeles, and County of Santa Barbara. Compl. ¶¶ 13, 16, 23-24, 26, 30, 35, 38. County of San Diego alleges that it plans to respond to OJP Notices of Funding Opportunity ("NOFOs") but that it has not done so. *Id.* ¶ 20; *see also* Mot. at 12 (same). City of Stockton does not claim to be a recipient of OJP grant funding. Compl. ¶ 32.

Although Plaintiffs challenge a multitude of conditions that they contend appear in OJP grants, the only challenged conditions that have actually appeared in OJP grant awards are what Plaintiffs define as the "OJP DEI Condition," the "OVC DEI Condition," and the "BJA DEI Condition." *See* Mot. at 16 & 18; Henneberg Decl. ¶ 12. The language in various NOFOs that Plaintiffs define as the "OVC DEI Condition II" and the "OVC DEI Condition III" (Mot. at 18) does not appear in any OJP grant awards and is not an award condition on OJP grant award agreements. Henneberg Decl. ¶¶ 4 & 15. Similarly, the language in some NOFOs that Plaintiffs define as the "OVC Immigration Enforcement Condition" and the "BJA Immigration Enforcement Condition" (Mot. at 18-19) does not appear in any OJP grant awards and is not an award condition on OJP grant award agreements. Henneberg Decl. ¶¶ 4 & 14. Finally, the language

---

[3] Patrick Leahy Bulletproof Vest Partnership program, which provides reimbursement payments to non-federal law enforcement agencies for the costs of body armor purchased for law enforcement officers, are not OJP grant award agreements; and none of the Challenged Conditions in this lawsuit are included in the Patrick Leahy Bulletproof Vest Partnership payment program awards. Henneberg Decl. ¶ 10.

in NOFOs for some OJP discretionary award grant programs that Plaintiffs define as the "OVC Immigration Priority Condition" or the "BJA Immigration Priority Condition" (Mot. at 18-19) does not appear in any OJP grant awards. Henneberg Decl. ¶¶ 4 & 16. Rather than an award "condition," those provisions are simply a selection tool—they allow award applicants for those programs to provide additional information regarding immigration-related law enforcement operations in order to receive priority consideration for the award. *Id.* ¶ 16. Applicants are not required to provide that information in their applications, and an applicant's choice not to provide that information does not disqualify them for the award. *Id.*

### C.    Department Of Homeland Security/FEMA Grant Funding

City of Beaverton, City of Stockton, County of San Diego, and County of Los Angeles do not purport to be DHS Plaintiffs, nor do they claim to receive grant funding from DHS/FEMA.[4] Compl. ¶¶ 20-21, 23-24, 32-33, 35-36, 79.

DHS revised its standard terms and conditions for all new federal awards of financial assistance for which the federal award date occurs in FY 2025. *Id.* ¶ 166. First, the Standard Conditions state that "Recipients must comply with all applicable Federal anti-discrimination laws," including by not "operat[ing] any programs that advance or promote DEI, DEIA, or discriminatory equity ideology in violation of Federal anti-discrimination law" or "engag[ing] in . . . a discriminatory prohibited boycott." *Id.* ¶ 170; *see also* Mot. at 14 (defining this term as the "DHS DEI Condition"). Second, DHS's Standard Conditions provide that "[r]ecipients must comply with the requirements of Presidential Executive Orders related to grants (also known as federal assistance and financial assistance), the full text of which are incorporated by reference." Compl. ¶ 173; Mot. at 14 (defining this term as the "DHS EO Condition"). Finally, the DHS Standard Conditions include a suite of conditions related to immigration enforcement, which Plaintiffs define as the "DHS Immigration Enforcement Conditions"). Compl. ¶¶ 167-68; Mot. at 14.

Although not mentioned in either the Complaint or the Motion, on March 25, 2025 (*i.e.*, more than a year ago), then-DHS Secretary Noem signed a Memorandum outlining certain categories of FEMA

---

[4] The Motion acknowledges that the Complaint fails to allege that City of Beaverton receives grant funding from FEMA. Mot. at 11 n.3. Regardless of Plaintiffs' purported intent to amend their Complaint to add such allegations, they have not yet done so, and the contours of the preliminary relief potentially available to City of Beaverton are limited by the current Complaint's allegations.

DEFENDANTS' OPPOSITION TO SECOND MOTION FOR PRELIMINARY INJUNCTION
No. 26-cv-01535-WHO                    5

programs that might apply the DHS Immigration Enforcement Conditions and noting that DHS/FEMA's application of the DHS Immigration Enforcement Conditions on grant program applications or funding would vary based on the structure, purpose, and statutory authority of each respective program. *See Illinois v. Federal Emergency Management Agency*, No. 25-cv-206 (D.R.I.) at ECF No. 61-1 ("Richardson Decl.") at ¶ 7 and ECF No. 57-2 ("March 25 Memo."). FEMA has since made a final determination that the DHS Immigration Enforcement Conditions *do not* apply to the grant programs listed below, and applicants for funding under these programs are not required to comply with the DHS Immigration Enforcement Conditions in order to receive FEMA funding:

- Community Disaster Loans (CDL)
- Disaster Unemployment Assistance (DUA)
- Individual and Households Program (II-IP)
- Fire Management Assistance Grants (FMAG)
- Hazard Mitigation Grant Program (HMGP)
- Hazard Mitigation Grant Program Post Fire (HMGP Post Fire)
- Public Assistance - Grants to State & Local
- Public Assistance - NGOs
- Urban Search and Rescue (US&R)
- Assistance to Firefighter Grants (AFG)
- Building Resilient Infrastructure and Communities (BRIC)
- Chemical Stockpile Emergency Preparedness Program (CSEPP)
- Community Assistance Program - State Support Services Element (CAP-SSSE)
- Cooperating Technical Partners (CTP)
- Emergency Management Baseline Assessments Grant (EMBAG)
- Emergency Operations Center (EOC)
- Fire Prevention and Safety (FP&S)
- Flood Mitigation Assistance (FMA)
- Flood Mitigation Assistance Swift Current (FMA Swift)
- Homeland Security Preparedness Technical Assistance Program (HSPTAP)
- Homeland Security National Training Program (HSNTP) - National Domestic Preparedness Consortium (NDPC)
- HSNTP - National Cybersecurity Preparedness Consortium
- National Dam Safety Program (NDSP)
- Rehabilitation of High Hazard Potential Dams Grant Program (HHPD)
- National Earthquake Hazards Reduction Program (NEHRP) and Multistate and National Earthquake Assistance (MSNEA) Grant Program
- National Earthquake Hazards Reduction Program - Individual State Earthquake Assistance (NEHRP-ISEA)
- National Fire Academy Training Assistance (NFATA)
- National Incident Management Systems (NIMS) / Emergency Management Assistance Compact Program (EMAC)
- National Urban Search and Rescue (US&R)
- Pre-Disaster Mitigation (PDM)
- Pre-Disaster Mitigation (PDM) Congressionally Directed Spending (CDS)/ Legislative Pre-Disaster Mitigation (LPDM)
- Safeguarding Tomorrow Revolving Loan Fund/ Safeguarding Tomorrow through Ongoing Risk Mitigation Act (STORM)
- Staffing for Adequate Fire and Emergency Response (SAFER)
- State and Local Cybersecurity Grant Program (SLCGP)

- State Fire Training System Grants (SFT)
- Crisis Counseling Program (CCP)
- Disaster Case Management (DCM)
- Public Assistance - Non-Congregate Sheltering
- Emergency Food and Shelter Program (EFSP)
- Nonprofit Security Grant Program (NSGP)
- Nonprofit Security Grant Programs - National Security Supplemental (NSGPNSS)

Richardson Decl. ¶ 8. Notably, this determination applies to many of the FEMA grant programs invoked by Plaintiffs here, including the SAFER, PDM, HMGP, FMA, and AFG programs. *See* Compl. ¶¶ 5, 8, 9, 12, 18, 29, 39. With respect to the remaining 12 FEMA programs, FEMA applies the DHS Immigration Enforcement Conditions, consistent with the specific statutes that apply to each program because the purpose of each grant program has a nexus to immigration activities, law enforcement, or national security, including prevention and responding to acts of terrorism and extremism.

Nevertheless, DHS/FEMA is not enforcing the DHS Immigration Enforcement Conditions as to *any* of these Plaintiffs because DHS/FEMA is already subject to a permanent injunction that enjoins the DHS Immigration Enforcement Conditions as applied to these Plaintiffs (all of which are located in either California or Oregon). *See Illinois v. FEMA*, 801 F. Supp. 3d 75, 97 (D.R.I. 2025). Because cities and counties are, in many instances, interconnected with the state for purposes of grant administration, FEMA is not applying DHS Immigration Enforcement Conditions to cities and counties located in California and Oregon, including Plaintiffs.

