ANDREW JANZ (SBN 287672)
Fresno City Attorney
andrew.janz@fresno.gov
CITY OF FRESNO
2600 Fresno Street
Fresno, CA 93721
Telephone: (559) 621-7500
Facsimile:  (559) 457-1084

*Attorney for Plaintiff*
CITY OF FRESNO

AMBER HOLDERNESS (SBN 252363)
Chief Assistant County Counsel
aholderness@countyofsb.org
OFFICE OF THE COUNTY COUNSEL
COUNTY OF SANTA BARBARA
105 E. Anapamu St., Suite 201
Santa Barbara, CA 93101
Telephone: (805) 568-2950
Facsimile: (805) 568-2982

*Attorneys for Plaintiff*
COUNTY OF SANTA BARBARA

THOMAS FAUGHNAN (SBN 155238)
Chief Deputy County Counsel
tfaughnan@counsel.lacounty.gov
MICHAEL S BUENNAGEL (SBN 259000)
Senior Deputy County Counsel
mbuennagel@counsel.lacounty.gov
OFFICE OF THE COUNTY COUNSEL
COUNTY OF LOS ANGELES
648 Kenneth Hahn Hall of Administration
500 West Temple Street
Los Angeles, California 90012-2713
Telephone: (213) 584-1473
Facsimile: (213) 617-7182

*Attorneys for Plaintiff*
THE COUNTY OF LOS ANGELES

JONATHAN V. HOLTZMAN (SBN 99795)
jholtzman@publiclawgroup.com
JAMES R. ROSS (SBN 149199)
jross@publiclawgroup.com
RYAN P. McGINLEY-STEMPEL (SBN 296182)
rmcginleystempel@publiclawgroup.com
MAXWELL S. PELTZ (SBN 183662)
mpeltz@publiclawgroup.com
JAKE D. FREITAS (SBN 341837)
jfreitas@publiclawgroup.com
MARIBEL LOPEZ (SBN 340907)
mlopez@publiclawgroup.com
TAYLOR P. COLE (SBN 367646)
tcole@publiclawgroup.com
RENNE PUBLIC LAW GROUP
350 Sansome Street, Suite 300
San Francisco, California 94104
Telephone: (415) 848-7200
Facsimile:  (415) 848-7230

*Attorneys for Plaintiffs*
CITY OF FRESNO; CITY OF SANTA CLARA;
CITY OF REDWOOD CITY; CITY OF SANTA
CRUZ; CITY OF BEAVERTON; CITY OF
CORVALLIS; CITY OF HILLSBORO; CITY OF
STOCKTON; COUNTY OF SAN DIEGO;
COUNTY OF LOS ANGELES; COUNTY OF
SANTA BARBARA

RENNE PUBLIC LAW GROUP

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND FOR PRELIMINARY RELIEF UNDER 5 U.S.C. § 705 - Case No. 3:26-cv-01535-WHO

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF FRESNO; CITY OF SANTA CLARA; CITY OF REDWOOD CITY; CITY OF SANTA CRUZ; CITY OF BEAVERTON; CITY OF CORVALLIS; CITY OF HILLSBORO; CITY OF STOCKTON; COUNTY OF SAN DIEGO; COUNTY OF LOS ANGELES; COUNTY OF SANTA BARBARA, | Case No. 3:26-cv-01535-WHO |
| | *Assigned to Hon. William H. Orrick* |
| Plaintiffs, | **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND FOR PRELIMINARY RELIEF UNDER 5 U.S.C. § 705** |
| v. | |
| KRISTI NOEM in her official capacity as Secretary of Homeland Security; the U.S. DEPARTMENT OF HOMELAND SECURITY; KAREN EVANS in her official capacity as Acting Administrator of Federal Emergency Management Agency; the FEDERAL EMERGENCY MANAGEMENT AGENCY; DOUG BURGUM in his official capacity as Secretary of the Interior; the U.S. DEPARTMENT OF THE INTERIOR; PAMELA BONDI in her official capacity as Attorney General; the U.S. DEPARTMENT OF JUSTICE, | Case Filed:  February 20, 2026 |
| Defendants. | |

RENNE PUBLIC LAW GROUP

## TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................................i

TABLE OF AUTHORITIES .........................................................................................................ii

I.    INTRODUCTION ................................................................................................................1

II.    ARGUMENT.........................................................................................................................1

A.    Plaintiffs Have Standing ........................................................................................1

B.    Plaintiffs' Asserted Right to Relief Arises Out of the Same Series of Occurrences and Are Properly Joined Under Rule 20........................................................................2

C.    Venue is Proper in This District...........................................................................5

D.    This Court Has Jurisdiction to Review the Lawfulness of the Challenged Conditions ................................................................................................................6

E.    Plaintiffs Are Likely to Succeed on the Merits......................................................6

1.    Defendants' Implementation of the Challenged Conditions Violates the APA...........................................................................................................6

a.    The Imposition of the Unlawful Conditions Is Not Committed to Agency Discretion ...........................................................................7

b.    Defendants Offer No Reasonable Explanation Justifying the Challenged Conditions..................................................................7

2.    The DEI Conditions Are Unlawful ................................................................8

3.    The EO Conditions are Unlawful ................................................................10

4.    The Immigration Conditions Are Unlawful..............................................11

F.    Plaintiffs Will Suffer Irreparable Harm in the Absence of Preliminary Relief ................12

G.    Relief in Other Cases Does Not Eliminate Plaintiffs' Harm .............................13

H.    Plaintiffs Seek an Appropriately Tailored Preliminary Injunction ...................15

I.    A Preliminary Injunction Serves the Public Interest; a Bond or Stay Does Not .............15

III.    CONCLUSION....................................................................................................................16

i

RENNE PUBLIC LAW GROUP

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc*,
  99 F. Supp. 3d 1110 (C.D. Cal. 2015) ...........................................................................5

*Am. Fed'n of Gov't Emps., AFL-CIO v. United States Off. of Pers. Mgmt.*, No. C 25-
  01780 WHA, 2025 WL 770360
  (N.D. Cal. Mar. 10, 2025) .............................................................................................5

*Ariz. Dream Act Coal. v. Brewer*,
  757 F.3d 1053 (9th Cir. 2014) ....................................................................................16

*ASSE Int'l, Inc. v. Kerry*,
  803 F.3d 1059 (9th Cir. 2015) ......................................................................................7

*California v. Health & Hum. Servs.*,
  390 F. Supp. 3d 1061 (N.D. Cal. 2019) ......................................................................14

*City & Cnty. of San Francisco v. Trump*,
  783 F. Supp. 3d 1148 (N.D. Cal. 2025) ..................................................................2, 16

*City & Cnty. of San Francisco v. Trump*,
  No. 25-CV-01350-WHO, 2025 WL 2243619 (N.D. Cal. Aug. 5, 2025) ................2, 3, 5