## III.    Legal Standard

Emergency injunctive relief, such as a preliminary injunction, is "an extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 24. Plaintiffs must make a clear showing that (1) they are "likely to succeed on the merits," (2) they are "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [their] favor," and (4) "an injunction is in the public interest." *Starbucks Corp. v. McKinney*, 602 U.S. 339, 346 (2024) (quoting *Winter*, 555 U.S. at 20). The final two factors merge when the government is a party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). "The postponement of agency action under the APA is governed by the preliminary injunction factors." *Nat'l TPS Alliance v. Noem*, 150 F.4th 1000, 1015 (9th Cir. 2025).

## IV.    Plaintiffs Do Not Demonstrate Entitlement To Preliminary Injunctive Relief

### A.    Threshold Procedural Issues Precluding Some Of The Relief Requested Here

#### 1.    Plaintiffs Cannot Seek Injunctive Relief For Grant Programs In Which They Do Not Participate

Plaintiffs do not have Article III standing to seek any relief—much less the extraordinary preliminary relief requested here—if they are not participants in the specific grant programs at issue. "At the preliminary injunction stage, then, the plaintiff must make a 'clear showing' that she is 'likely' to establish each element of standing." *Murthy v. Missouri*, 603 U.S. 43, 58 (2024); *see also Matsumoto v. Labrador*, 122 F.4th 787, 821 (9th Cir. 2024) (Bea, concurring and dissenting in part).

"Foremost among" the Article III standing requirements "is injury in fact—a plaintiff's pleading and proof that he has suffered the 'invasion of a legally protected interest' that is 'concrete and particularized.'" *Gill v. Whitford*, 585 U.S. 48, 65 (2018) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). The Supreme Court and the Ninth Circuit have repeatedly noted that Article III standing cannot be based on abstract harms. *See, e.g.*, *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) (Article III injury "must actually exist" and cannot be "abstract"); *Lujan*, 504 U.S. at 583 ("abstract injury is not enough"); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) ("Federal courts do not possess a roving commission to publicly opine on every legal question. Federal courts do not exercise general legal oversight of the Legislative and Executive Branches"); *Clark v. City of Seattle*, 899 F.3d 802, 810 (9th Cir. 2018) ("a bare procedural violation, divorced from any concrete harm, does not satisfy the injury-in-fact requirement of Article III") (citation and quotation marks omitted); *Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517, 523 (9th Cir. 2023); *Am. Legion v. Am. Humanist Ass'n*, 588 U.S. 29, 80-81 (2019).

The Motion seeks to enjoin all the Challenged Conditions on behalf of all "Plaintiffs or their subrecipients[.]" ECF No. 20-27. That is a facially overbroad request, and it is not supported by the case or controversy requirement inherent in Article III of the Constitution. At minimum, the following Plaintiffs' requests for preliminary injunctive relief against the following Defendants should be denied for lack of Article III standing because they do not purport to have or do not, in fact, have relevant grants:

**DHS/FEMA**:  City of Beaverton, City of Stockton, County of San Diego, and County of Los Angeles do not purport to be DHS Plaintiffs, nor do they claim to receive grant funding from DHS/FEMA.

Compl. ¶¶ 20-21, 23-24, 32-33, 35-36, 79.

**DOJ**:  City of Santa Clara and City of Redwood City do not allege facts establishing that they participate in any of the DOJ grant programs that contain the Challenged Conditions at issue in this lawsuit. Compl. ¶¶ 6, 10. City of Hillsboro, OR is the only Plaintiff that alleges receiving OVW grant funding (*id.* ¶ 30), and the other 10 Plaintiffs thus cannot obtain preliminary relief with respect to OVW grants. Further, the only Plaintiffs with alleged connections to COPS Office grant programs are City of Stockton, City of Fresno, and City of Hillsboro, OR (*id.* ¶¶ 16, 30, 32), and the other eight Plaintiffs do not have standing to obtain preliminary relief with respect to COPS Office grants. Finally, City of Stockton does not claim to be a recipient of OJP grant funding (*id.* ¶ 32), and County of San Diego does not allege that it has applied for OJP funding (*id.* ¶ 20)—those Plaintiffs do not have standing to seek relief with respect to OJP grants.

**DOI**:  City of Santa Clara, City of Redwood City, City of Beaverton, and County of San Diego do not purport to be DOI Plaintiffs and/or they do not claim to receive grant funding from DOI. Compl. ¶¶ 5-6, 8-10, 12-14, 20-21, 23-24, 155. Further, City of Santa Cruz alleges that it "intends to apply for DOI funding . . . as soon as funding becomes available." *Id.* ¶ 14. As a result, any grant conditions claims that City of Santa Cruz might have in the future are not ripe for adjudication. *See Texas v. United States*, 523 U.S. 296, 300 (1998) (a claim is not ripe "if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all") (internal quotes and citation omitted); *Scott v. Pasadena Unified School Dist.*, 306 F.3d 646, 662 (9th Cir. 2002) ("The basic rationale of the ripeness doctrine is to prevent courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements") (internal quotes and citation omitted).

> **2.    Claims Regarding These Defendants' Disparate Grant Conditions—Each Of Which Involves A Separate Transaction Or Occurrence—Are Misjoined In This Omnibus Lawsuit**

Under Federal Rule of Civil Procedure 20(a), joinder is appropriate where "(1) the plaintiffs asserted a right to relief arising out of the same transaction and occurrence and (2) some question of law or fact common to all the plaintiffs will arise in the action." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000); Fed. R. Civ. P. 20(a). "A plaintiff cannot pursue in one lawsuit different claims with different factual backgrounds and against different defendants" and "defendants may only be joined in one action if the 'right to relief' 'aris[es] out of the same transaction, occurrence, or series of transactions and

occurrences.'" *Harnden v. Perez*, No. 21-cv-09231-LHK, 2021 WL 7367123, at *5 (N.D. Cal. Dec. 8, 2021) (quoting Fed. R. Civ. P. 20(a)(2)). Stated differently, where the injuries inflicted on a plaintiff by each defendant "are distinct and independent from one another," those defendants should not be sued in the same lawsuit. *Rush v. Sport Chalet, Inc.*, 779 F.3d 973, 975 (9th Cir. 2015).

Claims challenging various agencies' authority to add conditions to funding inevitably arise out of separate transactions or occurrences with each such agency and are thus improperly joined. *See Chippewa Cree Tribe of Rocky Boy's Rsrv., Montana v. U.S. Dep't of Interior*, 900 F.3d 1152, 1156 (9th Cir. 2018). To assess the "coercive" nature of a funding condition, an adjudicator must assess a locality's policies to see if they are in conflict with a funding condition and may need to review what portion of the locality's budget the conditioned funding effects. *See S. Dakota v. Dole*, 483 U.S. 203, 211 (1987) ("Our decisions have recognized that in some circumstances the financial inducement offered by Congress might be so coercive as to pass the point at which 'pressure turns into compulsion.'") (internal citation omitted); *Chippewa Cree Tribe*, 900 F.3d at 1161 (finding that while the stimulus grant funded a project that was important to the Tribe, an offer is not coercive just because it is attractive); *State v. DOJ*, 951 F.3d 84, 116 (2d Cir. 2020) (analyzing what percentage of a local government budget may be impacted by federal withholding to evaluate plaintiffs' Tenth Amendment commandeering claims).

Defendants recognize that this Court previously found that 34 prospective plaintiffs' claims were properly joined in one lawsuit in *City & County of San Francisco v. Trump*, No. 25-cv-01350-WHO, 2025 WL 2243619, at *6-8 (N.D. Cal. Aug. 5, 2025) ("*CCSF*"). There, the Court found that the 34 plaintiffs' challenges to a specific set of Executive Orders arose out of the same transaction or occurrence because "the plaintiffs' claims are identical in that they challenge the constitutionality of Executive Orders threatening *all* their federal funding upon pain of conforming to federal immigration policy." *Id.* at 8 (emphasis in original). The Court further distinguished other misjoinder caselaw by observing that the plaintiffs in *CCSF* "do not challenge conditions on a particular fund or grant." *Id.* at 7; *see also id.* (observing that "the other cases defendants cite . . . concerned specific grant programs," thereby distinguishing the misjoinder holdings in those cases).

But that is *precisely* the thrust of the legal claims in this case—these Plaintiffs challenge "conditions on a particular fund or grant" and "specific grant programs" (*id.*), and the disparate Challenged Conditions

DEFENDANTS' OPPOSITION TO SECOND MOTION FOR PRELIMINARY INJUNCTION
No. 26-cv-01535-WHO                                    10

at issue contain differences in language and scope and they were imposed by different Defendants at different times, under different authorizing statutes, pursuant to distinct administrative records, and upon different types of grant programs (*e.g.*, formula, competitive, block, etc.). As such, adjudication of the grant conditions required by each agency Defendant, as applied to specific grant programs, will require a "particularized analysis" based on distinct administrative records under different legal frameworks. *CCSF*, 2025 WL 2243619, at *7. In short, this Court's analysis in *CCSF* demonstrates that the grant conditions claims in this case *do not* arise out of the same transaction or occurrence and rest on different factual predicates and legal backgrounds. Defendants are thus improperly joined in this lawsuit under Federal Rule of Civil Procedure 20(a).