*City & Cnty. of San Francisco v. United States Dep't of Just.*,
  No. 25-CV-09277-JD, 2026 WL 177945 (N.D. Cal. Jan. 21, 2026) .........................7, 10

*City of Chicago v. Noem*,
  No. 25 CV 12765, 2025 WL 3251222 (N.D. Ill. Nov. 21, 2025) .....................................2

*City of Chicago v. United States Dep't of Just.*,
  No. 25 C 13863, 2026 WL 114294 (N.D. Ill. Jan. 15, 2026) ..........................2, 8, 9, 10

*City of Fresno v. Turner*,
  No. 25-CV-07070-RS, 2025 WL 2469330
  (N.D. Cal. Aug. 27, 2025)..............................................................................................2

*City of Fresno v. Turner*,
  No. 25-CV-07070-RS, 2026 WL 1146290
  (N.D. Cal. Apr. 28, 2026) .......................................................................................13, 14

*City of Fresno v. Turner*,
  No. 25-cv-07070-RS, 2025 WL 2721390 (N.D. Cal. Sept. 23, 2025)...........................8, 10

*City of Los Angeles v. Barr*,
  929 F.3d 1163 (9th Cir. 2019) ....................................................................................12

*Cnty. of Santa Clara v. Noem*,
  815 F. Supp. 3d 979 (N.D. Cal. 2025) ................................................................. *passim*

RENNE PUBLIC LAW GROUP

RENNE PUBLIC LAW GROUP

*Dalton v. Specter*,
  511 U.S. 462 (1994)......................................................................................................9

*Dep't of Commerce v. New York*,
  588 U.S. 752 (2019)......................................................................................................7

*Dep't of Educ. v. California*,
  145 S. Ct. 966 (2025) (per curiam) ............................................................................6

*Exxon Corp. v. F.T.C.*,
  588 F.2d 895 (3d Cir. 1978)........................................................................................5

*Guardians Ass'n v. Civ. Serv. Comm'n of City of New York*,
  463 U.S. 582 (1983)......................................................................................................9

*Hawai'i v. Trump*, *Hawai'i v. Trump*,
  233 F.Supp.3d 850 (D. Haw. 2017) .........................................................................14

*Hernandez v. Sessions*,
  872 F.3d 976 (9th Cir. 2017) ....................................................................................12

*Hous. Auth. of City & Cnty. of San Francisco v. Turner*,
  No. 25-CV-08859-JST, 2025 WL 3187761
  (N.D. Cal. Nov. 14, 2025)..............................................................................8, 9, 10

*Illinois v. Fed. Emergency Mgmt. Agency*,
  801 F. Supp. 3d 75 (D.R.I. 2025) .............................................................................11

*Illinois v. Fed. Emergency Mgmt. Agency*,
  No. CV 25-206 WES, 2025 WL 2908807 (D.R.I. Oct. 14, 2025)..........................15

*Kingdom v. Trump*,
  No. 25-cv-691, 2025 WL 1568238 (D.D.C. June 3, 2025)........................................8

*Lamont v. Haig*,
  590 F.2d 1124 (D.C. Cir. 1978) ..................................................................................6

*League to Save Lake Tahoe v. Tahoe Reg'l Plan. Agency*,
  558 F.2d 914 (9th Cir. 1977) ......................................................................................3

*Martin Luther King, Jr. Cnty. v. Turner*,
  785 F. Supp. 3d 863 (W.D. Wash. 2025)...............................................................7, 16

*Martinez v. Dep't of Just.*,
  324 F.R.D. 33 (D.D.C. 2018)......................................................................................5

*Mayweather v. Newland*,
  314 F.3d 1062 (9th Cir. 2002) ..................................................................................10

*McKinleyville Union School District v. United States Department of Education*,
  No. 25-cv-09105-YGR, 2025 WL 4110868
  (N.D. Cal. Dec. 29, 2025)..........................................................................................14

*Melendres v. Arpaio*,
  695 F.3d 990 (9th Cir. 2012) .................................................................................1, 15

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND FOR
PRELIMINARY RELIEF UNDER 5 U.S.C. § 705 - Case No. 3:26-cv-01535-WHO

*Mullin v. Doe*,
 No. 25-1083 (25A952) (U.S. Feb. 26, 2026) ...................................................................................14

*Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*,
 167 F.4th 86 (4th Cir. 2026) .................................................................................................9

*Nw. Immigrant Rts. Project v. United States Citizenship & Immigr. Servs.*,
 496 F. Supp. 3d 31 (D.D.C. 2020) ........................................................................................14

*Ohio v. Environmental Protection Agency*,
 603 U.S. 279 (2024)..............................................................................................................6

*Pablo Sequen v. Kaiser*,
 810 F. Supp. 3d 1076 (N.D. Cal. 2025) ................................................................................3

*Peace Ranch, LLC v. Bonta*,
 93 F.4th 482 (9th Cir. 2024) .................................................................................................2

*San Francisco A.I.D.S. Found. v. Trump*,
 786 F. Supp. 3d 1184 (N.D. Cal. 2025).................................................................................9

*Schlanger v. Seamans*,
 401 U.S. 487 (1971) .............................................................................................................6

*South Dakota v. Dole*,
 483 U.S. 203 (1987)..............................................................................................................11

*Stafford v. Briggs*,
 444 U.S. 527 (1980)..............................................................................................................6

*State of California v. United States Department of Agriculture*,
 No. 3:25-cv-06310 (N.D. Cal. Feb 26, 2026) .......................................................................15

*State of New York v. Trump*,
 No. 25-CV-39-JJM-PAS, 2025 WL 440873
 (D.R.I. Feb. 10, 2025) ..........................................................................................................15

*Susan B. Anthony List v. Driehaus*,
 573 U.S. 149 (2014)..............................................................................................................2

*Trump v. CASA, Inc.*,
 606 U.S. 831 (2025)..............................................................................................................14

*United Aeronautical Corp. v. United States Air Force*,
 80 F.4th 1017 (9th Cir. 2023) ..............................................................................................6

**Federal Statutes**

5 U.S.C.
 §§ 551–559............................................................................................................ *passim*
 § 701(a)(2) ...........................................................................................................................7
 § 705.....................................................................................................................................14

RENNE PUBLIC LAW GROUP

28 U.S.C.
  § 1391.................................................................................................................................6
  § 1391(e)............................................................................................................................5
  § 1391(e)(1)(C) .................................................................................................................5

**Other Authorities**

2 C.F.R. § 200.211(c)(1)(ii) ...............................................................................................10

Exec. Order
  No. 14,168, 90 Fed. Reg. 8615 (Jan. 30, 2025) ...............................................................4
  No. 14,173, 90 Fed. Reg. 8633 (Jan. 31, 2025) ............................................................4, 8
  No. 14,218, 90 Fed. Reg. 10,581 (Feb. 25, 2025)........................................................4, 12
  No. 14,332, 90 Fed. Reg. 38,929 (Aug. 12, 2025)...........................................................4