> **3.   This Court Lacks Venue Over Any Claims Involving Grant Programs In Which In-District Plaintiffs Do Not Participate**

Plaintiffs' improper joinder practices (*supra* Part IV.A.2) also impact the venue analysis under 28 U.S.C. § 1391(e). Section 1391(e) permits out-of-district plaintiffs to litigate claims against the federal government that "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences" in any district where one plaintiff resides. *See* 28 U.S.C. § 1391(e). But out-of-district plaintiffs cannot borrow venue from an in-district plaintiff to litigate claims that are unrelated to the in-district plaintiff's grant programs. In other words, Section 1391(e) does not permit an in-district plaintiff to add out-of-district co-plaintiffs to their lawsuit, and then allow those out-of-district plaintiffs (none of which could file a stand-alone complaint here) to engraft additional defendants and additional grant programs, all of which arise under different transactions and occurrences with no connection to this forum.

That incorrect venue theory underlies many of Plaintiffs' claims against these Defendants. For example, no in-District Plaintiff claims to have a grant relationship with DOI.[5] City of Fresno, CA; City of Corvalis, OR; City of Hillsboro, OR; City of Stockton, CA; County of Los Angeles, CA; and County of Santa Barbara, CA are the only Plaintiffs that allegedly participate in DOI grant funding (*see* Compl. ¶¶ 17, 26, 28, 33, 36, 40), but none of those Plaintiffs is located within the Northern District of California. As

---

[5] As noted *supra* Part IV.A.1, the Court does not have subject matter jurisdiction over City of Santa Cruz's claims regarding DOI grant funding that City of Santa Cruz might apply for in the future; those claims are not ripe for adjudication under Article III.

such, those Plaintiffs cannot file a stand-alone complaint against DOI in this District, and they cannot borrow venue from the in-District Plaintiffs' claims against *other* agencies related to *other* grant programs (all of which involve different transactions) to litigate their out-of-District claims against DOI here.

Similarly, the only Plaintiff with an alleged connection to DOJ's OVW grant funding is City of Hillsboro, OR. *Id.* ¶ 30. And the only Plaintiffs with alleged connections to DOJ's COPS Office grant programs are City of Stockton, City of Fresno, and City of Hillsboro, OR. *Id.* ¶¶ 16, 30, 32. But, once again, these Plaintiffs are not located in the Northern District of California, and they could not bring a stand-alone complaint regarding their OVW or COPS Office grants here. Although DOJ has some terms and conditions applicable to all programs administered by DOJ's grantmaking offices, each DOJ grantmaking office (here, the COPS Office, OJP, and OVW) also develops their own terms and conditions for the grant programs administered by that particular office. Randolph Decl. ¶ 13; Baran Lyons Decl. ¶ 3; Henneberg Decl. ¶ 8. Only the condition which Plaintiffs refer to as the "DEI Condition" is standard across the three DOJ grantmaking offices. Baran Lyons Decl. ¶ 10. As a result, the grant programs administered by each of these various DOJ offices, and the grant conditions attached thereto, involve different transactions and occurrences that cannot be joined under 28 U.S.C. § 1391(e) and Federal Rule of Civil Procedure 20(a). Thus, with the potential exception of the DEI Conditions required by OVW and COPS Office, this Court does not have venue over claims related to grant conditions required by OVW and/or the COPS Office.[6]

**B.    Plaintiffs Do Not Demonstrate Likelihood Of Success On The Merits**

Defendants acknowledge that many of the arguments asserted in this section were previously presented to the Court in *County of Santa Clara v. Noem*, No. 3:25-cv-098330-WHO (N.D. Cal.) ("*Santa Clara*"), and that the Court broadly ruled against the government in that case. *See id.* at ECF Nos. 66 & 74. Defendants further recognize that the common questions of law between this case and the Court's preliminary injunction analysis in *Santa Clara* would likely control the result should the Court adhere to its prior reasoning. However, Defendants repeat those arguments here to preserve the record.

Defendants further reiterate the misjoinder arguments discussed *supra* Part IV.A.2 and object that

---

[6] To be clear, Defendants recognize that some in-District Plaintiffs allege claims related to grant conditions imposed by OJP, and Defendants thus are not contesting venue as to the out-of-District Plaintiffs' claims related to those same OJP grant programs.

Plaintiffs' broadbrush preliminary relief analysis of at least 28 distinct conditions for federal grant funding under the catchall phrase of "Challenged Conditions" is legally inappropriate and factually misleading. Mot. at 1. These are separate and distinct conditions, imposed by different agencies, at different times, to different types of grant programs, each with different underlying statutory frameworks. And some of the "Challenged Conditions" are not, in fact, conditions to participating in the grant programs at all and/or are not required by Defendants. As a result, each of those 28 purported conditions must rise and fall on their own legal merit following an individualized analysis of each grant program, each grant condition, each underlying statute, and the applicable administrative record. Regardless, Plaintiffs fail to pursue this litigation in an appropriately nuanced fashion, and Defendants thus will address Plaintiffs' arguments to the best of their ability given the limitations of these preliminary injunction proceedings.

### 1.   This Court Lacks The Power To Order Monetary Payments

Generally, federal district courts lack jurisdiction to "order the payment of money under" the APA because the federal government's sovereign immunity for claims seeking non-monetary relief "does not extend to orders 'to enforce a contractual obligation to pay money.'" *Dep't of Educ. v. California*, 604 U.S. 650, 651 (2025) (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)). The APA's limited waiver also does not apply "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012) (quoting 5 U.S.C. § 702). The Tucker Act (28 U.S.C. § 1491(a)(1)) is one such statute that "grants the Court of Federal Claims jurisdiction over suits based on 'any express or implied contract with the United States.'" *California*, 604 U.S. at 651 (quoting 28 U.S.C. § 1491(a)(1)). Specifically, the Tucker Act provides that the "United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded" on "any express or implied contract with the United States," 28 U.S.C. § 1491(a)(1), and it "impliedly forbids" bringing "contract actions" against "the government in a federal district court." *Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*, 357 F.3d 62, 67-68 (D.C. Cir. 2004) (citation omitted). This prohibition extends to claims founded on grants, like those at issue here, that are implemented through "contracts to set the terms of and receive commitments from recipients." *Boaz Hous. Auth. v. United States*, 994 F.3d 1359, 1368 (Fed. Cir. 2021); *see also Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357, 358 (2025) (explaining that

courts have historically described federal grants as contracts). This jurisdictional barrier ensures that contract claims against the United States are channeled into a court that has "unique expertise." *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 78 (D.C. Cir. 1985).

The Supreme Court has reiterated the preclusive scope of the Tucker Act. Last April, the Supreme Court stayed a district court order to make payments based on grants because the federal government was "likely to succeed in showing the District Court lacked jurisdiction" to bar termination of various education-related grants because the injunction was effectively an order "to enforce a contractual obligation to pay money." *California*, 604 U.S. at 651 (citation omitted). Last August, the Supreme Court stayed a judgment vacating the federal government's termination of grants because the APA's limited waiver does not provide district courts with jurisdiction "to order relief designed to enforce any 'obligation to pay money' pursuant to those grants." *Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658 (Mem.) (2025) ("*NIH*") (citation omitted).

This Court should follow the Supreme Court's stay rulings to the extent Plaintiffs are seeking to enforce an obligation to pay money. *See, e.g.*, ECF No. 20-27 (seeking an injunction to prevent "any . . . withholding of funds"). As in *California* and *NIH*, any entitlement Plaintiffs may have to these funding streams arises solely on the basis of their federal grant awards; Plaintiffs have no statutory or constitutional right to such funding. Because Plaintiffs' theories hinge on contractual routing of funding to them as provided for in their grant awards, cloaking their claims as seeking equitable relief under the Constitution and the APA is irrelevant. *See, e.g.*, *Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 619 (D.C. Cir. 2017) (district court lacks jurisdiction over any case that "is in 'its essence contractual'"); *Holley v. United States*, 124 F.3d 1462, 1466 (Fed. Cir. 1997) ("The presence of a constitutional issue does not erase the jurisdiction of the Court of Federal Claims based on a properly brought claim under the Tucker Act").

### 2. All Challenged Conditions Are Lawful And Constitutional

#### (i) The DEI Conditions Are Constitutional

Plaintiffs define 15 different conditions related to diversity, equity, and inclusion programs with the umbrella term "DEI Conditions." Mot. at 25 n.8. Although many of these conditions are worded differently, and each rests upon a different administrative record and applies to different types of grants, they all share the same animating principle—to ensure that recipients of federal grant funding comply with

federal anti-discrimination law.