Fed. R. Civ. P.
  20................................................................................................................2, 3, 4, 5
  20(a)(1)–(2)..................................................................................................................3
  20(a)(2) ..........................................................................Fed. R. Civ. P. 20 (a) (2)5

U.S. Constitution
  First Amendment ............................................................................................................9
  Fifth Amendment ...........................................................................................................9

7 Wright, Miller & Kane, Fed. Prac. and Proc. § 1653 (3d ed.) ........................................4

RENNE PUBLIC LAW GROUP

## I.    INTRODUCTION

Rather than meaningfully engage with the agency action Plaintiffs challenge, or the relief Plaintiffs seek, Defendants attempt to reframe this dispute as a contractual disagreement over individual grant contracts.  But that does not accurately characterize the conduct challenged in this action, which is the implementation of policy by Defendant agencies, at the President's direction, to impose unauthorized and ambiguous conditions on *all federal grant programs*.  This challenge concerns those policies and the resulting actions taken by the heads of the Defendant agencies, their agents, and component offices.  Plaintiffs do not seek damages or specific performance of any particular grant agreement; they seek equitable relief holding the agency actions unlawful and setting them aside.  Defendants' concerted effort to impose unlawful conditions on all federal funds violates the Constitution and the Administrative Procedure Act ("APA") by converting congressionally appropriated funds into a tool for advancing the administration's rewrite of federal spending and anti-discrimination law by executive fiat.  Neither Defendants' jurisdictional and procedural arguments nor their arguments on the merits undermine Plaintiffs' showing that they are likely to prevail.  Accordingly, preliminary injunctive relief is warranted to prevent the imposition of the unlawful conditions that would result in constitutional injury, budgetary uncertainty, and the delay or termination of services critical to the public safety and wellbeing.

## II.    ARGUMENT

### A.    Plaintiffs Have Standing

Defendants' contention that Plaintiffs must establish that they have an active grant agreement through each program administered by Defendants to satisfy standing and warrant preliminary relief (*see* Dkt. 22 at 15–16) is unsupported by any authority and would be a drastic narrowing of the Article III standing requirement.  Plaintiffs challenge the implementation of policy by Defendant agencies to impose unauthorized and ambiguous conditions on *all federal grant programs*, not individual grant agreements.  Plaintiffs have shown that Defendants have imposed these conditions across their portfolio of grant programs in an arbitrary and capricious manner, disregarding the limits of those programs' authorizing statutes.  Plaintiffs' alleged injury— having to accept unconstitutional conditions or forfeit millions in critical funding—is an injury that "stems from" Defendants' policies to impose the new and unlawful conditions.  *See Melendres v. Arpaio*, 695 F.3d 990, 997–98 (9th Cir. 2012).  That establishes

RENNE PUBLIC LAW GROUP

an injury-in-fact.  Accordingly, all plaintiffs satisfy Article III standing.  *See Cnty. of Santa Clara v. Noem*, 815 F. Supp. 3d 979, 1019–23 (N.D. Cal. 2025); *City of Fresno v. Turner*, No. 25-CV-07070-RS, 2025 WL 2469330, at *4 (N.D. Cal. Aug. 27, 2025); *City & Cnty. of San Francisco v. Trump*, 783 F. Supp. 3d 1148, 1180–82 (N.D. Cal. 2025); *City of Chicago v. Noem*, No. 25 CV 12765, 2025 WL 3251222, at *3–4 (N.D. Ill. Nov. 21, 2025); *City of Chicago v. United States Dep't of Just.*, No. 25 C 13863, 2026 WL 114294, at *3 (N.D. Ill. Jan. 15, 2026).

In significant ways, Plaintiffs have already been harmed by the uncertainty caused by Defendants' arbitrary, ambiguous, and unauthorized policy changes, thereby satisfying Article III standing.  Furthermore, Article III standing is also satisfied where (as here) enforcement is sufficiently imminent.  *See Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 387 (9th Cir. 2024).  Pre-enforcement plaintiffs have standing where they allege an intent to engage in a course of conduct arguably proscribed by the challenged policy and face a credible threat of enforcement.  *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–61 (2014).  Plaintiffs need not "'expose [themselves] to liability before bringing suit.'"  *See id.*  The "enforcement" at issue here is the imposition of the Challenged Conditions. Plaintiffs have submitted declarations attesting that they currently receive, applied for, or intend to apply for grants administered by Defendants.[1]  The Challenged Conditions, recently included in Defendants' general terms and conditions and Notices of Funding Opportunities ("NOFOs"), are effective now, and Plaintiffs reasonably believe that the conditions will be imposed on funds they receive or will receive in the fiscal year.  That is sufficient to satisfy Article III standing and warrants preliminary relief to prohibit the imposition of the Challenged Conditions on *any funds* that Plaintiffs receive from Defendants.

**B.    Plaintiffs' Asserted Right to Relief Arises Out of the Same Series of Occurrences and Are Properly Joined Under Rule 20**

Defendants do not contest that Plaintiffs' claims raise common questions of law or fact or identify any unfairness or prejudice that would result from joinder.  Instead, Defendants contend only that Plaintiffs' claims do not arise out of the same transaction or occurrence.  Dkt. 22 at 16–18.  However, just as in *City & Cnty. of San Francisco v. Trump*, No. 25-CV-01350-WHO, Plaintiffs here "do[] not

---

[1] The County of San Diego submits with this Reply a Supplemental Declaration detailing several DOJ and DHS funds applied for since the initiation of this action.  *See* Supp. Strong Decl. ¶3.

-2-

RENNE PUBLIC LAW GROUP

challenge individualized determinations by agencies about particular grants." *See* 2025 WL 2243619 at *7 (N.D. Cal. Aug. 5, 2025).  Plaintiffs challenge the implementation of agency policy, a course of conduct originating in executive orders, and then arbitrarily implemented by Defendants across their departments and component agencies in disregard of the Constitution and the APA.  Thus, Plaintiffs' claims arise out of the same "series of transactions or occurrences," and satisfy Rule 20's first prong.

Rule 20 permits multiple plaintiffs and defendants to be joined where the asserted rights to relief arise out of the same "transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(1)–(2); *see also League to Save Lake Tahoe v. Tahoe Reg'l Plan. Agency*, 558 F.2d 914, 917 (9th Cir. 1977).  The requirements for permissive joinder "are *liberally construed* to 'promote trial convenience and to expedite the final determination of disputes, thereby *preventing multiple lawsuits*.'" *Pablo Sequen v. Kaiser*, 810 F. Supp. 3d 1076, 1081 (N.D. Cal. 2025) (emphasis added).  "'Under the Rules, the impulse is toward entertaining the *broadest possible scope of action* consistent with fairness to the parties; joinder of claims, parties and remedies is *strongly encouraged*.'" *Id.* (emphasis added).