Under Title VI of the Civil Rights Act of 1964, recipients of federal assistance must comply with federal anti-discrimination law. *See* 42 U.S.C. § 2000d. Title VI further "authorize[s] and direct[s]" federal agencies that award federal funds to effectuate Section 2000d by issuing rules and regulations. 42 U.S.C. § 2000d-1. Pursuant to this authority, Defendants, as federal grantmaking authorities, are required to ensure that all grant awards comply with federal law. Specifically, Defendants must administer federal awards in a manner that ensures "that Federal funding is expended and associated programs are implemented in full accordance with the U.S. Constitution, applicable Federal statutes and regulations." 2 C.F.R. § 200.300(a); *see also* 2 C.F.R. § 200.211(c)(1)(ii); 2 C.F.R. § 200.303(b). All relevant requirements must then be communicated to recipients and subrecipients and incorporated into the awards directly or by reference in the terms and conditions of the federal award. *Id.*

That is exactly what Defendants did. They provided the terms and conditions required for the awards at issue and—using variations of similar language—informed recipients of those awards that they cannot operate DEI programs that violate federal anti-discrimination laws. These conditions are not novel. It has been true for decades that "[e]very application for Federal financial assistance must, 'as a condition to its approval and the extension of any Federal financial assistance,' contain assurances that the program will comply with Title VI and with all requirements imposed pursuant to the executive regulations issued under Title VI." *Guardians Ass'n v. Civ. Serv. Comm'n of City of New York*, 463 U.S. 582, 629-30 (1983) (Marshall, J., dissenting) (citing regulations from more than ten federal agencies). These "assurances" of compliance are "given in consideration of" federal aid, "and the federal government extends assistance in reliance on the assurance of compliance"—but the obligations of Title VI apply regardless of any certification. *Id.* at 630 (citation omitted). The DEI Conditions at issue here are no different, and these conditions do "not place upon a recipient any unanticipated burdens because any recipient must anticipate having to comply with the law." *Id.*

Accordingly, another Judge of this Court denied a similar challenge to a DEI certification provision, finding that the plaintiffs "have not demonstrated that they [are] likely to succeed in their challenge to the Certification Provision because they have not shown at this juncture that the provision goes beyond targeting DEI programs that violate federal antidiscrimination law." *San Francisco A.I.D.S. Found. v.*

*Trump*, 786 F. Supp. 3d 1184, 1200-22 (N.D. Cal. 2025), *appeal filed* No. 25-4988 (9th Cir. 2025). Further, the Fourth Circuit unanimously granted the government's motion for a stay in a case challenging Executive Order 14173, which directs federal agencies to require grant recipients to certify that they do not operate unlawful DEI programs. *See* Order, *Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, No. 25-1189 (4th Cir. Mar. 14, 2025); *see id.* at 7 (Harris, J. concurring) (explaining that the challenged provision "appl[ies] only to conduct that violates existing federal anti-discrimination law"). The Fourth Circuit subsequently vacated the preliminary injunction that had enjoined that certification requirement. *Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, No. 25-1189 (4th Cir. Feb. 6, 2026) ("Plaintiffs suggest that defendants view all DEI programs as illegal under existing antidiscrimination law. Perhaps, but the Certification Provision doesn't say that").

### (a)    The DEI Conditions Do Not Violate The "Separation of Powers"

Plaintiffs argue that the DEI Conditions violate the Separation of Powers. Mot. at 25-28. Plaintiffs' argument fails. To start, *Dalton v. Specter*, 511 U.S. 462 (1994), forecloses Plaintiffs' ability to raise statutory arguments with constitutional dressing. There, the Supreme Court reversed a federal circuit court that had "reasoned, relying primarily on *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952), that whenever the President acts in excess of his statutory authority, he also violates the constitutional separation-of-powers doctrine." *Id.* at 471. The Court stated this reasoning was incorrect because the Supreme Court's "cases do not support the proposition that every action by the President, or by another executive official, in excess of his statutory authority is ipso facto in violation of the Constitution." *Id.* at 472. Instead, the Court "often distinguished between claims of constitutional violations and claims that an official has acted in excess of his statutory authority." *Id.* Therefore, "claims simply alleging that the President [or an executive officer] has exceeded his statutory authority are not 'constitutional' claims, subject to judicial review." *Id.* at 473. The Court thus should ignore Plaintiffs' attempt to constitutionalize their statutory claim. *See New York v. NSF*, 793 F. Supp. 3d 562, 604-07 (S.D.N.Y. 2025) (challenge to directives and grants was statutory, not constitutional, under *Dalton*).

In any event, as discussed *supra*, Defendants fully complied with the relevant governing statutes. Indeed, Defendants are required to include conditions to ensure that recipients comply with federal

anti-discrimination law. *See* 42 U.S.C. § 2000d; 2 C.F.R. § 200.300(a); 2 C.F.R. § 200.211(c)(1)(ii); 2 C.F.R. § 200.303(b). The DEI Conditions sensibly implement Title VI. That Congress did not specifically spell out that Defendants must enforce anti-discrimination laws in each of the multitude of statutes governing the grant programs at issue here does not remove Defendants' authority—and obligation—to ensure that recipients follow those laws. There is thus no basis for a Separation of Powers violation.

### (b)   The DEI Conditions Do Not Violate The Spending Clause[7]

Plaintiffs also argue that the DEI Conditions are unlawful under the U.S. Constitution's Spending Clause. U.S. Const. art. I, § 8, cl. 1. Mot. at 30-33 & 34-36. Under the Spending Clause, statutes passed by Congress must meet certain criteria. Absent a violation of another constitutional provision, all that is required is that they must be "in pursuit of the general welfare" and "unambiguous, clearly communicating . . . the consequences of [] participation in the federally funded scheme." *Mayweathers v. Newland*, 314 F.3d 1062, 1066 (9th Cir. 2002) (citation omitted). The funding must "bear some relationship to the purpose of the federal spending," but that is a "low-threshold." *State ex rel. Becerra v. Sessions*, 284 F. Supp. 3d 1015, 1034 (N.D. Cal. 2018). In any event, "Congress may . . . 'further broad policy objectives by conditioning receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives.'" *Dole*, 483 U.S. at 206 (citation omitted). Applying these principles, the Ninth Circuit rejected a Spending Clause challenge to COPS Office competitive grant programs (one of the types of grants at issue in this case) under the first Trump Administration. *See City of L.A. v. Barr*, 929 F.3d 1163, 1175 (9th Cir. 2019) ("the applicable Spending Clause principles do not readily apply to an allocation of grant funds through a competitive grant process, such as the [COPS Office] program in this case"). The same result should apply here.

Plaintiffs' first argument on this front is that the DEI Conditions are ambiguous. *See* Mot. at 31-33. They are not. The provisions, in their various iterations, generally require Plaintiffs to not operate any program, including programs having components relating to DEI, that violates federal anti-discrimination laws. To comply with the clear notice requirement of Spending Clause jurisprudence, Congress must only

---

[7] The Motion, in a footnote, makes cursory efforts to discuss the Fifth Amendment due process cause of action and wholly fails to mention the Tenth Amendment cause of action. Mot. at 34 n.13. Because Plaintiffs do not include any meaningful discussion of these causes of action, Defendants do not address them in this brief in the interest of judicial efficiency.

make clear that acceptance of federal funds obligates States to comply with a condition. *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 18 (1981). *Pennhurst* explicitly recognized that a State's obligations under a Spending Clause program may be "largely indeterminate," so long as Congress gives "clear notice to the States that they, by accepting funds under the Act, would indeed be obligated to comply with" the condition. *Id.* at 24-25. States make an "informed choice" when the Federal Government simply makes clear that acceptance of federal money obligates the States to comply with a condition. *Id.* at 25. Indeed, the Ninth Circuit has recognized that the Spending Clause is satisfied where a "statute's intention to impose a condition is expressed clearly," even though the operation of a funding condition "is perhaps unpredictable." *Mayweathers*, 314 F.3d at 1067. There is no requirement to "list every factual instance in which a [funding recipient] will fail to comply with a condition" because requiring "[s]uch specificity would prove too onerous, and perhaps, impossible." *Id.*

Here, there is no doubt that grantees must comply with the DEI Conditions. Plaintiffs have identified no ambiguity about whether they are subject to the conditions; that is why they filed this lawsuit. While Defendants require that any DEI programs grantees operate comply with anti-discrimination law, Plaintiffs cannot plausibly argue that this obligation is impermissible (or ambiguous) given that it is subsumed within the broader prohibition against operating any programs that violate federal anti-discrimination law. Indeed, it is unclear why Plaintiffs believe this provision is ambiguous given Congress's express requirements for federal grant funding recipients to comply with federal anti-discrimination law and for agencies to effectuate that law when awarding federal funding. 42 U.S.C. §§ 2000d, 2000d-1. The consequences of failing to follow anti-discrimination laws, such as an investigation into False Claims Act liability, *see* Mot. at 32-33, does not make the requirement to comply ambiguous. *Cf. Lamie v. U.S. Tr.*, 540 U.S. 526, 538 (2004) (courts apply "plain, nonabsurd meaning" of a statute "even if . . . the words lead to a harsh outcome").