Defendants argue that Plaintiffs' challenges cannot be joined because to "assess the 'coercive' nature of a funding condition, an adjudicator must assess a locality's policies to see if they are in conflict with a funding condition and may need to review what portion of the locality's budget the conditioned funding effects." Dkt. 22 at 17:5-10.  However, Plaintiffs' motion for a preliminary injunction is not based on the "coercive" nature of the funding conditions.  Plaintiffs assert that the Challenged Conditions are unauthorized by Congress, unrelated to the purposes of the grants, and impermissibly ambiguous in violation of the Spending Clause, the Separation of Powers, and the APA, and that Defendants' implementation of those conditions was arbitrary and capricious in violation of the APA.  Plaintiffs' claims will likely be resolved on the administrative record; Plaintiffs' individual budgets are immaterial.

Furthermore, joinder is proper because Plaintiffs' right to relief does arise out of the same "series of transactions or occurrences."  Rule 20's same transaction or occurrence requirement is construed broadly and "may comprehend a series of occurrences, depending not so much upon the immediateness of their connection as upon their *logical relationship*." *Pablo Sequen v. Kaiser*, 810 F. Supp. 3d at 1081–82 (cleaned up) (emphasis added).  As one treatise explains, "*all logically related events* entitling a person to institute a legal action against another typically are regarded as comprising a transaction or

-3-

RENNE PUBLIC LAW GROUP

occurrence." 7 Wright, Miller & Kane, Fed. Prac. and Proc. § 1653 (3d ed.) (emphasis added). This flexible standard is designed to promote judicial economy by allowing "all reasonably related claims for relief by or against different parties to be tried in a single proceeding." *Id*.

That standard is satisfied here. Plaintiffs' claims arise from a single, logically connected course of conduct: a coordinated, Executive-Branch-wide effort to condition federal grant funding on compliance with the Challenged Conditions. Since taking office, President Trump has issued executive orders directing executive agencies to advance his domestic policy agenda by attaching substantive conditions to federal funding. *See* Exec. Order No. 14,173, 90 Fed. Reg. 8633 (Jan. 31, 2025) ("The head of each agency shall include in every contract or grant award…[a] term requiring such counterparty or recipient to certify that it does not operate any programs promoting DEI that violate any applicable Federal anti-discrimination laws"); Exec. Order No. 14,218, 90 Fed. Reg. 10,581 (Feb. 25, 2025) ("the head of each executive department or agency [] shall…ensure, consistent with applicable law, that Federal payments to States and localities do not, by design or effect, facilitate the subsidization or promotion of illegal immigration, or abet so-called 'sanctuary' policies"); Exec. Order No. 14,168, 90 Fed. Reg. 8615 (Jan. 30, 2025) ("Federal funds shall not be used to promote gender ideology. Each agency shall assess grant conditions and grantee preferences and ensure grant funds do not promote gender ideology"); Exec. Order No. 14,332, 90 Fed. Reg. 38,929 (Aug. 12, 2025) ("Discretionary awards must, where applicable, demonstrably advance the President's policy priorities…Discretionary awards shall not be used to fund, promote, encourage, subsidize, or facilitate…denial by the grant recipient of the sex binary in humans or the notion that sex is a chosen or mutable characteristic").

Pursuant to those executive orders—and related policy directives—Defendants, as heads of DOJ, DHS, and DOI, have directed their departments, component offices, and agents to incorporate materially similar conditions into grant programs' terms and conditions, NOFOs, and grant agreements. The resulting conditions may not be identical word-for-word across all programs, and the underlying authorizing statutes for each grant program may differ. But Rule 20 does not require identical instruments, identical statutory predicates, or a single discrete event. It requires a "logical relationship" among the events giving rise to the claims. Here, the common nucleus is the same: the top-down issuance of executive directives and their downstream implementation across multiple agencies' grant

-4-

RENNE PUBLIC LAW GROUP

portfolios through materially similar conditional language.

Courts routinely find the "series of transactions or occurrences" prong satisfied where discrete applications of a policy are alleged to be part of a broader, systematic practice. *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc*, 99 F. Supp. 3d 1110, 1188 (C.D. Cal. 2015); is illustrative. There, despite variations among hundreds of plan defendants, the court rejected a narrow view of "transaction," explaining that "each discrete claim is part of the larger systematic behavior alleged," and therefore "the Counts against each defendant arise out of the same series of transactions or occurrences." *Id*. at 1188; *see also Am. Fed'n of Gov't Emps., AFL-CIO v. United States Off. of Pers. Mgmt.*, No. C 25-01780 WHA, 2025 WL 770360, at *4 (N.D. Cal. Mar. 10, 2025) (holding OPM's purported directive to other federal agencies to terminate probationary employees related to the same transaction or occurrence under Rule 20); *Martinez v. Dep't of Just.*, 324 F.R.D. 33, 37 (D.D.C. 2018) ("in light of the fact that the term 'transaction' has a 'flexible meaning,' the Court finds there is a sufficient 'logical relationship' among [plaintiffs] claims to satisfy this prong of Rule 20(a)(2)"). The same is true here: each agency's incorporation of the Challenged Conditions is one manifestation of the same overarching, coordinated executive policy and implementation campaign. Accordingly, Plaintiffs' claims are properly joined.

### C. Venue is Proper in This District

Defendants' venue argument—which is bereft of authority—cannot be reconciled with the plain language and purpose of 28 U.S.C. § 1391(e). When "a defendant" is an officer or employee of the United States, the statute permits "a civil action" to be filed in "any judicial district" in which "the plaintiff resides." 28 U.S.C. § 1391(e)(1)(C). As shown above, the Parties are properly joined in this action, and "'[t]he clear weight of federal authority holds that venue is proper in a multi-plaintiff case if any plaintiff resides in the District.'" *See City & Cnty. of San Francisco v. Trump*, 2025 WL 2243619, *6; *see also Exxon Corp. v. F.T.C.*, 588 F.2d 895, 898–99 (3d Cir. 1978) ("requiring every plaintiff in an action against the federal government or an agent thereof to independently meet section 1391(e)'s standards would result in an unnecessary multiplicity of litigation. The language of the statute itself mandates no such narrow construction.").

Defendants continue their efforts to rewrite Plaintiffs' Complaint. As explained above, however, Plaintiffs are not challenging individual transactions or agreements. Plaintiffs are challenging

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND FOR PRELIMINARY RELIEF UNDER 5 U.S.C. § 705 - Case No. 3:26-cv-01535-WHO

RENNE PUBLIC LAW GROUP

Defendants' coordinated policy to impose unauthorized and ambiguous conditions on all federal funds. That challenge includes actions that flow from Defendants' directives to their agents and component offices. Defendants' position would result in a narrowing construction of 28 U.S.C. § 1391 that is entirely at odds with its historical purpose and would result in unnecessary multiplicity of litigation. *See Schlanger v. Seamans*, 401 U.S. 487, 490 n.4 (1971) (explaining that section 1391 "was enacted to broaden the venue of civil actions which could previously have been brought only in the District of Columbia"); *see also Stafford v. Briggs*, 444 U.S. 527, 536–43 (1980); *cf. Lamont v. Haig*, 590 F.2d 1124, 1127 n.13 (D.C. Cir. 1978). Multiple Plaintiffs reside in this district. Thus, venue is proper.