Next, Plaintiffs argue that the DEI Conditions are "unrelated to the purpose of the grants." Mot. at 34-36. Here, again, Plaintiffs make conclusory, undifferentiated assertions about DHS, FEMA, DOJ, and DOI grant programs, without discussing the underlying statutory provisions or tying those purported grant purposes to the specific DEI Conditions imposed on each grant program. *Id*. Regardless, there is no conflict between the DEI Conditions and the underlying statutes. Indeed, the DEI Conditions simply ensure that

grant recipients will comply with anti-discrimination law (as the recipients are independently required to do). In any event, the reasonable relation requirement is a "low-threshold," *Becerra*, 284 F. Supp. 3d at 1034, and "not demanding." *Barr*, 929 F.3d at 1175. The Supreme "Court has never struck down a condition on federal grants based on th[e] relatedness prong." *Id.*

There is no need for this Court to break new ground, as agencies have long applied grant conditions like the DEI Conditions to further all manner of purposes and objectives. *See, e.g.*, 2 C.F.R. § 200.303(b) (requiring all recipients of federal grants to "[c]omply with the U.S. Constitution, Federal statutes, regulations, and the terms and conditions of the Federal award"). The DEI Conditions here simply prevent the expenditure of federal funds on activities that violate the law. *Cf. State v. Dep't of Just.*, 951 F.3d 84, 107 (2d Cir. 2020) ("[T]here is something disquieting in the idea of States and localities seeking federal funds to enforce their own laws while themselves hampering the enforcement of federal laws, or worse, violating those laws.").

### (ii)   The EO Conditions Are Constitutional

Plaintiffs define approximately six different conditions related to compliance with executive orders with the umbrella term "EO Conditions." Mot. at 28 n.9.[8] Here, Plaintiffs again argue that the EO Conditions violate the Separation of Powers and the Spending Clause. These arguments are similarly misguided.

Defendants are required to incorporate into the terms of their grants "national policy requirements," including those flowing from "executive order[s]." 2 C.F.R. § 200.211(c)(1)(ii); *see also* 2 C.F.R. § 200.300. There is nothing new about these grant requirements; the EO Conditions are lawful and within Defendants' authority. Nor do the EO Conditions violate the Spending Clause. To start, these conditions are unambiguous. The EO Conditions merely require Plaintiffs to comply with executive orders in the same manner as they would have to follow any changes to federal statutes or regulations or intervening court decisions. The EO Conditions thus are as clear as those prior requirements and readily satisfy the Spending Clause standard. *See Mayweathers*, 314 F.3d at 1067.

---

[8] Plaintiffs do not claim that the terms and conditions for DOJ's OJP and OVW include EO Conditions (Mot. at 28 n.9), and Plaintiffs thus do not demonstrate *any* grounds for a preliminary injunction to issue related to EO Conditions with respect to those offices.

Plaintiffs claim that the EO Conditions are ambiguous "because they offer no clear idea of what 'compliance' with the numerous EOs would entail." Mot. at 33. But Plaintiffs' facial challenge to the EO Conditions does not explain what possible hypothetical ambiguities exist. Such "facial challenges are disfavored" because courts must examine "how a law works in all of its applications." *Moody v. NetChoice, LLC*, 603 U.S. 707, 744 (2024) (explaining facial challenges in the First Amendment context). Plaintiffs provide no examples of Executive Orders that they believe may cause them harm, and instead argue that they "cannot possibly ascertain what it means to comply with all executive orders related to grants that this Administration has issued or might issue in the future." Mot. at 33. But such compliance is commonplace for recipients, who are regularly required to ensure their programs comply with all federal law, even as it shifts when Congress passes laws or the Supreme Court interprets laws differently. *See, e.g.*, *Nat'l Urban League v. Trump*, 783 F. Supp. 3d 61, 94-96 (D.D.C. 2025) (rejecting vagueness challenges to executive orders that tell "agencies to cancel equity related agreements in accordance with the law, not whenever they see fit"). Indeed, the EO Conditions "do[] not place upon a recipient any unanticipated burdens because any recipient must anticipate having to comply with the law," even as federal law shifts when Congress passes laws or the Supreme Court interprets laws differently. *Guardians Ass'n*, 463 U.S. at 630 (Marshall, J., dissenting).

The EO Conditions surpass the "low-threshold" of being reasonably related to the purpose of expenditure. *See Becerra*, 284 F. Supp. 3d at 1034. Defendants are required to ensure that all grants comply with federal law, and the EO Conditions are another way to ensure that requirement is met.

### (iii)    The Immigration Conditions Are Constitutional

Plaintiffs define seven different conditions related to federal immigration enforcement with the umbrella term "Immigration Conditions" (Mot. at 29 n.10), and advance an undifferentiated attack on those Immigration Conditions—in their various iterations, as applied to different types of grants and different agency prerogatives—contending they violate the Separation of Powers and the Spending Clause.[9] Not so.

As a preliminary matter, some of the alleged "Immigration Conditions" are not grant conditions at

---

[9] Plaintiffs do not claim that DOI's and/or OVW's terms and conditions include Immigration Conditions (Mot. at 29 n.10), and Plaintiffs thus do not demonstrate *any* grounds for a preliminary injunction to issue related to Immigration Conditions with respect to DOI and/or OVW.

all and/or are not included in some Defendants' grant terms. For example, the provisions that Plaintiffs define as "OVC Immigration Enforcement Condition" and "BJA Immigration Enforcement Condition" (Mot. at 18-19) are not included in any OJP grant awards. Henneberg Decl. ¶¶ 4 & 14. And the provisions that Plaintiffs define as "OVC Immigration Priority Condition," the "BJA Immigration Priority Condition," and the "COPS Immigration Priority Condition" (Mot. at 18-19) are not award conditions and are not included in OJP or COPS Office grant awards. Henneberg Decl. ¶ 16. Instead, these provisions apply to the *selection* criteria for certain discretionary, competitive grant programs administered by OJP and the COPS Office; an applicant's choice not to include the information requested by the OVC Immigration Priority Condition, the BJA Immigration Priority Condition, and/or the COPS Immigration Priority Condition does not foreclose the applicant's ability to obtain an award, and that language does not compel *any* action by grant applicants. *Id.*

Further, FEMA has already determined that the DHS Immigration Enforcement Conditions do not apply to many of the grant programs invoked in this lawsuit (*see* Richardson Decl. ¶ 8), and there is thus no basis for a preliminary injunction to issue with respect to those grant programs.

But putting aside the factual inaccuracies created by the undifferentiated analysis in Plaintiffs' Motion, to succeed in their facial challenge Plaintiffs must show that the Immigration Conditions would be unconstitutional in all their applications. *See United States v. Salerno*, 481 U.S. 739, 745 (1987) (facial challenge must establish that "no set of circumstances exists under which [the enactment] would be valid"); *see also Am. Fed'n of State, Cty. & Mun. Emps. v. Scott*, 717 F.3d 851, 857-58 (7th Cir. 2013); *NTEU v. Bush*, 891 F.2d 99, 101 (5th Cir. 1989). Plaintiffs do not meet this standard, because Congress frequently authorizes the executive branch to impose discretionary conditions on the receipt of federal grants.

As the Supreme Court has held, "Congress may attach conditions on the receipt of federal funds, and has repeatedly employed the power to further broad policy objectives by conditioning receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives." *Dole*, 483 U.S. at 206 (quotation marks omitted). The *Dole* Court outlined certain limitations including that "the exercise of the spending power must be in pursuit of 'the general welfare,'" that conditions on the receipt of federal funds must be stated "unambiguously" so that recipients can "exercise their choice knowingly, cognizant of the consequences of their participation," that conditions may be a concern if unrelated to the

federal interest in particular national projects or programs, and that the conditions are otherwise constitutional. *Id.* at 207. As a result, the federal government may, constitutionally, create incentives for states to act in accordance with federal law and policies. *See Dole*, 483 U.S. at 210 (rejecting the argument that the Spending Clause imposes "a prohibition on the indirect achievement of objectives which Congress is not empowered to achieve directly"). Congress has given DHS and DOJ the authority to fund many different projects, and by allowing those agencies to administer federally funded programs, Congress has necessarily given the agencies the authority to apply conditions in line with agency and program goals.

For example, the Ninth Circuit has held that Congress granted DOJ authority under the COPS Statute to preference applicants who cooperate with immigration enforcement when awarding discretionary COPS grants. *Barr*, 929 F.3d at 1175. That court held that given the broad discretion Congress afforded DOJ in administering the COPS grant program, DOJ may incorporate its policy goals such as immigration enforcement when awarding competitive grants. *Id.* at 1177-78 (finding that Congress gave DOJ broad authority to create and implement a competitive grant program and prescribe the form of the application and the information it will require). The court also concluded that considering a grant applicant's cooperation with immigration enforcement is not contrary to the COPS Statute and is actually consistent with the public safety and community policing focus of the Act. *Id.* at 1176, 1178.