**D.    This Court Has Jurisdiction to Review the Lawfulness of the Challenged Conditions**

Defendants argue that the Tucker Act divests this Court of jurisdiction over Plaintiffs' claims "to the extent Plaintiffs are seeking to enforce an obligation to pay money" because "any entitlement Plaintiffs may have to these funding streams arises solely on the basis of their federal grant awards." Dkt. 22 at 21. Not so. Plaintiffs do not challenge any grant terminations, do not advance any claim for breach of a preexisting grant agreement, and do not seek to enforce any obligation to pay funds pursuant to federal grant agreements. The Constitution and the APA are the source of Plaintiffs' rights, not grant agreements. *See United Aeronautical Corp. v. United States Air Force*, 80 F.4th 1017, 1026 (9th Cir. 2023) ("If rights and remedies are *statutorily* or *constitutionally* based, then districts courts have jurisdiction"). Moreover, "a district court's jurisdiction 'is not barred by the possibility' that an order setting aside an agency's action may result in the disbursement of funds." *Dep't of Educ. v. California*, 145 S. Ct. 966, 968 (2025) (per curiam) (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 909-10 (1988)). As this Court previously explained in rejecting similar arguments in the face of a "wall of authority" to the contrary, "[t]he Tucker Act does not bar this case from moving forward in district court." *County of Santa Clara v. Noem*, 815 F. Supp. 3d at 1023.

**E.    Plaintiffs Are Likely to Succeed on the Merits**

**1.    Defendants' Implementation of the Challenged Conditions Violates the APA**

Defendants offer no "reasonable and reasonably explained" justification for the imposition of the new conditions. *See Ohio v. Environmental Protection Agency*, 603 U.S. 279, 292 (2024) ("the agency must offer a satisfactory explanation for its action, including a rational connection between the facts

-6-

RENNE PUBLIC LAW GROUP

found and the choice made and cannot simply ignore an important aspect of the problem." (cleaned up)); Dkt. 20 at 50–55. Instead, Defendants' entire argument regarding the APA rests on the assertions that the Challenged Conditions fall within unreviewable agency discretion and that no reasoned explanation is necessary because the conditions are constitutional and merely mandate compliance with existing law. *See* Dkt. 22 at 21–32. Both arguments have already been rejected by this Court and numerous others.

### a. The Imposition of the Unlawful Conditions Is Not Committed to Agency Discretion

Defendants argue that the agency action challenged here is committed to agency discretion and unreviewable because the allocation of appropriated funds is typically committed to agency discretion. Dkt. 22 at 30–31. However, here, Plaintiffs challenge the arbitrary and capricious imposition of ambiguous and unauthorized conditions on grant programs, not the allocation of funds. The grant programs are authorized and governed by statutes that set forth the purpose, selection criteria, recipient requirements, and grant conditions, among other things, thereby providing a basis for this Court to exercise judicial review. *See Martin Luther King, Jr. Cnty. v. Turner* ("*King Cnty.*"), 785 F. Supp. 3d 863, 884 (W.D. Wash. 2025). Furthermore, the Ninth Circuit has made clear that the "'fact that a statute contains discretionary language does not make agency action unreviewable.'" *ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059, 1068 (9th Cir. 2015); *see also City & Cnty. of San Francisco v. United States Dep't of Just.*, No. 25-CV-09277-JD, 2026 WL 177945, at *6 (N.D. Cal. Jan. 21, 2026) ("The Act does not give the COPS Office unfettered discretion to attach conditions of its choice to the community policing grants it makes"). "[T]he § 701(a)(2) exception for action committed to agency discretion [is read] 'quite narrowly, restricting it to 'those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.''" *Dep't of Commerce v. New York*, 588 U.S. 752, 772 (2019). Defendants' challenged actions are not committed to agency discretion by law. *See Cnty. of Santa Clara v. Noem*, 815 F. Supp. 3d at 1038–39

### b. Defendants Offer No Reasonable Explanation Justifying the Challenged Conditions

Defendants argue that the adoption of the Challenged Conditions only requires recipients to comply with existing law, and so, "can hardly be considered arbitrary or capricious." *See* Dkt. 22 at 31–

-7-

RENNE PUBLIC LAW GROUP

32. Not only is Defendants' assertion unsupported by any authority, several courts, including this one, have recognized that "the Trump Administration's Executive Orders, the Discrimination Guidance Memo, and the [Challenged] Conditions all depart from both federal anti-discrimination law and the statutory purposes of many grant programs without real explanation." *Cnty. of Santa Clara v. Noem*, 815 F. Supp. 3d at 1040; *see also City of Fresno v. Turner*, No. 25-cv-07070-RS, 2025 WL 2721390, at *8 (N.D. Cal. Sept. 23, 2025); *City of Chicago v. United States Dep't of Just.*, 2026 WL 114294, at *6; *Hous. Auth. of City & Cnty. of San Francisco v. Turner*, No. 25-CV-08859-JST, 2025 WL 3187761, at *14 (N.D. Cal. Nov. 14, 2025). The only explanation offered for the new conditions is that Defendants and their component offices were implementing the President's 2025 executive orders. *See* Dkt. 22-2 at ¶ 10 ("the Office of Justice Programs ("OJP"), added a new condition to comply with Section 3(b)(iv) of E.O. 14173"); Dkt. 22-3 at ¶ 15 ("The funding restrictions were based on the current national and administration policies announced in the following Executive Orders"). However, "the fact that an agency's actions were undertaken to fulfill a presidential directive does not exempt them from arbitrary-and-capricious review." *Kingdom v. Trump*, No. 25-cv-691, 2025 WL 1568238, at *10 (D.D.C. June 3, 2025). Defendants' failure to offer any reasonable explanation for the challenged agency actions underscores why Plaintiffs are likely to prevail on their arbitrary and capricious claims.