Similarly, Plaintiffs' conclusion—supported by scant factual development—that grant programs administered by DHS are unrelated to immigration enforcement (Mot. at 35) ignores the fact that immigration enforcement and national security are related and are squarely within the scope of DHS's duties. Indeed, DHS is the overarching agency tasked by Congress with enforcing federal law and policy encompassing complementary emergency, national security, and immigration objectives. *See, e.g.*, 6 U.S.C. § 111(b) (listing multiple parts of the DHS mission); 6 U.S.C. § 112(b)(2) (DHS "shall have the authority to make contracts, grants, and cooperative agreements . . . as may be necessary and proper to carry out the Secretary's responsibilities under this chapter or otherwise provided by law").

The DHS grant programs here (to the extent FEMA has not determined that the DHS Immigration Enforcement Conditions do not apply to those grant programs) are designed to provide federal funding to build state and local capabilities to prevent and potentially respond to acts of terrorism. And because (1) partnership and coordination are essential elements of the terrorism prevention and national security

mission and (2) that mission includes immigration enforcement, DHS and FEMA could reasonably determine that state and local governments that refuse to cooperate with, refuse to share information with, or actively obstruct immigration enforcement hinder their ability to build effective terrorism prevention capabilities. Thus, DHS may reasonably determine that the Immigration Conditions promote these complementary national security and immigration goals that are central to the mission of DHS and its subagencies, including FEMA.

### 3.    The Challenged Conditions Do Not Violate The APA

#### (i)    Plaintiffs' Grant Awards Are Not Reviewable

Plaintiffs are unlikely to prevail on their APA claim to the extent Plaintiffs challenge conditions imposed on these grant awards. "[B]efore any review at all may be had, a party must first clear the hurdle of § 701(a)," *Heckler v. Chaney*, 470 U.S. 821, 828 (1985), which precludes review under the APA if the challenged agency action is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Under § 701(a)(2), "review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler*, 470 U.S. at 830. "In such a case," the relevant statutory provision "can be taken to have committed the decisionmaking to the agency's judgment absolutely." *Id.* (internal quotation marks omitted).

An agency's allocation of appropriated funds is typically and presumptively committed to agency discretion by law because "the very point . . . is to give an agency the capacity to adapt to changing circumstances and meet its statutory responsibilities in what it sees as the most effective or desirable way." *Lincoln v. Vigil*, 508 U.S. 182, 192 (1993); *see Milk Train, Inc. v. Veneman*, 310 F.3d 747, 748-51 (D.C. Cir. 2002); *Los Coyotes Band of Cahuilla & Cupeño Indians v. Jewell*, 729 F.3d 1025, 1038 (9th Cir. 2013); *Serrato v. Clark*, 486 F.3d 560, 568-70 (9th Cir. 2007). This is why agency grant-award decisions are presumptively unreviewable. *See Lincoln*, 508 U.S. at 191-92 (including "allocation of funds from a lump-sum appropriation" among the "administrative decision[s] traditionally regarded as committed to agency discretion" that have been held "to be presumptively unreviewable"); *see also Milk Train, Inc.*, 310 F.3d at 750–51 (applying *Lincoln* in the context of non-lump-sum appropriations).

Plaintiffs cannot overcome the presumption that the DEI Conditions, the EO Conditions, and the Immigration Conditions—which generally, albeit in different language, under different administrative

DEFENDANTS' OPPOSITION TO SECOND MOTION FOR PRELIMINARY INJUNCTION
No. 26-cv-01535-WHO                23

records, and as applied to different grant programs, reiterate that recipients must comply with federal law and executive orders—are unreviewable for the discretionary grants at issue in this case. No statutory provision limits Defendants' discretion to issue funding for these grants, much less do the statutes prevent requiring compliance with federal anti-discrimination law or Executive Branch policy directives, making those decisions presumptively unreviewable. *Cf. Pol'y & Rsch., LLC v. HHS*, 313 F. Supp. 3d 62, 75-76 (D.D.C. 2018) (holding that decision to stop funding and recompete the funds is a "presumptively unreviewable" type of agency action, but holding that a denial to continue funding without explanation was arbitrary and capricious under the APA).

### (ii)    Plaintiffs' APA Claim Also Fails On The Merits

Plaintiffs contend that Defendants exceeded their statutory authority to implement the Challenged Conditions. Mot. at 39. But that is wrong. As discussed above, Defendants are required to enforce all federal anti-discrimination laws and are obligated, by regulation, to require recipients of federal grant funding to follow executive orders, and are empowered to include immigration enforcement-related conditions given the agency duties at issue here.

Defendants' implementation of the Challenged Conditions was also not arbitrary or capricious. Mot. at 39-41. Judicial review under the APA's arbitrary-and-capricious standard "is deferential, and a court may not substitute its own policy judgment for that of the agency." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). That review is "narrow." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). All that is required is for the agency to "act[] within a zone of reasonableness." *Prometheus*, 592 U.S. at 423; *Barr*, 929 F.3d at 1181 ("The agency need provide only a minimal level of analysis to avoid its action being deemed arbitrary and capricious"). Here, given the agency's discretion to impose appropriate terms and conditions on the receipt of federal funds, and general grantmaking requirements that the recipients of such funds follow federal law, the adoption of grant conditions that require recipients to comply with executive orders, federal anti-discrimination laws, and (in certain instances) immigration enforcement can hardly be considered arbitrary or capricious. *See Barr*, 929 F.3d at 1182 (rejecting APA arbitrary and capricious challenge to COPS grant programs and holding that "the wisdom of DOJ's policy is not an element of our arbitrary and capricious review").

Plaintiffs argue otherwise based on the mistaken premise that the Challenged Conditions "reflect a

drastic change in agency position" and that Defendants "failed to consider longstanding reliance interests before imposing the Challenged Conditions." Mot. at 40-41. But although Defendants' grant conditions may have been worded differently in the past, the Challenged Conditions are not new, nor do they constitute a "drastic change" in conditions applicable to Defendants' grants. As discussed above, the DEI Conditions simply require Plaintiffs to comply with otherwise applicable anti-discrimination law. Similarly, Defendants have long been required to incorporate executive orders into their federal grantmaking. Further, Plaintiffs' claim that Defendants "imposed the new unlawful terms without considering the risk to public safety" is a red herring. Mot. at 41. Plaintiffs unquestionably are free to accept the awarded federal funding in this case. Any harm to the public safety of Plaintiffs' communities due to their choice to not accept federal funds with appropriate conditions is not caused by the federal government. Instead, any harm here is self-inflicted to the extent Plaintiffs choose not to accept the awarded funds.

### C.    Plaintiffs Do Not Face Irreparable Harm

The "most important" *Winter* factor Plaintiffs have the burden of demonstrating is irreparable harm. *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988); *Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1171 n.6 (9th Cir. 2011) (a showing of irreparable harm is "necessary"). That standard requires a plaintiff seeking the extraordinary remedy of a preliminary injunction to "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis in original). The "possibility" of such harm is insufficient, *id.*, as is "[s]peculative injury"; Plaintiffs must show both immediacy and likelihood that they will be irreparably harmed absent preliminary relief. *See Baldrige*, 844 F.2d at 674. Here, Plaintiffs' claims of irreparable harm fail for multiple reasons.

#### 1.    The Conclusory Assertions Of Irreparable Harm In The Motion And The Boilerplate Harm Assertions In Plaintiffs' Declarations Are Deficient

At the preliminary injunction stage, there is no presumption of irreparable harm, nor is it Defendants' burden to show that a risk of irreparable harm does not exist. Instead, Plaintiffs have the burden to introduce affirmative evidence of imminent irreparable harm tied to their legal claims in order to meet this element of the *Winter* test. *Harris v. Atchley*, No. 22-cv-00529-EMC, 2023 WL 7312969, at *2 & 5 (N.D. Cal. Oct. 18, 2023) ("*Winter* makes clear that it is a plaintiff's burden to fulfill all the elements for a preliminary injunction"); *Conceptus, Inc. v. Hologic, Inc.*, No. 09-cv-02280 WHA, 2009 WL 3740713, at

*5 (N.D. Cal. Nov. 6, 2009) ("This failure of proof falls on plaintiff, not defendant. It is plaintiff's burden on a motion for a preliminary injunction"). Nor can Plaintiffs simply establish irreparable harm with respect to one Plaintiff, one grant program, one Defendant, or one condition and then ask the Court to extrapolate additional irreparable harms with respect to other Plaintiffs, other grant programs, other Defendants or other grant conditions.