### 2.    The DEI Conditions Are Unlawful

Defendants' argument that the DEI Conditions are constitutional also rests on the rejected assertion that they "are not novel" and only require that Plaintiffs comply with existing federal anti-discrimination law. Dkt. 22 at 22–23. However, that assertion is contrary to the plain language of the conditions, the DOJ's guidance, the conduct of this administration in enforcing materially similar conditions, and the findings of this Court and several others. *See City of Fresno v. Turner*, 2025 WL 2721390, at *3 ("on August 18, 2025, HUD notified Fresno that its FY 2025 Consolidated Plan/Action Plan would not be approved unless the City removed references to 'equity,' 'environmental justice,' and 'transgender,' and certified compliance with EO 14168.") As another court reasoned in response to the same argument, the DEI Conditions do not simply require that grant recipients comply with federal antidiscrimination laws. Rather, they "advance[] the 'Administration's own interpretation of 'discrimination' through the threat of the loss of federal funding,' and the Administration's anti-DEI

-8-

interpretation does not further federal anti-discrimination law but is actually 'inconsistent with well-established legal precedent.'" *See City of Chicago v. United States Dep't of Just.*, 2026 WL 114294, at *6; *see also Cnty. of Santa Clara v. Noem*, 815 F. Supp. 3d at 1026 (noting that the Administration's grant conditions "rewrite anti-discrimination law as it has long been understood").  Contrary to Defendants' reliance on Justice Marshall's dissent in *Guardians Ass'n v. Civ. Serv. Comm'n of City of New York*, 463 U.S. 582, 630 (1983), their imposition of the DEI Conditions does place "unanticipated" and indeed impossible burdens on grant recipients.  *See Hous. Auth. v. Turner*, 2025 WL 3187761 at *14 ("Plaintiffs, caught between the statutes promulgated by Congress and interpreted by the Courts, and the Administration's attempts to overwrite those interpretations by fiat, are left in an impossible position.").

This court should also reject the Defendants' rehashed argument that *Dalton v. Specter*, 511 U.S. 462 (1994) forecloses Plaintiffs' constitutional claims, as it did in *Cnty. of Santa Clara v. Noem*, 815 F. Supp. 3d at 1024.  *See also Housing Auth. v. Turner*, 2025 WL 3187761 at *10 (same); *City of Chicago,* 2026 WL 114294, at *5 (same).  Here, "[u]nlike in *Dalton*, plaintiffs' claims are not rooted solely in a statutory analysis." *See Cnty. of Santa Clara v. Noem*, 815 F. Supp. 3d at 1025.  Accordingly, "the crux of Plaintiffs' motion for a preliminary injunction is rooted in constitutional concerns." *Id*.

Defendants' reliance on Judge Tigar's conclusion in *San Francisco A.I.D.S. Found. v. Trump*, 786 F. Supp. 3d 1184 (N.D. Cal. 2025) is also misplaced, given that Judge Tigar subsequently found that the Administration's "guidance concerning DEI, captured in the Bondi Memos . . . is inconsistent with Supreme Court precedent" and that the Trump Administration was "purporting to reverse existing law." *Housing Auth. v. Turner*, 2025 WL 3187761 at 14.  Counter to Defendants' position here, Judge Tigar concluded, "The Court cannot credit Defendants' position that the executive orders and other challenged grant conditions do no more than reiterate the importance of complying with the law." *Id*.  Similarly, *Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, 167 F.4th 86 (4th Cir. 2026), where plaintiffs brought a facial challenge to the DEI-related executive orders under the First and Fifth Amendments, is inapposite to Plaintiffs' challenges to Defendants' *implementation* of the DEI Conditions under Separation of Powers, the Spending Clause, and the APA.  The Fourth Circuit did not have before it the factual circumstances presented here, nor the same statutory and constitutional challenges.

Defendants also contend that the DEI Conditions cannot be ambiguous if they only require

-9-

RENNE PUBLIC LAW GROUP

compliance with existing federal anti-discrimination law. But as this and other courts have held, the DEI Conditions are ambiguous because they lack definitions, do not make clear how grantees might "advance or promote" DEI when performing local government operations, do not explain how these terms fit into current understandings of anti-discrimination law, and ultimately purport to reverse and depart from existing law. *See Cnty. of Santa Clara v. Noem*, 815 F. Supp. 3d at 1034. As a consequence, the DEI Conditions are "rife with vagueness and ambiguity, leaving grantees to speculate what is proscribed and what is permitted." *Id.*; *see also Housing Auth. v. Turner*, 2025 WL 3187761 at *14.

Nor does *Mayweather v. Newland*, 314 F.3d 1062, 1067 (9th Cir. 2002), advance Defendants' argument. That case involved a Spending Clause challenge to a federal statute, not to an Executive Branch action. The Ninth Circuit noted that "[t]he fact that the least restrictive means standard is perhaps unpredictable because it has resulted in different determinations in different courts does not weaken the express conditional language." *Id*. Here, in contrast, the ambiguity does not arise from potential variance between courts' interpretations of anti-discrimination law, but from the Administration's idiosyncratic, novel, and unsupported variance from established law.

Similarly, the DEI Conditions also fail the relatedness test since "they squarely conflict with many of [these grants'] statutory authorization provisions." *See Cnty. of Santa Clara v. Noem*, 815 F. Supp. 3d at 1037 (finding that anti-DEI grant conditions likely did not "bear [any] relationship" to grants whose "statutory objectives . . . conflict[ed]" with the conditions). Plaintiffs' Motion for Preliminary Injunction, Dkt. 20 at 48-49, details multiple, specific ways in which the DEI Conditions are "not only unrelated to, but are inconsistent with, many of the grant programs in question." *See id.* at 1036.

### 3.      The EO Conditions are Unlawful

Defendants insist that the EO Conditions do not violate constitutional constraints on executive authority because an Office of Management and Budget rule requires federal agencies to incorporate national policy requirements into the terms and conditions of federal awards. *See* 2 C.F.R. § 200.211(c)(1)(ii). But courts have rejected invocation of this rule to justify the Administration's imposition of unlawful conditions on congressionally authorized grants because "a regulation cannot create statutory authority; only Congress can do that." *See City of Chicago*, 2026 WL 114294, at *6; *see also City of Fresno v. Turner*, 2025 WL 2721390, at *10; *City & Cnty. of San Francisco v. United States*

-10-

RENNE PUBLIC LAW GROUP

*Dep't of Just.*, 2026 WL 177945, at *7.

Defendants also contend that the EO Condition is unambiguous even though it requires that grant recipients must comply with all existing and future executive orders. Defendants attempt unsuccessfully to analogize the issuance of new *executive orders* to changes in *law* over time—from congressional enactments or court decisions. But executive orders are not laws; they do not and cannot impose new legal obligations on grantees that override congressional authorization. Accordingly, the EO Conditions' potentially limitless retroactive imposition of additional grant conditions renders them fatally ambiguous.

### 4.    The Immigration Conditions Are Unlawful

Defendants attempt to expand the modest principles enunciated in *Dole*, 483 U.S. 203 (1987), to argue that the Immigration Conditions are a permissible exercise of federal agencies' authority, and further assert that in the case of DHS, its "overarching" homeland security mission gives it seemingly unlimited authority to impose such conditions. *See* Dkt. 22 at 28–30. But, as another court reasoned in response to the same argument, "Sweeping immigration-related conditions imposed on every DHS-administered grant, regardless of statutory purpose, lack the necessary tailoring" under *Dole*. *See Illinois v. Fed. Emergency Mgmt. Agency*, 801 F. Supp. 3d 75, 96 (D.R.I. 2025). Similarly, here, Defendants have failed to demonstrate how their sweeping Immigration Conditions are reasonably calculated to advance the purposes of the diverse grant programs to which they purportedly apply.