Plaintiffs first contend that "deprivation of constitutional rights unquestionably constitutes irreparable injury." Mot. at 42 (quoting *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quotation marks and citation omitted)). But a conclusory assertion of "constitutional rights" is not enough; indeed, Plaintiffs' argument would create an entitlement to preliminary injunctive relief whenever purported constitutional rights are at issue, a proposition that is belied by the Supreme Court's warning that preliminary relief is an "extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 24. Moreover, the purported constitutional violations in *Hernandez*—the likely unconstitutional deprivation of physical liberty—are a far cry from the alleged irreparable harm of budgetary uncertainty at issue in this case. *Hernandez*, 872 F.3d at 994.

Further, the irreparable harm section of the Motion broadly consists of threadbare irreparable harm arguments supported by conclusory string citations to declarations (Mot. at 43-45), and those boilerplate declarations almost universally fail to establish *facts* to support the irreparable harm assertions.[10]

**Bodke Declaration (ECF No. 20-1)**:  this declaration asserts that County of Los Angeles must agree to a condition to a DOI grant by December 5, 2025, but it does not state whether it agreed to that condition nor does it include factual assertions about anything that happened following County of Los Angeles's unidentified decision by the purported December 5, 2025 deadline.

**Shaw Declaration (ECF No. 20-2)**:  this declaration does not establish that any of the Challenged Conditions have been applied to the grants discussed therein, and simply claims that County of Los Angeles "anticipates that DOJ will require . . . agree[ment] to the above conditions on an extremely short

---

[10] It is not clear that each Plaintiff has submitted a declaration regarding each Defendant and each grant program that that Plaintiff seeks to enjoin. Solely by way of example, Defendants have not located a declaration submitted on behalf of City of Santa Clara detailing its purported DOJ grant funding. To the extent any aspect of any Plaintiff's request for preliminary relief is unsupported by evidence, the request should be summarily denied.

deadline[.]"

**Kaur Declaration (ECF No. 20-3)**:  this declaration establishes that County of Los Angeles has not even been awarded the grant award at issue, and it incorrectly claims that if it is awarded the grant award, County of Los Angeles will be required to comply with conditions that are not included in the relevant OJP awards. *Cf.* Henneberg Decl. ¶¶ 4 & 14.

**Rubalcava Declaration (ECF No. 20-4)**:  this declaration claims that County of Santa Barbara has been awarded or intends to apply for various DHS grants, but it does not claim that the Challenged Conditions have been imposed on County of Santa Barbara or establish any timeline by which that would occur. Moreover, the declaration includes no factual statements about what County of Santa Barbara finds objectionable in the awards discussed therein or any factors that would force it to forego funding.

**Hammond Declaration (ECF No. 20-5)**:  this declaration claims that City of Hillsboro did not apply for one DOJ grant because it included (unidentified) "conditions[.]" As to the remaining grant programs discussed in this declaration, the declaration includes no factual statements about what City of Hillsboro finds objectionable in the awards discussed therein or any factors that would force it to forego funding.

**Harvey Declaration (ECF No. 20-6)**:  this declaration acknowledges that City of Corvallis does not even know if it will receive any of the grants at issue, and it includes zero factual statements about what it finds objectionable in that hypothetical award or any factors that would force it to forego that funding.

**Hubbard Declaration (ECF No. 20-7)**:  this declaration includes no factual statements about what County of Santa Barbara finds objectionable in the awards discussed therein, no statements about the timing of any decisions made pursuant to those awards, or any factors that would force it to forego funding.

**Jeremovic Declaration (ECF No. 20-8)**:  this declaration includes no factual statements about what County of Santa Barbara finds objectionable in the awards discussed therein, no statements about the timing of any decisions made pursuant to those awards, or any factors that would force it to forego funding.

**McDonald Declaration (ECF No. 20-9)**:  this declaration includes no factual statements about what City of Stockton finds objectionable in the award discussed therein, no statements about the timing of any decisions made pursuant to those awards, or any factors that would force it to forego funding.

**Petit Declaration (ECF No. 20-10)**:  this declaration includes no factual statements about what

City of Corvallis finds objectionable in the award discussed therein, no statements about the timing of any decisions made pursuant to that award, or any factors that would force it to forego funding.

**Small Declaration (ECF No. 20-11)**: this declaration includes no factual statements about what City of Stockton finds objectionable in the award discussed therein, no statements about the timing of any decisions made pursuant to that award, or any factors that would force it to forego funding.

**Soderman Declaration (ECF No. 20-12)**: this declaration includes no factual statements about what County of Santa Barbara finds objectionable in the awards discussed therein, no statements about the timing of any decisions made pursuant to those awards, or any factors that would force it to forego funding.

**Camerena Declaration (ECF No. 20-13)**: this declaration includes no factual statements about what County of Santa Barbara finds objectionable in the awards discussed therein, no statements about the timing of any decisions made pursuant to those awards, or any factors that would force it to forego funding.

**Coffey Declaration (ECF No. 20-14)**: this declaration includes no factual statements about what City of Beaverton finds objectionable in the awards discussed therein or any factors that would force it to forego funding.

**Janes Declaration (ECF No. 20-15)**: this declaration includes no factual statements about what City of Corvallis finds objectionable in the award discussed therein, no statements about the timing of any decisions made pursuant to that award (indeed, it appears that City of Corvallis has already obligated the funding and submitted its cost reports), or any factors that would force it to forego funding.

**Jepson Declaration (ECF No. 20-16)**: this declaration includes no factual statements about what City of Beaverton finds objectionable in the awards discussed therein, no statements about the timing of any decisions made pursuant to those awards, or any factors that would force it to forego funding.

**Cabell Declaration (ECF No. 20-17)**: this declaration includes no factual statements about what City of Santa Cruz finds objectionable in the awards discussed therein or any factors that would force it to forego funding.

**Estaji Declaration (ECF No. 20-18)**: this declaration includes no factual statements about what County of Santa Barbara finds objectionable in the award discussed therein, no statements about the timing of any decisions made pursuant to that award, or any factors that would force it to forego funding.

**Strong Declaration (ECF No. 20-19)**: this declaration includes no factual statements about what

DEFENDANTS' OPPOSITION TO SECOND MOTION FOR PRELIMINARY INJUNCTION
No. 26-cv-01535-WHO                                28

County of San Diego finds objectionable in the awards discussed therein, no statements about the timing of any decisions made pursuant to those awards, or any factors that would force it to forego funding.

**Heisinger Declaration (ECF No. 20-20)**:   this declaration asserts a concern with respect to conditions that were purportedly contained in one DOJ grant award from FY2024-25, but this grant award did not, in fact, include *any* of the Challenged Conditions at issue in this lawsuit. *See* Henneberg Decl. ¶ 17. Aside from this factually incorrect assertion, the remainder of this declaration includes no factual statements about what the City of Redwood City finds objectionable in the awards discussed therein, no statements about the timing of any decisions made pursuant to those awards, or any factors that would force it to forego funding.

**Major Declaration (ECF No. 20-21)**:   this declaration includes no factual statements about what County of Santa Barbara finds objectionable in the award discussed therein, no statements about the timing of any decisions made pursuant to that award, or any factors that would force it to forego funding.

**Casto Declaration (ECF No. 20-22)**:   this declaration demonstrates that City of Fresno already submitted an application for one grant program under protest with full reservation of rights, but does not establish any harm that came from that application. The declaration also says that it did not apply for another DOJ grant because it included (unidentified) "unlawful grant conditions." As to the remaining grant programs discussed in this declaration, the declaration includes no factual statements about what City of Fresno finds objectionable in the awards discussed therein, no statements about the timing of any decisions made pursuant to those awards, or any factors that would force it to forego funding.

**Alcorn Declaration (ECF No. 20-23)**:   this declaration includes no factual statements about what City of Fresno finds objectionable in the awards discussed therein, no statements about the timing of any decisions made pursuant to those awards, or any factors that would force it to forego funding.

**Amico Declaration (ECF No. 20-24)**:   this declaration includes no factual statements about what City of Fresno finds objectionable in the awards discussed therein, no statements about the timing of any decisions made pursuant to those awards, or any factors that would force it to forego funding.

**Morgan Declaration (ECF No. 20-25)**:   this declaration includes no factual statements about what City of Santa Clara finds objectionable in the award discussed therein, no statements about the timing of any decisions made pursuant to that award (it appears that City of Santa Clara has already obligated the

DEFENDANTS' OPPOSITION TO SECOND MOTION FOR PRELIMINARY INJUNCTION
No. 26-cv-01535-WHO                                    29

funding), or any factors that would force it to forego funding in the future.

**Torres Declaration (ECF No. 20-26)**:  this declaration includes no factual statements about what City of Santa Clara finds objectionable in the awards discussed therein, no statements about the timing of any decisions made pursuant to that award, or any factors that would force it to forego funding. Moreover, the declaration acknowledges that City of Santa Clara *already* used the funding for many of the grants discussed, and it does not identify *any* harms related to already expended federal funding.