Defendants also argue that, although the DHS Immigration Enforcement Condition was added to DHS's Standard Terms and Conditions, preliminary relief is not necessary because FEMA has apparently decided not to apply this "standard" term to *some* grant programs. Similarly, Defendants assert that, although the Immigration Enforcement Condition has been included in various NOFOs, it has not been included in OJP grant awards.[2] Defendants have not offered any explanation for why an exception has been made for these specific programs, apparently conceding that the conditions conflict with those programs' purpose. Regardless, without an injunction, Plaintiffs are subject to the whims of Defedants' arbitrary and capricious implementation of the President's executive orders.

Defendants also assert that the Immigration Priority Conditions, unlike the Immigration

---

[2] Including the Challenged Conditions in the NOFOs unlawfully harms Plaintiffs by discouraging them from applying for funds, regardless of whether the conditions are incorporated into grant agreements.

-11-

RENNE PUBLIC LAW GROUP

Enforcement Conditions, do not foreclose an applicant's ability to obtain an award and are simply a selection criterion for certain competitive grant programs. *See* Dkt. 22 at 28. However, unlike the points system considered in *City of Los Angeles v. Barr*, 929 F.3d 1163 (9th Cir. 2019), the Immigration Priority Conditions is not part of a points system that consider multiple factors and weighs them equally; the condition prioritizes applicants who commit to cooperating with federal immigration officials, over those who do not, essentially allowing them to cut to the front of the line to receive federal funds. Furthermore, the Immigration Priority Conditions are the implementation of the President's executive orders, which clearly state the Administration's intention to deny federal funds to local governments with policies that limit cooperation with federal immigration enforcement. *See* Exec. Order No. 14,218, 90 Fed. Reg. 10,581 (Feb. 25, 2025) ("the head of each executive department or agency [] shall…ensure, consistent with applicable law, that Federal payments to States and localities do not, by design or effect, facilitate the subsidization or promotion of illegal immigration, or abet so-called "sanctuary" policies"). In this way, the Immigration Priority Conditions effectively function as a condition for receiving a grant—rather than as one of multiple scoring factors considered in grant-making decisions. *Cf. City of Los Angeles v. Barr*, 929 F.3d at 1175, 1176 ("DOJ does not propose to withdraw significant federal funds from a state or local jurisdiction"). Considered together, the Immigration Priority Conditions, executive orders, and Administration guidance do "propose to withdraw significant federal funds" from local entities that fail to respond affirmatively to the application question related to cooperation with federal immigration officials—and instead award those funds to entities that respond affirmatively.

**F.     Plaintiffs Will Suffer Irreparable Harm in the Absence of Preliminary Relief**

Defendants argue that Plaintiffs have failed to make a sufficient showing of irreparable harm. *See* Dkt. 22 at 31–37. However, these arguments are belied by Plaintiffs' detailed analysis of the federal grant programs and the extensive declarations submitted with Plaintiffs' motion. *See* Dkt. 20 at 15–35, 55–58. It is "well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). As shown above and in Plaintiffs' moving papers, the Challenged Conditions violate the Constitution and the APA. Plaintiffs have established in detail which funds they rely on administered by the Defendant agencies, and how Defendants have unlawfully conditioned those funds. *See* Dkt. 20 at 15-35. Accordingly, Plaintiffs have

-12-

RENNE PUBLIC LAW GROUP

made a sufficient showing of the likelihood of irreparable harm.

Defendants focus on whether Plaintiffs have established that the Challenged Conditions have been applied to specific grant agreements.  *See* Dkt. 22 at 33–37.  However, again, Plaintiffs are not challenging individual transactions or agreements with Defendant agencies.  Plaintiffs are challenging the actions of the Defendant agencies, at the direction of the President, in imposing unauthorized and ambiguous conditions on all federal funds.  Plaintiffs are harmed by this agency action at every stage of the grant process, whether during budgeting, planning, and applying for federal funds subject to the unlawful conditions, deciding whether to execute pending grant agreements, after being forced to forgo funds they are otherwise eligible for, or after entering agreements with the unlawful conditions.  Plaintiffs need not establish every detail of each grant agreement to establish the likelihood of irreparable harm, because the harm arises from the agency's policy of arbitrarily and unlawfully conditioning funds.  The declarations submitted in support of this motion establish that Plaintiffs rely on funds administered by the Defendant agencies.  That is sufficient to establish that they are likely to suffer irreparable harm.  *See City of Fresno v. Turner*, No. 25-CV-07070-RS, 2026 WL 1146290, at *9 (N.D. Cal. Apr. 28, 2026) ("Plaintiffs are injured by the uncertainty and broadness of the meaning and reach of Defendants' conditions and the requirement nonetheless to certify compliance.  Plaintiffs have demonstrated they receive or actively seek at least some grant funding threatened by each Defendant's grant conditions against whom they seek relief.  This is enough to establish irreparable harm.")

Not only do Defendants inaccurately describe the harm articulated in Plaintiffs' motion, but they also ignore this Court's previous order, which recognized that these unlawful conditions cause "'irreparable injury in the form of budgetary uncertainty, deprivation of constitutional rights, and undermining trust between the Cities and Counties and the communities they serve.'"  *See Cnty. of Santa Clara v. Noem*, 815 F. Supp. 3d at 1041.  Plaintiffs stand in the same position as the plaintiffs in the related case before this same Court and warrant the same preliminary relief.

### G.    Relief in Other Cases Does Not Eliminate Plaintiffs' Harm

Defendants argue that a preliminary injunction is unnecessary here because Defendants are already enjoined by other judicial orders.  *See* Dkt. 22 at 37–38.  That argument fails for a number of reasons.  First, Federal courts routinely issue preliminary injunctions to protect the plaintiffs before them,

-13-

RENNE PUBLIC LAW GROUP

even where similar relief has already been granted in parallel litigation. *See California v. Health & Hum. Servs.*("*California*"), 390 F. Supp. 3d 1061, 1064–67 (N.D. Cal. 2019) (overlapping injunctions in parallel litigation do not preclude additional preliminary relief); *see also City of Fresno v. Turner*, 2026 WL 1146290, at *9 ("Parallel injunctions, however, are common and do 'not remove the risk that Plaintiffs will suffer irreparable injury absent action'").

   *Hawai'i v. Trump*, *Hawai'i v. Trump*, 233 F.Supp.3d 850 (D. Haw. 2017) is distinguishable.  That case addressed a nationwide injunction before such relief was disapproved in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), and sought a stay pending resolution of another emergency stay and an appeal already argued before a Ninth Circuit motions panel.[3]  Similarly, in *McKinleyville Union School District v. United States Department of Education*, No. 25-cv-09105-YGR, 2025 WL 4110868 (N.D. Cal. Dec. 29, 2025), the Ninth Circuit had already issued a per curium opinion in the other case, and the District Court had already granted the plaintiffs' motion for partial summary judgment, granting *all* the substantive relief requested by the School District.  *See id.* at *1.  In contrast, here, none of the injunctions cited by Defendants provides coextensive permanent relief.