In short, notwithstanding the fact that Plaintiffs filed 26 formulaic declarations—almost all of which include identical formatting and content—in support of their Motion, almost all those declarations rest on nothing more than the boilerplate conclusion that if "forced to forego this funding" Plaintiffs will purportedly suffer injury. But there are no *factual* assertions tying those funding decisions by Plaintiffs to the facts and claims of this case, and the attorney *ipse dixit* assertions made in the Motion and/or the underlying Complaint cannot provide that factual link.[11] Moreover, these declarations generally consist of conclusory assertions, without (1) providing timing guideposts (*i.e.*, what deadlines, if any, are impending or describing how long Plaintiffs waited after being awarded specific grants before filing the instant request for preliminary injunctive relief sufficient to establish that something has changed in the intervening period that now mandates the "extraordinary" remedy of preliminary relief), (2) stating the current status of the grants or including any communication between Plaintiffs and Defendants regarding the challenged conditions in each of the grants, and/or (3) tying Plaintiffs' generalized harm allegations to the specific grants and specific conditions challenged in this case. This "failure of proof falls on plaintiff, not defendant," and is sufficient reason alone to deny the Motion. *Conceptus*, 2009 WL 3740713, at *5; *Harris*, 2023 WL 7312969, at *2 & 5.

### 2. There Is No Risk Of Irreparable Harm Where The Challenged Conditions Are Already Enjoined By Other Federal Court Orders

To the extent the challenged conditions have already been enjoined by other courts, there is no current possibility of irreparable harm for any of the grant conditions that are already enjoined. *See, e.g.*, *Hawai'i v. Trump*, 233 F. Supp. 3d 850, 853 (D. Haw. 2017) ("[T]he Western District of Washington's

---

[11] That is especially true here, where some of the factual assertions in the underlying declarations are factually incorrect and untethered to the Challenged Conditions. *See, e.g.*, Henneberg Decl. ¶ 17.

nationwide injunction already provides the State with the comprehensive relief it seeks in this lawsuit. As such, the State will not suffer irreparable damage."). Judge Gonzalez Rogers recently denied a similarly duplicative preliminary injunction motion in a federal grant termination case. *See McKinleyville Union Sch. Dist. v. United States Dep't of Educ.*, No. 25-cv-09105-YGR, 2025 WL 4110868 (N.D. Cal. Dec. 29, 2025). There, a court in the Western District of Washington had previously issued a preliminary injunction granting "all the substantive relief requested" by the plaintiff in the case before Judge Gonzalez Rogers. *Id.* at 1. Nevertheless, the plaintiff brought a duplicative lawsuit in the Northern District of California "as a prophylactic measure in the event that a subsidiary legal argument on standing, which was rejected by that court, prevails some time in the future." *Id.* Judge Gonzalez Rogers denied the requested preliminary injunction, finding that "[s]uch concerns are too speculative to satisfy the element of imminent harm required for such extraordinary relief." *Id.* (cleaned up). The same logic—and the same result—applies here. Plaintiffs do not have a risk of irreparable harm as long as the grant conditions they challenge are already enjoined.

### D.    The Balance Of Equities And The Public Interest Favors The Government

Plaintiffs must also demonstrate that "the balance of equities tips in [their] favor" and "an injunction is in the public interest." *Winter*, 555 U.S. at 20 (citation omitted). These "factors merge when the Government is the opposing party." *Nken*, 556 U.S. at 435. Plaintiffs do not meet this burden.

The Supreme Court in *California* explained that the balance of the equities favors the federal government in this context. The public interest is harmed when the United States is forced to pay out funds that it may not be able to recover. *California*, 604 U.S. at 652. Plaintiffs have the choice of whether "to keep the programs operating," and if they choose not to, "then any ensuing irreparable harm would be of their own making." *Id.*; *see also Heckler v. Turner*, 468 U.S. 1305, 1307-08 (1984) (Rehnquist, J., in chambers) (prospect of the government being forced to make $1.3 million in improper payments per month supported a stay of injunction); *cf. Sustainability Institute v. Trump*, No. 25-1575, 2025 WL 1587100, at *2 (4th Cir. June 5, 2025) ("[T]he Government has demonstrated irreparable harm because it is being forced to disburse funds from a finite appropriation and will not be able to recoup those funds once expended."). In *NIH*, the Supreme Court reaffirmed this conclusion, emphasizing that the federal government is irreparably harmed if its funds "cannot be recouped," such as when federal grant recipients "do not state

that they will repay grant money if the Government ultimately prevails." *NIH*, 145 S. Ct. at 2660; *see also id.* at 2666 (Kavanaugh, J., concurring in part).

This is all in addition to the fact that any injunction interfering with the administration's priorities is itself a substantial harm in the balance of the equities analysis. For, "[a]ny time [the Government] is enjoined by a court from effectuating [laws], it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (citation omitted).

**E.      Any Injunctive Relief Should Be Narrowly Tailored**

If the Court were to provide injunctive relief, the injunction should be narrowly tailored to provide only what "will offer complete relief to the plaintiffs before the court." *Trump v. CASA, Inc.*, 606 U.S. 831, 852 (2025). In line with these principles, to the extent the Court intends to grant Plaintiffs' request for a preliminary injunction, any preliminary relief should be limited to address any established harms of the present Plaintiffs. In particular, that relief should flow only (1) to any Plaintiff that is able to demonstrate all the requirements for emergency injunctive relief; (2) only against any Defendant against whom all such requirements for emergency injunctive relief are met; and (3) only against any particular term and condition, imposed in specifically-identified grant programs, with respect to which any Plaintiff demonstrates all requirements for emergency injunctive relief. And any injunction should, at most, enjoin only those portions of Defendants' identified grant conditions which can be read to require actions beyond complying with federal law (something Plaintiffs are independently required to do).

**F.      Plaintiffs' Request For A Section 705 Stay Is Unwarranted And Unnecessary**

In addition to their request for a preliminary injunction under Federal Rule of Civil Procedure 65, Plaintiffs seek a stay under 5 U.S.C. § 705 preventing Defendants from "adopt[ing], issu[ing], or enforc[ing] the Challenged Conditions pending conclusion of this litigation." ECF No. 20-27. Although Plaintiffs fail to articulate clearly the intended scope of this requested relief, they urge that the Court's order "apply to the maximum extent provided for by . . . 5 U.S.C. §§ 705 and 706[.]" *Id.* As a result, it appears that Plaintiffs seek to stay agency action not only with respect to these Plaintiffs, but rather as a universal, nationwide injunction. Plaintiffs' request should be denied for two reasons.

First, a Section 705 stay is governed by the standard preliminary injunction factors, *Nat'l TPS Alliance*, 150 F.4th at 1015, and, as described elsewhere in this brief, Plaintiffs do not establish an

entitlement to the "extraordinary remedy" of preliminary injunctive relief. *Winter*, 555 U.S. at 24.

Second, as discussed above, the Supreme Court recently held that injunctive relief should be narrowly tailored to provide only what "will offer complete relief to the plaintiffs before the court." *CASA, Inc.*, 606 U.S. at 852. The Ninth Circuit has found that the Supreme Court's "complete-relief principle for crafting injunctive relief" provides "useful guidance for crafting interim equitable relief in the APA context." *Nat'l TPS Alliance*, 150 F.4th at 1028 (citations and quotation marks omitted); *see also* Application for Stay Pending Appeal, *Trump v. Miot*, No. 25-1084 (25A999) (U.S. Mar. 11, 2026), at 34 n.8 (arguing "[t]he district court erred in granting universal relief under Section 705 instead of tailoring relief to the named parties"); Application for Stay Pending Appeal, *Mullin v. Doe*, No. 25-1083 (25A952) (U.S. Feb. 26, 2026), at 37 n.7 (same). Here, a nationwide stay under Section 705 is not necessary to provide complete relief to these Plaintiffs, as Judge Seeborg recently found in a parallel grant conditions case brought by these same Plaintiffs. *City of Fresno v. Turner*, No. 25-cv-07070-RS, 2026 WL 1146290, at *11 (N.D. Cal. Apr. 28, 2026).

## G.    Any Injunctive Relief Should Be Accompanied By A Bond

Any preliminary injunction should also be accompanied by a bond under Federal Rule of Civil Procedure 65(c). As the D.C. Circuit clarified, "injunction bonds are generally required." *Nat'l Treasury Emps. Union v. Trump*, No. 25-5157, 2025 WL 1441563, at *3 n.4 (D.C. Cir. May 16, 2025) (per curiam). The Court has broad discretion to determine the amount of an appropriate bond. If the Court were to enter an injunction, Defendants ask that the bond amount reflect the cost and disruption to Defendants' administration to the grants at issue in this proceeding resulting from Plaintiffs' requested relief.

## V.    Conclusion

For the foregoing reasons, this Court should deny Plaintiffs' motion for a preliminary injunction and Section 705 stay.

DATED:  May 18, 2026                         Respectfully submitted,

                                             CRAIG H. MISSAKIAN
                                             United States Attorney

/s/ Jevechius D. Bernardoni
JEVECHIUS D. BERNARDONI
Assistant United States Attorney

Attorneys for Defendants