   Second, preliminary injunctions are inherently provisional.  They may be modified, stayed, narrowed, or reversed at any stage of the litigation or on appeal.  *See California*, 390 F. Supp. 3d at 1066 ("The Court concludes that the existence of another injunction—particularly one in a different circuit that could be overturned or limited at any time—does not negate [plaintiff's] claimed irreparable harm"); *Nw. Immigrant Rts. Project v. United States Citizenship & Immigr. Servs.*, 496 F. Supp. 3d 31, 81 (D.D.C. 2020) ("Defendants have not committed to stand down in the parallel litigation, leaving the prospect that the injunction in that case could be stayed or set aside by the Ninth Circuit (or the Supreme Court)").

   Third, orders from other cases provide little practical protection if the parties disagree on the scope or implementation of the injunctions.  If at any point Defendants dispute the scope of the injunction or attempt to apply the challenged conditions despite the other court's injunctions, Plaintiffs

---

[3] Notably, the U.S. Solicitor General has taken the position in proceedings before the Supreme Court (which granted certiorari) that preliminary relief under the APA should apply only to the plaintiffs in those cases, not to non-parties. *See* App. for Stay Pending Appeal, *Mullin v. Doe*, No. 25-1083 (25A952) (U.S. Feb. 26, 2026), at 34 n.8 (arguing "[t]he district court erred in granting universal relief under Section 705 instead of tailoring relief to the named parties").

-14-

RENNE PUBLIC LAW GROUP

would be left without an effective remedy. That problem is particularly acute given this administration's demonstrated willingness to test or disregard court orders. *See State of California v. United States Department of Agriculture*, No. 3:25-cv-06310, (N.D. Cal. Feb 26, 2026) at Dkt. 134 (order expanding preliminary injunction in alternative to order to compel after Government sent additional terms to avoid enforcement); *Illinois v. Fed. Emergency Mgmt. Agency,* No. CV 25-206 WES, 2025 WL 2908807 (D.R.I. Oct. 14, 2025) (finding DHS continued to implement enjoined grant conditions and ordering compliance); *State of New York v. Trump*, No. 25-CV-39-JJM-PAS, 2025 WL 440873, at \*1 (D.R.I. Feb. 10, 2025) (ordering President Trump and Secretaries of HHS and EPA to cease withholding federal funds in violation of a temporary restraining order). Only an injunction from this Court provides the certainty and comprehensive protection that the patchwork of existing injunctions does not guarantee.

**H.       Plaintiffs Seek an Appropriately Tailored Preliminary Injunction[4]**

Defendants argue that any injunctive relief should be limited to specifically identified grant programs. *See* Dkt. 22 at 40. This requested limitation does not provide the necessary relief because Plaintiffs are continually and frequently receiving newly issued NOFOs and grant agreements. *See* Supp. Strong Decl. ¶3. Any effective relief must enjoin Defendants from imposing or enforcing the Challenged Conditions against Plaintiffs in any circumstance, whether the condition is present in a pending or future grant offer, existing programs utilizing grant funds, or in a future grant application.

The relief sought by Plaintiffs is tailored to the harm caused. Defendants have arbitrarily imposed vague and unlawful conditions across their entire portfolio of grant programs, without authority to do so. A preliminary injunction prohibiting Defendants from attaching or enforcing the new Challenged Conditions or materially similar conditions to any of the grant programs they administer preserves the status quo.

**I.       A Preliminary Injunction Serves the Public Interest; a Bond or Stay Does Not**

Preserving Plaintiffs' constitutional rights and preventing the government from enforcing potentially unlawful conditions clearly serve the public interest. *See Melendres v. Arpaio*, 695 F.3d at

---

[4] Plaintiffs identify in the Complaint the funding from each Defendant agency they rely on, defining those groups as the "DHS Plaintiffs," "DOJ Plaintiffs," and "DOI Plaintiffs." Plaintiffs seek relief only against the Defendant agencies from which they rely on federal funding.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND FOR PRELIMINARY RELIEF UNDER 5 U.S.C. § 705 - Case No. 3:26-cv-01535-WHO

RENNE PUBLIC LAW GROUP

1002 ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights.") (cleaned up); *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014) (similar). In contrast, Defendants have not articulated any prejudice against them.

Accordingly, the public interest favors an order enjoining Defendants from imposing the new unlawful grant conditions without undermining the protections of such an order with a bond. *See, e.g.*, *Cnty. of Santa Clara v. Noem*, 815 F. Supp. 3d at 1042–43 (denying enjoined federal defendants' request for bond); *City & Cnty. of San Francisco v. Trump*, 783 F. Supp. 3d 1203 (same); *King Cnty.*, 785 F. Supp. 3d at 893 (same). Defendants have not shown how the requested injunction would result in damages for the government. Since the balance of equities tips strongly in Plaintiffs' favor, "imposing a bond would negatively impact their access to the courts and their ability to assert their constitutional rights." *See City & Cnty. of San Francisco v. Trump*, 783 F. Supp. 3d at 1203. Alternatively, if the Court decides a bond is needed, Plaintiffs request a nominal bond to reflect the resulting hardship of losing access to the very funds Plaintiffs seek to protect.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court issue a preliminary injunction enjoining Defendants from imposing or enforcing the Challenged Conditions or any materially similar terms or conditions on Plaintiffs, directly or indirectly.

RENNE PUBLIC LAW GROUP

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND FOR PRELIMINARY RELIEF UNDER 5 U.S.C. § 705 - Case No. 3:26-cv-01535-WHO

Dated:  May 27, 2026

RENNE PUBLIC LAW GROUP


By: _____*/s/ Jake D. Freitas*_____
      JAKE D. FREITAS

Attorneys for Plaintiffs
City of Fresno; City of Redwood City; City of Santa Clara; City of Santa Cruz; City of Beaverton; City of Corvallis; City of Hillsboro; City of Stockton; County of San Diego; County of Los Angeles; County of Santa Barbara

Dated:  May 27, 2026

FRESNO CITY ATTORNEY'S OFFICE


By: _____*/s/ Andrew Janz*_____
      ANDREW JANZ

Attorney for Plaintiff
City of Fresno

RENNE PUBLIC LAW GROUP

-17-

**ECF ATTESTATION**

I, JAKE D. FREITAS, am the ECF user whose identification and password are being used to file this PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND FOR PRELIMINARY RELIEF UNDER 5 U.S.C. § 705.  Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that the other above-named signatories concur in this filing.

Dated:  May 27, 2026                                         RENNE PUBLIC LAW GROUP


By: _____*/s/ Jake D. Freitas*_____
          JAKE D. FREITAS

RENNE PUBLIC LAW GROUP

-18-
PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND FOR
PRELIMINARY RELIEF UNDER 5 U.S.C. § 705 - Case No. 3:26-cv-01535-WHO